Amjad M. Khan (SBN 237325)
 *amjad.khan@bnsklaw.com*
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile:  (310) 593-9980

Jennifer L. Gordon (*pro hac vice forthcoming*)
 *jgordon@loriumlaw.com*
**LORIUM LAW**
180 N. LaSalle Street, Suite 3700
Chicago, Illinois   60601
Telephone: (312) 564-5757
Facsimile: (312) 564-5758

*Counsel for Plaintiff
Nabih "Nick" Kanaan*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABIH "NICK" KANAAN,<br><br>             Plaintiff,<br><br>     v.<br><br>NIZAR YAQUB, an individual;<br>THE INN AT DEL MONTE BEACH, LLC,<br>a California Limited Liability Company,<br><br>             Defendant(s). | Case No.: 5:21-cv-09591<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY**<br>2. **BREACH OF CONTRACT**<br>3. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>4. **VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br>5. **DECLARATORY AND INJUNCTIVE RELIEF**<br>6. **FRAUD – CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff, Nabih "Nick" Kanaan ("Kanaan") brings this action under the California Business and Professions Code, the California Revised Uniform Limited Liability Company Act, and common law against Defendants Nizar Yaqub ("Yaqub") and The Inn at Del Monte Beach, LLC ("The LLC"), regarding the unlawful and fraudulent management and transfer of assets and membership units of The LLC by Yaqub as against Kanaan. Plaintiff Kanaan alleges the following based upon information, belief, and investigation.

## I.      INTRODUCTION

1.      This lawsuit arises from the formation of a business by two owners, the passing of one of the business owners, and the subsequent takeover and "freezing out" or "squeezing out" of Plaintiff Nabih "Nick" Kanaan ("Kanaan" or "Plaintiff") as the founding 30% minority interest holder in defendant The Inn at Del Monte Beach, LLC ("The LLC"), which owns a successful and profitable real estate property in Monterey, California (the "Property").  Yaqub's end goal – achieved after several years of bad faith breaches of fiduciary duty, fraud, and breaches of statutory and contractual obligations – was to (i) expropriate for himself the annual income generated by Kanaan's 30% ownership interest, (ii) misappropriate funds from the LLC, and (iii) convert, without compensation, Kanaan's ownership interest in the LLC for himself.

2.      As explained by F. Hodge O'Neal & Robert B. Thompson in "Oppression of Minority Shareholders and LLC Members," at § 1:1:

'Squeeze out' means the use by some of the owners or participants in a business enterprise of strategic position, inside information, or powers of control, or the utilization of some legal device or technique, to eliminate from the enterprise one or more of its owners or participants[.] 'Partial squeeze-outs' [also called 'freeze-outs' refer to] actions

which reduce the participation or powers of a group of participants in the enterprise, diminishes their claims on earnings or assets, or otherwise deprives them of business income or advantages to which they are entitled. A squeeze-out normally does not contemplate fair payment to the squeezees for the interests, rights, or powers which they lose."

This is a case of such a squeeze-out, driven by Yaqub to unjustly and unlawfully deprive Kanaan of his ownership interests and profits in The LLC and the Property.

3.      Through fraud, falsification of company documents, and concealment, Yaqub wrongfully deprived Plaintiff of his ownership in The LLC and income from the Property.

## II.    PARTIES

4.      Plaintiff is an individual, resident and citizen of the State of Illinois. Plaintiff asserts his claims solely in his individual capacity, based on Defendant's infringement of Plaintiff's individual rights, oppression of Plaintiff's minority ownership and management interests, and fiduciary breaches and other bad faith conduct alleged herein that were directed to him, which harms, and injuries are separate and distinct from any harms and injuries to The LLC itself. Plaintiff does not assert any derivative claims in this Complaint.

5.      Defendant Yaqub is an individual, resident and citizen of the State of California and the alleged manager and majority owner of The LLC. Yaqub purportedly installed himself as manager approximately July 2011 upon the passing of Seeley.

6.      The LLC is a California limited liability company.

## III.   JURISDICTION AND VENUE

7.      This court has personal jurisdiction over Defendant Yaqub as Yaqub is a citizen of California residing within this District.

**8.**     This Court has diversity jurisdiction over the parties and matter pursuant to 28 U.S.C. § 1332 in that the Plaintiff is a citizen of the State of Illinois, Defendant Yaqub is a citizen of the State of California, and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

**9.**     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant Yaqub resides in this District, the Property is located in this District, and a substantial part of the events giving rise to the claims herein occurred in this District.

## IV.    COMMON ALLEGATIONS

**10.**     In 1998, Plaintiff and Yaqub formed Medical Equities, LLC ("Medical Equities"), a California limited liability company, along with Linda Seeley.  Seeley was Yaqub's spouse and the registered agent of Medical Equities.  Medical Equities was formed for the purpose of real estate purchase and investment. Plaintiff owned a 30%-member interest; Seeley owned a 30%-member interest; and Yaqub owned a 40%-member interest.

**11.**     In 1999, Medical Equities purchased a property located at (the "Morgan Hill Property"). The Morgan Hill Property was purchased using a combination of funds from Medical Equity and individual funds from Plaintiff, Seeley, and Yaqub.

**12.**     In 2001, the Morgan Hill Property sold for approximately $2,100,000.00, with $148,000.00 being given to Plaintiff as his alleged 30% share of the profits. The amounts given to Yaqub, and Seeley were undisclosed to Plaintiff.

**13.**     In 2002, Medical Equities purchased the Property using $1,200,000.00 in Medical Equities cash plus $600,000.00 in FF&E financing with the intent to operate the Property as a "bed and breakfast" hospitality property.

**14.**     On or about June 26, 2002, Plaintiff and Seeley applied for and obtained a liquor license (No. 387141) for the Property.

**15.**     Between 2002 and 2007, Plaintiff, Yaqub and Seeley owned Medical Equities together which owned and operated the Property as a bed and breakfast.

**16.**     On November 1, 2007, Plaintiff, Yaqub and Seeley formed a new limited liability company, The LLC, to hold and manage the Property by executing The LLC's Operating Agreement (the "Operating Agreement").  A copy of the Operating Agreement is attached hereby as **Exhibit A.**  Plaintiff owned a 30% stake in The LLC and Seeley owned a 70% stake in the The LLC.  Yaqub was not an owner of The LLC.

**17.**     On July 14, 2008, The LLC obtained a loan to remodel the Property in the amount of $1,755,000.00 from Pinnacle Bank (the "Pinnacle Loan") with Medical Equities as the Grantor and secured by the proceeds from the Liquor License No. 387141 (or any liquor license thereafter acquired).

**18.**     In July 2009, The LLC obtained a personal loan from Doris Knapp in the amount of $140,000.00, secured by a mortgage on the Property and signed by Seeley as manager of The LLC (the "Knapp Loan"). A copy of the Knapp Loan is attached hereto as **Exhibit B**.

**19.**     The Pinnacle Loan was refinanced on December 29, 2009 to make as parties The LLC and Pinnacle Bank, to include as collateral the inventory, equipment and other intangibles of the Property, and to further include as collateral the liquor license transferred from Medical Equities to The LLC, license no. 2031982215 (the "Liquor License") and issued September 1, 2009.

**20.**     In April 2011, Seeley purportedly transferred all of her ownership interest in The LLC to Yaqub via an "Option Notice".  The Option Notice does not contain the addresses or

proof of sending the notice to Plaintiff, nor does it contain a date of execution.  Furthermore, any transfer under Article 6 of the Operating Agreement must be accompanied by an agreement by the transferee to be bound by the terms of Article 6 of the Operating Agreement. See **Exhibit A**, p. 16.  Plaintiff has never seen and is not aware of any such agreement being delivered by Yaqub.

21.     In July 2011, Seeley passed away after a years-long fight against cancer.

22.     In December 2011, Yaqub, purporting to be the sole member of The LLC, drafted the "First Amended Operating Agreement" for The LLC, a copy of which is attached hereto as **Exhibit C**. Plaintiff had no knowledge of the First Amended Operating Agreement being drafted.

23.     On February 4, 2013, Yaqub cancelled Medical Equities with the California Secretary of State.  Yaqub stated on the Limited Liability Certificate of Cancellation that this was by vote of all members.  Plaintiff was never contacted, nor did he consent to the cancellation of Medical Equities. A copy of the Limited Liability Certificate of Cancellation submitted by Yaqub is attached hereto as **Exhibit D**.

24.     In July 2015, Mr. German Baldeon (on behalf of the Baldeon-Knapp Trust) filed suit to collect on the Knapp Loan due to failure of The LLC to make payments pursuant to the promissory note memorializing the loan (Superior Court of California, County of Monterey, Case No. M130372).  This lawsuit alleged that The LLC had not made payments on the Knapp Loan since September 2013.

25.     In or around September 2017, Yaqub, on behalf of The LLC, applied for another liquor license for the Property. In the application to the California Department of Alcoholic Beverage Control ("ABC"), Yaqub stated that he owned 92% of The LLC, and Plaintiff owned

8% of The LLC.  This representation directly contradicted Yaqub's representation in the First Amended Operating Agreement that Yaqub was the sole member of The LLC.

26.     In December 2007, The LLC settled the lawsuit regarding the Knapp Loan with the Baldeon-Knapp Trust.  Neither the details of the settlement nor the lawsuit were communicated to Plaintiff, despite Plaintiff's ownership interests in The LLC.

27.     In April 2018, the ABC sent a letter to The LLC to Yaqub's attention pointing out the discrepancy between the prior information submitted by The LLC for its liquor license, and the information supplied on this most recent application.  Specifically, the ABC noted that the then-current active license was issued to The LLC with the owners being identified as Linda Seeley (70% ownership) and Nick Kanaan (30% ownership).  The ABC requested documentation to verify when and how the ownership percentages had changed in order to issue the new liquor license.

28.     In response to the April 2018 letter from the ABC, Yaqub falsified documents to make it seem as though Plaintiff's ownership percentage was decreased from 30% to only 8%.

29.     Specifically, in November 2018 Yaqub drafted "Minutes to Memorialize Prior Action Taken" ("Minutes"), which stated:

> **Requests having been made in April 2008 and in October 2009 on the members of the LLC to make capital contributions of $700,000.00 and $300,000.00  required to fund operations and improvements, and only Linda Seeley [or Nizar "Nick" Yaqub, depending on timing] having made the requested capital contribution, and Nick Kanaan having failed to contribute any capital, effective January 2011 the membership interests of the LLC are revised to the following:**

| | |
|---|---|
| **Linda Seeley [Nizar "Nick" Yaqub]** | **92%** |
| **Nick Kanaan** | **8%** |

A copy of the purported Minutes are attached hereto as **Exhibit E**.

7

**30.**    In 2010, Plaintiff discovered that Seeley had used The LLC's credit cards and other business funds to pay for her personal medical debts without Plaintiff's knowledge or approval. In fact, Seeley spent several hundred thousand dollars of funds belonging to The LLC on personal medical expenses prior to her death.

**31.**    At that time, Plaintiff also discovered that Yaqub and Seeley had used The LLC's credits cards and other business funds to pay for other personal expenses without Plaintiff's knowledge or approval. The precise amount of money belonging to The LLC that was spent by Yaqub and Seeley on personal, non-business expenses is unknown to Plaintiff at this time because Yaqub has continually withheld The LLC's financial information and access to the same from Plaintiff.

**32.**    Article 3.10.1.3 of the Operating Agreement of The LLC states that any amendment to the Operating Agreement requires unanimous approval of the Members of The LLC. Plaintiff provided no approval for Yaqub to draft and execute the First Amended Operating Agreement either before or subsequent to its drafting.

**V.    CAUSES OF ACTION**

**A.  COUNT I - BREACH OF FIDUCIARY DUTY**

**33.**    Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

**34.**    Defendant Yaqub is a controlling interest holder and member of The LLC, and therefore owed fiduciary duties of care and fidelity to Plaintiff as a non-controlling minority interest holder of The LLC.

**35.**    Section 17704.09 of the California Revised Uniform Limited Liability Company Act (the "RULLCA") provides that, in manager-managed LLCs such as The LLC, the managers

owe duties of loyalty and care to the company and to the other members. With respect to the duty of care in particular, managers are prohibited from "engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." (Cal. Corp. Code § 17704.09(c).)  Managers are also required, under Section 17704.09(d), to "discharge the duties to a limited liability company and the other members under this title or under the operating agreement and exercise any rights consistent with the obligation of good faith and fair dealing." All of the conduct of Defendant Yaqub was subject to the fiduciary requirements of Section 17704.09 of the RULLCA.

36.     Defendant Yaqub owed and continues to owe fiduciary duties of care and fidelity to Plaintiff as his partner in The LLC, as a matter of common law, and under Section 17153 of the California Corporations Code, for all bad faith conduct which occurred prior to January 1, 2014. Defendant Yaqub's  misconduct after January 1, 2014 is subject to the fiduciary obligations set forth in Section 17704.09 of the RULLCA.

37.     Defendant Yaqub has violated his fiduciary duties of care and of good faith and fair dealing owed to Plaintiff by (among other grossly negligent, bad faith, and intentional misconduct):

a. Failing to provide notice to Plaintiff of any alleged capital contribution calls;

b. Falsifying documents related to capital contribution calls;

c. Colluding in bad faith with Seeley to use The LLC's business funds for personal expenses;

d. Colluding in bad faith to purportedly reduce Plaintiff's 30% ownership interest in The LLC to 8% by invoking an alleged terminating event/forced buy-out in bad faith in order to misappropriate Plaintiff's capital account, his

pro rata share of the profits of The LLC and the Property, and all other income proportionate to his 30% ownership interest.

e. Intentionally withholding information and documents from Plaintiff, excluding him from alleged meetings, and failing to give him notice of these supposed meetings.

**38.**     As a direct and proximate result of Yaqub's misconduct, Plaintiff has suffered severe financial damages which will be established by the proofs at trial. The conduct described herein constitutes "oppression, fraud or malice" as those terms are defined in the California Civil Code § 3294, and Plaintiff is therefore entitled to punitive damages in an amount according to proof. Plaintiff is further informed and believes and based upon such information and belief alleges that the conduct described herein constituting oppression, fraud or malice was committed by Yaqub as the purported manager of The LLC.

## B. COUNT II – BREACH OF CONTRACT

**39.**     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

**40.**     Plaintiff and Yaqub, by virtue of Seeley's purported transfer of her ownership interests in The LLC to Yaqub, are parties to the Operating Agreement. The LLC is bound by the Operating Agreement, and also by virtue of Section 17701.11(a) of RULLCA, which provides that "A limited liability company is bound by and may enforce the operating agreement."

**41.**     Article 2.1 of the Operating Agreement entitled "Capital Contributions" states, in pertinent part, "No Member shall be required to make any additional contributions to the capital of the Company [beyond the initial formation contribution]. Additional contributions to the capital of the company shall be made only with a two-thirds (2/3) vote of the Members."

42.     Article 3.11.3 of the Operating Agreement entitled "Notice of Meeting" states, in pertinent part, "Written notice of a meeting of Members shall be sent or otherwise given to each Member in accordance with Corporations Code section 17104(c)(2) not less than ten (10) nor more than sixty (60) days before the date of the meeting. The notice shall specify the place, date and hour of the meeting and the general nature of the business to be transacted."

43.     Article 3.11.4 of the Operating Agreement entitled "Validity of Action" states, in pertinent part, "Any action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice."

44.     Article 3.11.5 of the Operating Agreement entitled "Action by Written Consent without Meeting" states, in pertinent part, "Unless the consents of all Members entitled to vote have been solicited in writing, (i) notice of any Member approval of an amendment to the Articles or this Agreement, a dissolution of the Company, or a merger of the Company, without a meeting by less than unanimous written consent, shall be given at least ten (10) days before the consummation of the action authorized by such approval, and (ii) prompt notice shall be given of the taking of any other action approved by Members without a meeting by less than unanimous written consent, to those Members entitled to vote who have not consented in writing."

45.     Section 17701.10(c)(16)(g) of RULLCA provides that an "operating agreement may alter or eliminate the indemnification for a member or manager provided by subdivision (a) of Section 17704.08 and may eliminate or limit a member or manager's liability to the limited liability company and members for money damages, except for … (4) Intentional infliction of harm on the limited liability company or a member [or] (5) An intentional violation of criminal law." (Emphasis added).

**46.** Defendant Yaqub breached Article 3 of the Operating Agreement (among other grossly negligent, bad faith, and intentional misconduct):

    a.   Failing to provide notice to Plaintiff of any alleged capital contribution calls;

    b.   Falsifying documents related to capital contribution calls;

    c.   Colluding in bad faith with Seeley to use The LLC's business funds for personal expenses;

    d.   Colluding in bad faith to purportedly reduce Plaintiff's 30% ownership interest in The LLC to 8% by invoking an alleged terminating event/forced buy-out in bad faith in order to misappropriate Plaintiff's capital account, his pro rata share of the profits of The LLC and the Property, and all other income proportionate to his 30% ownership interest.

    e.   Intentionally withholding information and documents from Plaintiff, excluding him from alleged meetings, and failing to give him notice of these supposed meetings.

**47.** Plaintiff fully performed all obligations required of him under the Operating Agreement and did not commit any acts in breach of the Operating Agreement or any duty owed by Plaintiff to Yaqub or Seeley.

**48.** The limitation of liability provisions of Section 4 of the Operating Agreement do not shield Yaqub from liability under their express terms and under Section 17701.10(c)(16)(g) of RULLCA because Yaqub conducted himself wholly in bad faith in order to inflict intentional harm on Plaintiff as a founding member of The LLC.

**49.** As a direct and proximate result of Yaqub's misconduct, Plaintiff has suffered severe financial damages which will be established according to the proofs at trial.

### C.  COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

50.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

51.     Plaintiff on the one hand and The LLC and Yaqub on the other hand are parties to the Operating Agreement. The LLC is bound by Section 17701.11(a) of RULLCA which provides that "[a] limited liability company is bound by and may enforce the operating agreement."

52.     The Operating Agreement contained, by operation of law, an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. The covenant of good faith and fair dealing finds particular application in situations where, as here, The LLC and Yaqub as manager were invested with a discretionary power affecting the rights of Plaintiff as a minority interest holder. Such power must be exercised in good faith. The LLC and Yaqub were prevented, by the implied covenant, from unfairly frustrating Plaintiff's right to receive the benefits to which he was entitled under the Operating Agreement.

53.     Here, Plaintiff owned a 30% founding ownership interest in The LLC. This was a "Membership Interest" which empowered him to receive a share of the "Net Profit" in proportion to his Membership Interest pursuant to Article 5.2.2 of the Operating Agreement.  Plaintiff was further empowered to receive distributions from The LLC first in proportion to his unreturned capital contributions (until the same has been returned), and thereafter in proportion to his Membership Interest. Both of these constituted a valuable property interest in the assets of and

income generated by The LLC, including but not limited to periodic cash distributions and portion of the profits.

54.     Plaintiff fully performed all obligations required of him under the Operating Agreement and did not commit any acts in breach of the Operating Agreement or any duty owed by Plaintiff to Yaqub or Seeley.

55.     It was not and could not constitute a reasonable exercise of discretion to reduce without authorization a founding Member's interest in order to steal his capital account, his portion of the net profits of The LLC, and his portion of all distributions made by The LLC. Yaqub accomplished this by deliberately failing to notify Plaintiff of any alleged capital contribution calls or meetings regarding the same, and then fraudulently executing the Amended Operating Agreement reducing Plaintiff's Membership Interest to 8%. These bad faith actions violated the implied covenant of good faith and fair dealing.

56.     As a direct and proximate result of Yaqub's misconduct, Plaintiff has suffered severe financial damages which will be established by the proofs at trial.

**D.  COUNT IV – VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *et seq.***

57.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

58.     The California Unfair Competition Law ("UCL"), set forth in California Business and Professions Code Section 17200 *et seq.*, prohibits acts of unfair competition, which include "any unlawful, unfair or fraudulent business act or practice…" Section 17200 of the UCL imposes strict liability for violations and does not require proof that Defendants intended to injure anyone.  The unlawful practice prohibited by section 17200 are any practices forbidden by law, whether civil or criminal, federal, state or municipal, statutory, regulatory, or made by the

court. Such unlawful business practices are independently actionable under Section 17200 and subject to the distinct remedies provided thereunder.

59.     Yaqub's bad faith conduct as alleged herein violated, and continue to violate, Section 17200 of the UCL. Yaqub's conduct constitutes an unfair business practice within the meaning of Section 17200 of the UCL because it violates the strong public policy of the State of California (a) to ensure that the investing public and minority interest holders are protected from frauds, deceptions, fiduciary breaches, and other bad faith conduct committed in investment transactions; (b) to ensure that minority interest holders are not subject to oppressive and self-dealing actions by majority interest holders in breach of their fiduciary duties; and (c) to ensure that the managers of business enterprises comply with their fiduciary and statutory duties and do so in good faith.

60.     Yaqub's conduct as alleged herein violated, and continues to violate, Section 17200 of the UCL. Yaqub's conduct constitutes a fraudulent business practice within the meaning of Section 17200 of the UCL because Yaqub hid the truth about his improper motives, bad faith, and breach of his fiduciary duties from Plaintiff by failing to provide Plaintiff with notice for any activities of The LLC as was required by the Operating Agreement, fraudulently drafting "minutes" of meetings that never occurred, usurping the vast majority of Plaintiff's ownership interest in The LLC without cause or compensation, and fraudulently amending the Operating Agreement.

61.     As a result of Yaqub's unlawful, unfair and fraudulent conduct performed in furtherance of his scheme to divest Plaintiff of ownership and rights in The LLC, Yaqub has been unjustly enriched in an amount yet to be ascertained, which will be proven at trial.

62.     Plaintiff has suffered "injury in fact" within the meaning of Section 17204 of the UCL as a result of Yaqub's actions. Plaintiff has suffered a distinct and palpable injury as a result of Yaqub's misconduct which is (a) concrete and particularized, and (b) is actual and imminent, not conjectural or hypothetical, including but not limited to the extinguishment of the majority of his 30% founding ownership interest in The LLC, the misappropriation of his capital account, and the misappropriation of his share of the profits and distributions of The LLC and the Property.

63.     Under Section 17203 of the UCL, Plaintiff is entitled to equitable relief in the form of an accounting, restitution, and disgorgement of all ill-gotten gains, earnings, profits, compensation and benefits obtained by Yaqub. The Court should further impose a constructive trust on all ill-gotten gains that presently and in the future are withheld by Yaqub.

64.     Moreover, pursuant to the California Business and Professions Code Section 17205, Plaintiff's remedies under Section 17200 *et seq.* are cumulative with remedies under all other statutory and common law remedies available.

65.     Pursuant to Section 17203 of the UCL, Plaintiff seeks a further order of this Court enjoining Yaqub from continuing to conduct business through the unlawful, unfair and fraudulent business practices and acts described herein. Plaintiff further seeks an injunction mandating that the *status quo ante* be restored regarding his investment position in The LLC.

### E.  COUNT V – FOR DECLARATORY AND INJUNCTIVE RELIEF

66.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

67.    Yaqub was the sole Manager of The LLC at the time The LLC purported to reduce Plaintiff's founding membership interest from 30% to only 8% based on an alleged capital call.

68.    An actual controversy has arisen between Plaintiff and Defendant in that Plaintiff contends, and Defendant Yaqub denies, that Yaqub's reduction of Plaintiff's membership interest based on an alleged capital call was invalid and done in bad faith, no reduction of Plaintiff's membership interest has occurred in equity or at law, and as such any taking of Plaintiff's membership interest by The LLC and/or Yaqub is null and void; and Plaintiff is entitled to be restored to the *status quo ante* regarding his investment position in The LLC.

69.    A judicial declaration is needed so that the parties may ascertain their rights in this controversy.

70.    Plaintiff is without a plain, speedy and adequate remedy in the ordinary course of law to compel Yaqub to restore Plaintiff's 30% membership interest in The LLC. In the facts of the case, the balance of convenience and hardships tips strongly in favor of the Plaintiff.

71.    Plaintiff has suffered and will continue to suffer irreparable injury, unless and until this Court enjoins Yaqub from continuing to misappropriate funds which belong to Plaintiff and restores Plaintiff's 30% membership interest in The LLC. The Court should also impose a constructive trust on all ill-gotten gains that presently and in the future are obtained by Yaqub, including but not limited to: (i) 30% of all distributable cash, (ii) $3,000.00 corresponding to Plaintiff's capital account, and (iii) 30% of all profits generated from the Property and any other assets belonging to The LLC.

72.    Yaqub's illegal and bad faith conduct is ongoing and threatens to be continued in the future, and therefore should be enjoined.

### F.  COUNT VI – FRAUD – CONCEALMENT

**73.**     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

**74.**     Yaqub intentionally failed to disclose material facts to Plaintiff, including but not limited to the following:

      a.   That Yaqub, of his own volition and without proper notice, was initiating a capital call;

      b.   That Yaqub, of his own volition and without proper notice, drafted and executed an Amended Operating Agreement for The LLC in contravention of the Operating Agreement;

      c.   That Yaqub, of his own volition and without proper notice, retroactively drafted minutes for alleged decisions by The LLC which were detrimental to Plaintiff as a minority interest holder; and

      d.   That Yaqub had failed to properly renew the liquor license for The Property.

**75.**     Plaintiff was unaware of the facts that Yaqub concealed from him.

**76.**     When Yaqub concealed these facts from Plaintiff, he did so with the intention to deceive, defraud, and induce Plaintiff into acting on the representations made by Yaqub to Plaintiff, and to induce Plaintiff to refrain from investigating further into the records and actions of The LLC.

**77.**     Had Yaqub informed Plaintiff of the concealed facts, Plaintiff would have acted differently.

**78.**     As a direct and proximate result of Yaqub's conduct, Plaintiff has suffered damages in an amount to be proven at trial as a result of the loss of profits from the Property,

loss of ownership interest and distributions from The LLC, loss of corporate opportunities, and damages.

**79.**     Yaqub's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages under California Civil Code § 3294.

## G.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief and judgment as follows:

1.  For injunctive relief requiring Defendant Yaqub to restore Plaintiff to the *status quo ante*;

2.  For an accounting, restitution, and disgorgement by Yaqub of all ill-gotten gains, profits, and benefits and imposition of a constructive trust regarding such monies;

3.  For damages against Yaqub according to proof at trial;

4.  For exemplary or punitive damages on such claims and in such amounts as may be permitted by law;

5.  For an award of attorneys' fees and costs of suit;

6.  For pre-judgment interest as may be allowed by law; and

7.  For such other relief as is authorized and just in the circumstances.

Dated: December 10, 2021

Respectfully submitted,

/s/ Amjad M. Khan
Amjad M. Khan
 amjad.khan@bnsklaw.com
**BROWN NERI SMITH KHAN, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9899

19

COMPLAINT

/s/ Jennifer L. Gordon
Jennifer L. Gordon (*pro hac vice forthcoming*)
  *jgordon@loriumlaw.com*
**LORIUM LAW**
180 N. LaSalle Street, Suite 3700
Chicago, Illinois 60601
Telephone: (312) 564-5757

*Counsel for Plaintiff*
*Nabih "Nick" Kanaan*

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: December 10, 2021

Respectfully submitted,

/s/ Amjad M. Khan
Amjad M. Khan
 amjad.khan@bnsklaw.com
**BROWN NERI SMITH KHAN, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9899

/s/ Jennifer L. Gordon
Jennifer L. Gordon (*pro hac vice forthcoming*)
 jgordon@loriumlaw.com
**LORIUM LAW**
180 N. LaSalle Street, Suite 3700
Chicago, Illinois 60601
Telephone: (312) 564-5757

*Counsel for Plaintiff*
*Nabih "Nick" Kanaan*

COMPLAINT