1  Shaun M. Murphy (SBN 194965)
2  Charles L. Gallagher (SBN 167093)
   SLOVAK BARON EMPEY MURPHY & PINKNEY LLP
3  74774 CA-111
4  Indian Wells, CA 92210
   Telephone: (760) 322-2275
5  Email: murphy@sbemp.com

6
7  Attorneys for Defendant Nizar Yaqub

8              UNITED STATES DISTRICT COURT
9
10             NORTHERN DISTRICT OF CALIFORNIA
11

12  NABIH "NICK" KANAAN,              **CASE NO.: 5:21-cv-09591-PCP**

13        Plaintiff,                  Judge: Hon. Casey Pitts

14
    v.                               **DECLARATION OF SHAUN M.
15                                   MURPHY IN SUPPORT OF
                                     DEFENDANT'S MOTION FOR
16  NIZAR YAQUB, an individual,      PARTIAL SUMMARY JUDGMENT**

17        Defendant.
                                     Date:        May 29, 2025
18                                   Time:        10:00 a.m.
19                                   Dept.:       Courtroom 8

20
                                     Action Filed:  December 10, 2021
21                                   TSC:           June 24, 2025
22                                   Trial Date:    Not Set
23

24
25  I, Shaun M. Murphy, declare:

26      I am an attorney licensed to practice before the Federal District Court for the

27  Northern District of California and am a partner in the law firm of Slovak Baron

28  Empey Murphy & Pinkney, LLP, attorneys of record for Defendant Nizar Yaqub

Slovak Baron Empey Murphy & Pinkney LLP
74774 Highway 111
Indian Wells, CA 92210

("*Defendant*"). I have personal knowledge of the facts set forth herein and if called upon I would testify competently to such matters.

1. Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiff Nabih "Nick" Kanaan's ("*Plaintiff*") First Amended Complaint, the operative complaint on file in this action. (Dkt. 18.)

2. Attached hereto as **Exhibit 2** is a true and correct copy of the Court's Order Denying Motion to Dismiss First Amended Complaint or, in the Alternative, to Strike Portions of First Amended Complaint, dated August 15, 2022. (Dkt. 40.)

3. Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiff's Notice of Voluntary Dismissal of Defendant The Inn at Del Monte Beach, LLC, without Prejudice, filed on September 19, 2022. (Dkt. 42.)

4. Attached hereto as **Exhibit 4** is a true and correct copy of the Court's Order Denying Motion to Dismiss First Amended Complaint and Vacating January 5, 2023 Hearing, dated October 27, 2022. (Dkt. 44.)

5. Attached hereto as **Exhibit 5** is a true and correct copy of the Court's Order Denying Motion to Dismiss First Amended Complaint for Failure to Join an Indispensable Party, dated May 17, 2023. (Dkt. 54.)

6. Attached hereto as **Exhibit 6** is a true and correct copy of Defendant's Answer to First Amended Complaint filed on May 31, 2023. (Dkt. 55.)

7. Attached hereto as **Exhibit 7** is a true and correct copy of the Court's Order Denying in Part and Granting in Part Plaintiff's Motion to Strike dated December 26, 2023. (Dkt. 71.)

8. Attached hereto as **Exhibit 8** is a true and correct copy of the letter dated June 1, 2018, from William J. Murray, prior counsel for Defendant, to Plaintiff Nabih Kanaan. Mr. Murray's letter was produced to our office by Plaintiff on or about November 18, 2024, in response to Defendant's Request for Production, Set One. The letter bares Bates-Stamp Numbers "Kanaan 083" and "Kanaan 084" in the upper

Slovak Baron Empey Murphy & Pinkney LLP
74774 Highway 111
Indian Wells, CA 92210

DECLARATION OF SHAUN M. MURPHY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

righthand corners indicating its production by Plaintiff.

9.   Mr. Murray's June 1, 2018, letter references a capital call in or about 2010 and that Plaintiff's membership interest in The Inn at Del Monte Beach, LLC. The letter is also referenced in Paragraph 29 of Plaintiff's First Amended Complaint.

10.   Attached hereto as **Exhibit 9** is a true and correct copy of the relevant portions of the transcript of the Deposition of Plaintiff Nabih "Nick" Kanaan, Volume 2, taken on March 18, 2025. At page 89:7-12, and pages 91:10 – 92:12 of the transcript, Plaintiff admits that he was aware of the alleged use of LLC funds for defendant's personal expenses no later than 2011, approximately 10 years prior to the filing of this action.

11.   Our office has been in contact with lead counsel for Plaintiff, Jennifer Gordon at Lorium Law in Chicago, and has confirmed that while Plaintiff intends to file a motion for summary judgment in the near-future, he has no immediate intention of filing a cross-motion for summary judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of April 2025 at Indian Wells, California.

*[s]* Shaun M. Murphy

Shaun M. Murphy

Slovak Baron Empey Murphy & Pinkney LLP
74774 Highway 111
Indian Wells, CA 92210

EXHIBIT "1"

Amjad M. Khan (SBN 237325)
*amjad.khan@bnsklaw.com*
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile:  (310) 593-9980

Jennifer L. Gordon (*pro hac vice*)
*jgordon@loriumlaw.com*
**LORIUM LAW**
180 N. LaSalle Street, Suite 3700
Chicago, Illinois   60601
Telephone: (312) 564-5757
Facsimile: (312) 564-5758

*Counsel for Plaintiff*
*Nabih "Nick" Kanaan*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABIH "NICK" KANAAN,<br><br>Plaintiff,<br><br>v.<br><br>NIZAR YAQUB, an individual, and THE INN AT DEL MONTE BEACH, LLC, a California Limited Liability Company,<br><br>Defendant(s). | Case No. 5:21-cv-09591<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY**<br>2. **BREACH OF CONTRACT**<br>3. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>4. **VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br>5. **DECLARATORY AND INJUNCTIVE RELIEF**<br>6. **FRAUD – CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Nabih "Nick" Kanaan ("Kanaan") brings this action under the California Business and Professions Code, the California Revised Uniform Limited Liability Company Act, and common law against Defendants Nizar Yaqub ("Yaqub") and The Inn at Del Monte Beach, LLC ("The LLC"), regarding the unlawful and fraudulent management and transfer of assets and membership units of The LLC by Yaqub as against Kanaan. Plaintiff Kanaan alleges the following based upon information, belief, and investigation.

# I.    INTRODUCTION

1.    This lawsuit arises from the formation of a business by two owners, the passing of one of the business owners, and the subsequent takeover and "freezing out" or "squeezing out" of Plaintiff Nabih "Nick" Kanaan ("Kanaan" or "Plaintiff") as the founding 30% minority interest holder in defendant The Inn at Del Monte Beach, LLC ("The LLC"), which owns a successful and profitable real estate property in Monterey, California (the "Property"). Yaqub's end goal – achieved after several years of bad faith breaches of fiduciary duty, fraud, and breaches of statutory and contractual obligations – was to (i) expropriate for himself the annual income generated by Kanaan's 30% ownership interest, (ii) misappropriate funds from the LLC, and (iii) convert, without compensation, Kanaan's ownership interest in the LLC for himself.

2

**2.** As explained by F. Hodge O'Neal & Robert B. Thompson in "Oppression of Minority Shareholders and LLC Members," at § 1:1:

> 'Squeeze out' means the use by some of the owners or participants in a business enterprise of strategic position, inside information, or powers of control, or the utilization of some legal device or technique, to eliminate from the enterprise one or more of its owners or participants[.] 'Partial squeeze-outs' [also called 'freeze-outs' refer to] actions which reduce the participation or powers of a group of participants in the enterprise, diminishes their claims on earnings or assets, or otherwise deprives them of business income or advantages to which they are entitled. A squeeze-out normally does not contemplate fair payment to the squeezees for the interests, rights, or powers which they lose."

This is a case of such a squeeze-out, driven by Yaqub to unjustly and unlawfully deprive Kanaan of his ownership interests and profits in The LLC and the Property.

**3.** Through fraud, falsification of company documents, and concealment, Yaqub wrongfully deprived Plaintiff of his ownership in The LLC and income from the Property.

3

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

## II.    PARTIES

**4.**      Plaintiff is an individual, resident and citizen of the State of Illinois. Plaintiff asserts his claims solely in his individual capacity, based on Defendant's infringement of Plaintiff's individual rights, oppression of Plaintiff's minority ownership and management interests, and fiduciary breaches and other bad faith conduct alleged herein that were directed to him, which harms and injuries are separate and distinct from any harms and injuries to The LLC itself. Plaintiff does not assert any derivative claims in this Complaint.

**5.**      Defendant Yaqub is an individual, resident and citizen of the State of California and the alleged manager and majority owner of The LLC. Yaqub purportedly installed himself as manager approximately July 2011 upon the passing of Seeley.

**6.**      The LLC is a California limited liability company.

## III.    JURISDICTION AND VENUE

**7.**      This court has personal jurisdiction over Defendant Yaqub as Yaqub is a citizen of California residing within this District.

**8.**      This Court has diversity jurisdiction over the parties and matter pursuant to 28 U.S.C. § 1332 in that the Plaintiff is a citizen of the State of Illinois, Defendant Yaqub is a citizen of the State of California, and the amount in

controversy, without interest and costs, exceeds the sum or value specified by 28
U.S.C. § 1332.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and
(b)(2). Defendant Yaqub resides in this District, the Property is located in this
District, and a substantial part of the events giving rise to the claims herein
occurred in this District.

## IV.    COMMON ALLEGATIONS

10.    In 1998, Plaintiff and Yaqub formed Medical Equities, LLC
("Medical Equities"), a California limited liability company, along with Linda
Seeley.  Seeley was Yaqub's spouse and the registered agent of Medical Equities.
Medical Equities was formed for the purpose of real estate purchase and
investment. Plaintiff owned a 30% member interest; Seeley owned a 30% member
interest; and Yaqub owned a 40% member interest.

11.    In 1999, Medical Equities purchased a property located at (the
"Morgan Hill Property"). The Morgan Hill Property was purchased using a
combination of funds from Medical Equity and individual funds from Plaintiff,
Seeley, and Yaqub.

12.    In 2001, the Morgan Hill Property sold for approximately
$2,100,000.00, with $148,000.00 being given to Plaintiff as his alleged 30% share

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

of the profits. The amounts given to Yaqub and Seeley were undisclosed to Plaintiff.

13.     In 2002, Medical Equities purchased the Property using $1,200,000.00 in Medical Equities cash plus $600,000.00 in FF&E financing with the intent to operate the Property as a "bed and breakfast" hospitality property.

14.     On or about June 26, 2002, Plaintiff and Seeley applied for and obtained a liquor license (No. 387141) for the Property.

15.     Between 2002 and 2007, Plaintiff, Yaqub and Seeley owned Medical Equities together which owned and operated the Property as a bed and breakfast.

16.     On November 1, 2007, Plaintiff, Yaqub and Seeley formed a new limited liability company, The LLC, to hold and manage the Property by executing The LLC's Operating Agreement (the "Operating Agreement").  A copy of the Operating Agreement is attached hereby as **Exhibit A**.  Plaintiff owned a 30% stake in The LLC and Seeley owned a 70% stake in the The LLC.  Yaqub was not an owner of The LLC.

17.     On July 14, 2008, The LLC obtained a loan to remodel the Property in the amount of $1,755,000.00 from Pinnacle Bank (the "Pinnacle Loan") with Medical Equities as the Grantor, and secured by the proceeds from the Liquor License No. 387141 (or any liquor license thereafter acquired).

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

18.     In July 2009, The LLC obtained a personal loan from Doris Knapp in the amount of $140,000.00, secured by a mortgage on the Property and signed by Seeley as manager of The LLC (the "Knapp Loan"). A copy of the Knapp Loan is attached hereto as **Exhibit B**.

19.     The Pinnacle Loan was refinanced on December 29, 2009 to make as parties The LLC and Pinnacle Bank, to include as collateral the inventory, equipment and other intangibles of the Property, and to further include as collateral the liquor license transferred from Medical Equities to The LLC, license no. 2031982215 (the "Liquor License") and issued September 1, 2009.

20.     In April 2011, Seeley purportedly transferred all of her ownership interest in The LLC to Yaqub via an "Option Notice".  The Option Notice does not contain the addresses or proof of sending the notice to Plaintiff, nor does it contain a date of execution.  Furthermore, any transfer under Article 6 of the Operating Agreement must be accompanied by an agreement by the transferee to be bound by the terms of Article 6 of the Operating Agreement. See **Exhibit A**, p. 16.  Plaintiff has never seen and is not aware of any such agreement being delivered by Yaqub.

21.     In July 2011, Seeley passed away after a years-long fight against cancer.

22.     In December 2011, Yaqub, purporting to be the sole member of The LLC, drafted the "First Amended Operating Agreement" for The LLC, a copy of

7

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

which is attached hereto as **Exhibit C**. Plaintiff had no knowledge of the First Amended Operating Agreement being drafted.

23.     On February 4, 2013, Yaqub cancelled Medical Equities with the California Secretary of State.  Yaqub stated on the Limited Liability Certificate of Cancellation that this was by vote of all members.  Plaintiff was never contacted nor did he consent to the cancellation of Medical Equities. A copy of the Limited Liability Certificate of Cancellation submitted by Yaqub is attached hereto as **Exhibit D**.

24.     In July 2015, Mr. German Baldeon (on behalf of the Baldeon-Knapp Trust) filed suit to collect on the Knapp Loan due to failure of The LLC to make payments pursuant to the promissory note memorializing the loan (Superior Court of California, County of Monterey, Case No. M130372).  This lawsuit alleged that The LLC had not made payments on the Knapp Loan since September 2013.

25.     In or around September 2017, Yaqub, on behalf of The LLC, applied for another liquor license for the Property. In the application to the California Department of Alcoholic Beverage Control ("ABC"), Yaqub stated that he owned 92% of The LLC, and Plaintiff owned 8% of The LLC.  This representation directly contradicted Yaqub's representation in the First Amended Operating Agreement that Yaqub was the sole member of The LLC.

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

**26.** In December 2007, The LLC settled the lawsuit regarding the Knapp Loan with the Baldeon-Knapp Trust. Neither the details of the settlement nor the lawsuit were communicated to Plaintiff, despite Plaintiff's ownership interests in The LLC.

**27.** In April 2018, the ABC sent a letter to The LLC to Yaqub's attention pointing out the discrepancy between the prior information submitted by The LLC for its liquor license, and the information supplied on this most recent application. Specifically, the ABC noted that the then-current active license was issued to The LLC with the owners being identified as Linda Seeley (70% ownership) and Nick Kanaan (30% ownership). The ABC requested documentation to verify when and how the ownership percentages had changed in order to issue the new liquor license.

**28.** In response to the April 2018 letter from the ABC, Yaqub falsified documents to make it seem as though Plaintiff's ownership percentage was decreased from 30% to only 8%.

**29.** On or about June 1, 2018, Plaintiff received a letter from counsel for Yaqub in which Plaintiff read for the first time that a capital call was allegedly held for The LLC in 2010 and that Plaintiff's equity interest in The LLC had allegedly been decreased from 30% to 8%.

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

**30.** Thereafter, in November 2018 Yaqub drafted "Minutes to Memorialize Prior Action Taken" ("Minutes"), which stated:

> **Requests having been made in April 2008 and in October 2009 on the members of the LLC to make capital contributions of $700,000.00 and $300,000.00 required to fund operations and improvements, and only Linda Seeley [or Nizar "Nick" Yaqub, depending on timing] having made the requested capital contribution, and Nick Kanaan having failed to contribute any capital, effective January 2011 the membership interests of the LLC are revised to the following:**

| | |
|---|---|
| **Linda Seeley [Nizar "Nick" Yaqub]** | **92%** |
| **Nick Kanaan** | **8%** |

A copy of the purported Minutes are attached hereto as **Exhibit E**.

**31.** In approximately September 2019, Plaintiff discovered that Seeley had used The LLC's credit cards and other business funds to pay for her personal medical debts without Plaintiff's knowledge or approval. In fact, Seeley spent several hundred thousand dollars of funds belonging to The LLC on personal medical expenses prior to her death.

**32.** At that same time, Plaintiff also discovered that Yaqub and Seeley had used The LLC's credits cards and other business funds to pay for other personal expenses without Plaintiff's knowledge or approval. The precise amount of money belonging to The LLC that was spent by Yaqub and Seeley on personal, non-business expenses is unknown to Plaintiff at this time because Yaqub has

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

continually withheld The LLC's financial information and access to the same from Plaintiff.

33.     Article 3.10.1.3 of the Operating Agreement of The LLC states that any amendment to the Operating Agreement requires unanimous approval of the Members of The LLC. Plaintiff provided no approval for Yaqub to draft and execute the First Amended Operating Agreement either before or subsequent to its drafting.

## V.     CAUSES OF ACTION

### A. COUNT I - BREACH OF FIDUCIARY DUTY

34.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

35.     Defendant Yaqub is a controlling interest holder and member of The LLC, and therefore owed fiduciary duties of care and fidelity to Plaintiff as a non-controlling minority interest holder of The LLC.

36.     Section 17704.09 of the California Revised Uniform Limited Liability Company Act (the "RULLCA") provides that, in manager-managed LLCs such as The LLC, the managers owe duties of loyalty and care to the company and to the other members. With respect to the duty of care in particular, managers are prohibited from "engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." (Cal. Corp. Code § 17704.09(c).)

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

Managers are also required, under Section 17704.09(d), to "discharge the duties to a limited liability company and the other members under this title or under the operating agreement and exercise any rights consistent with the obligation of good faith and fair dealing." All of the conduct of Defendant Yaqub was subject to the fiduciary requirements of Section 17704.09 of the RULLCA.

37.    Defendant Yaqub owed and continues to owe fiduciary duties of care and fidelity to Plaintiff as his partner in The LLC, as a matter of common law, and under Section 17153 of the California Corporations Code, for all bad faith conduct which occurred prior to January 1, 2014. Defendant Yaqub's  misconduct after January 1, 2014 is subject to the fiduciary obligations set forth in Section 17704.09 of the RULLCA.

38.    Defendant Yaqub has violated his fiduciary duties of care and of good faith and fair dealing owed to Plaintiff by (among other grossly negligent, bad faith, and intentional misconduct):

    a.  Failing to provide notice to Plaintiff of any alleged capital contribution calls;

    b.  Falsifying documents related to capital contribution calls;

    c.  Colluding in bad faith with Seeley to use The LLC's business funds for personal expenses;

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

d.  Colluding in bad faith to purportedly reduce Plaintiff's 30% ownership interest in The LLC to 8% by invoking an alleged terminating event/forced buy-out in bad faith in order to misappropriate Plaintiff's capital account, his pro rata share of the profits of The LLC and the Property, and all other income proportionate to his 30% ownership interest.

e.  Intentionally withholding information and documents from Plaintiff, excluding him from alleged meetings, and failing to give him notice of these supposed meetings.

39.  As a direct and proximate result of Yaqub's misconduct, Plaintiff has suffered severe financial damages which will be established by the proofs at trial. The conduct described herein constitutes "oppression, fraud or malice" as those terms are defined in the California Civil Code § 3294, and Plaintiff is therefore entitled to punitive damages in an amount according to proof. Plaintiff is further informed and believes, and based upon such information and belief alleges that the conduct described herein constituting oppression, fraud or malice was committed by Yaqub as the purported manager of The LLC.

## B. COUNT II – BREACH OF CONTRACT

40.  Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

13

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

41.  Plaintiff and Yaqub, by virtue of Seeley's purported transfer of her ownership interests in The LLC to Yaqub, are parties to the Operating Agreement. The LLC is bound by the Operating Agreement, and also by virtue of Section 17701.11(a) of RULLCA, which provides that "A limited liability company is bound by and may enforce the operating agreement."

42.  Article 2.1 of the Operating Agreement entitled "Capital Contributions" states, in pertinent part, "No Member shall be required to make any additional contributions to the capital of the Company [beyond the initial formation contribution]. Additional contributions to the capital of the company shall be made only with a two-thirds (2/3) vote of the Members."

43.  Article 3.11.3 of the Operating Agreement entitled "Notice of Meeting" states, in pertinent part, "Written notice of a meeting of Members shall be sent or otherwise given to each Member in accordance with Corporations Code section 17104(c)(2) not less than ten (10) nor more than sixty (60) days before the date of the meeting. The notice shall specify the place, date and hour of the meeting and the general nature the business to be transacted."

44.  Article 3.11.4 of the Operating Agreement entitled "Validity of Action" states, in pertinent part, "Any action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice."

45.     Article 3.11.5 of the Operating Agreement entitled "Action by Written Consent without Meeting" states, in pertinent part, "Unless the consents of all Members entitled to vote have been solicited in writing, (i) notice of any Member approval of an amendment to the Articles or this Agreement, a dissolution of the Company, or a merger of the Company, without a meeting by less than unanimous written consent, shall be given at least ten (10) days before the consummation of the action authorized by such approval, and (ii) prompt notice shall be given of the taking of any other action approved by Members without a meeting by less than unanimous written consent, to those Members entitled to vote who have not consented in writing."

46.     Section 17701.10(c)(16)(g) of RULLCA provides that an "operating agreement may alter or eliminate the indemnification for a member or manager provided by subdivision (a) of Section 17704.08 and may eliminate or limit a member or manager's liability to the limited liability company and members for money damages, <u>except for … (4) Intentional infliction of harm on the limited liability company or a member [or] (5) An intentional violation of criminal law.</u>" (Emphasis added).

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

**47.** Defendant Yaqub breached Article 3 of the Operating Agreement (among other grossly negligent, bad faith, and intentional misconduct):

    a.  Failing to provide notice to Plaintiff of any alleged capital contribution calls;

    b.  Falsifying documents related to capital contribution calls;

    c.  Colluding in bad faith with Seeley to use The LLC's business funds for personal expenses;

    d.  Colluding in bad faith to purportedly reduce Plaintiff's 30% ownership interest in The LLC to 8% by invoking an alleged terminating event/forced buy-out in bad faith in order to misappropriate Plaintiff's capital account, his pro rata share of the profits of The LLC and the Property, and all other income proportionate to his 30% ownership interest.

    e.  Intentionally withholding information and documents from Plaintiff, excluding him from alleged meetings, and failing to give him notice of these supposed meetings.

**48.** Plaintiff fully performed all obligations required of him under the Operating Agreement and did not commit any acts in breach of the Operating Agreement or any duty owed by Plaintiff to Yaqub or Seeley.

16

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

**49.** The limitation of liability provisions of Section 4 of the Operating Agreement do not shield Yaqub from liability under their express terms and under Section 17701.10(c)(16)(g) of RULLCA because Yaqub conducted himself wholly in bad faith in order to inflict intentional harm on Plaintiff as a founding member of The LLC.

**50.** As a direct and proximate result of Yaqub's misconduct, Plaintiff has suffered severe financial damages which will be established according to the proofs at trial.

## C. COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**51.** Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

**52.** Plaintiff on the one hand and The LLC and Yaqub on the other hand are parties to the Operating Agreement. The LLC is bound by Section 17701.11(a) of RULLCA which provides that "[a] limited liability company is bound by and may enforce the operating agreement."

**53.** The Operating Agreement contained, by operation of law, an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. The covenant of good faith and fair dealing finds particular application in situations

17

where, as here, The LLC and Yaqub as manager were invested with a discretionary power affecting the rights of Plaintiff as a minority interest holder. Such power must be exercised in good faith. The LLC and Yaqub were prevented, by the implied covenant, from unfairly frustrating Plaintiff's right to receive the benefits to which he was entitled under the Operating Agreement.

54. Here, Plaintiff owned a 30% founding ownership interest in The LLC. This was a "Membership Interest" which empowered him to receive a share of the "Net Profit" in proportion to his Membership Interest pursuant to Article 5.2.2 of the Operating Agreement. Plaintiff was further empowered to receive distributions from The LLC first in proportion to his unreturned capital contributions (until the same has been returned), and thereafter in proportion to his Membership Interest. Both of these constituted a valuable property interest in the assets of and income generated by The LLC, including but not limited to periodic cash distributions and portion of the profits.

55. Plaintiff fully performed all obligations required of him under the Operating Agreement and did not commit any acts in breach of the Operating Agreement or any duty owed by Plaintiff to Yaqub or Seeley.

56. It was not and could not constitute a reasonable exercise of discretion to reduce without authorization a founding Member's interest in order to steal his capital account, his portion of the net profits of The LLC, and his portion of all

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

distributions made by The LLC. Yaqub accomplished this by deliberately failing to notify Plaintiff of any alleged capital contribution calls or meetings regarding the same, and then fraudulently executing the Amended Operating Agreement reducing Plaintiff's Membership Interest to 8%. These bad faith actions violated the implied covenant of good faith and fair dealing.

57.    As a direct and proximate result of Yaqub's misconduct, Plaintiff has suffered severe financial damages which will be established by the proofs at trial.

### D. COUNT IV – VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *et seq.*

58.    Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

59.    The California Unfair Competition Law ("UCL"), set forth in California Business and Professions Code Section 17200 *et seq.*, prohibits acts of unfair competition, which include "any unlawful, unfair or fraudulent business act or practice…" Section 17200 of the UCL imposes strict liability for violations and does not require proof that Defendants intended to injure anyone.  The unlawful practice prohibited by section 17200 are any practices forbidden by law, whether civil or criminal, federal, state or municipal, statutory, regulatory, or made by the court. Such unlawful business practices are independently actionable under Section 17200 and subject to the distinct remedies provided thereunder.

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

**60.** Yaqub's bad faith conduct as alleged herein violated, and continue to violate, Section 17200 of the UCL. Yaqub's  conduct constitutes an unfair business practice within the meaning of Section 17200 of the UCL because it violates the strong public policy of the State of California (a) to ensure that the investing public and minority interest holders are protected from frauds, deceptions, fiduciary breaches, and other bad faith conduct committed in investment transactions; (b) to ensure that minority interest holders are not subject to oppressive and self-dealing actions by majority interest holders in breach of their fiduciary duties; and (c) to ensure that the managers of business enterprises comply with their fiduciary and statutory duties and do so in good faith.

**61.** Yaqub's conduct as alleged herein violated, and continues to violate, Section 17200 of the UCL. Yaqub's conduct constitutes a fraudulent business practice within the meaning of Section 17200 of the UCL because Yaqub hid the truth about his improper motives, bad faith, and breach of his fiduciary duties from Plaintiff by failing to provide Plaintiff with notice for any activities of The LLC as was required by the Operating Agreement, fraudulently drafting "minutes" of meetings that never occurred, usurping the vast majority of Plaintiff's ownership interest in The LLC without cause or compensation, and fraudulently amending the Operating Agreement.

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

62.     As a result of Yaqub's unlawful, unfair and fraudulent conduct performed in furtherance of his scheme to divest Plaintiff of ownership and rights in The LLC, Yaqub has been unjustly enriched in an amount yet to be ascertained, which will be proven at trial.

63.     Plaintiff has suffered "injury in fact" within the meaning of Section 17204 of the UCL as a result of Yaqub's actions. Plaintiff has suffered a distinct and palpable injury as a result of Yaqub's misconduct which is (a) concrete and particularized, and (b) is actual and imminent, not conjectural or hypothetical, including but not limited to the extinguishment of the majority of his 30% founding ownership interest in The LLC, the misappropriation of his capital account, and the misappropriation of his share of the profits and distributions of The LLC and the Property.

64.     Under Section 17203 of the UCL, Plaintiff is entitled to equitable relief in the form of an accounting, restitution, and disgorgement of all ill-gotten gains, earnings, profits, compensation and benefits obtained by Yaqub. The Court should further impose a constructive trust on all ill-gotten gains that presently and in the future are withheld by Yaqub.

65.     Moreover, pursuant to the California Business and Professions Code Section 17205, Plaintiff's remedies under Section 17200 *et seq.* are cumulative with remedies under all other statutory and common law remedies available.

66.     Pursuant to Section 17203 of the UCL, Plaintiff seeks a further order of this Court enjoining Yaqub from continuing to conduct business through the unlawful, unfair and fraudulent business practices and acts described herein. Plaintiff further seeks an injunction mandating that the *status quo ante* be restored regarding his investment position in The LLC.

## E. COUNT V – FOR DECLARATORY AND INJUNCTIVE RELIEF

67.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

68.     Yaqub was the sole Manager of The LLC at the time The LLC purported to reduce Plaintiff's founding membership interest from 30% to only 8% based on an alleged capital call.

69.     An actual controversy has arisen between Plaintiff and Defendant in that Plaintiff contends, and Defendant Yaqub denies, that Yaqub's reduction of Plaintiff's membership interest based on an alleged capital call was invalid and done in bad faith, no reduction of Plaintiff's membership interest has occurred in equity or at law, and as such any taking of Plaintiff's membership interest by The LLC and/or Yaqub is null and void; and Plaintiff is entitled to be restored to the *status quo ante* regarding his investment position in The LLC.

70.     A judicial declaration is needed so that the parties may ascertain their rights in this controversy.

22

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

**71.**     Plaintiff is without a plain, speedy and adequate remedy in the ordinary course of law to compel Yaqub to restore Plaintiff's 30% membership interest in The LLC. In the facts of the case, the balance of convenience and hardships tips strongly in favor of the Plaintiff.

**72.**     Plaintiff has suffered and will continue to suffer irreparable injury, unless and until this Court enjoins Yaqub from continuing to misappropriate funds which belong to Plaintiff and restores Plaintiff's 30% membership interest in The LLC. The Court should also impose a constructive trust on all ill-gotten gains that presently and in the future are obtained by Yaqub, including but not limited to: (i) 30% of all distributable cash, (ii) $3,000.00 corresponding to Plaintiff's capital account, and (iii) 30% of all profits generated from the Property and any other assets belonging to The LLC.

**73.**     Yaqub's illegal and bad faith conduct is ongoing and threatens to be continued in the future, and therefore should be enjoined.

**F. COUNT VI – FRAUD – CONCEALMENT**

**74.**     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

**75.**     Yaqub intentionally failed to disclose material facts to Plaintiff, including but not limited to the following:

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

a. That Yaqub, of his own volition and without proper notice, was initiating a capital call;

b. That Yaqub, of his own volition and without proper notice, drafted and executed an Amended Operating Agreement for The LLC in contravention of the Operating Agreement;

c. That Yaqub, of his own volition and without proper notice, retroactively drafted minutes for alleged decisions by The LLC which were detrimental to Plaintiff as a minority interest holder; and

d. That Yaqub had failed to properly renew the liquor license for The Property.

**76.** Plaintiff was unaware of the facts that Yaqub concealed from him.

**77.** When Yaqub concealed these facts from Plaintiff, he did so with the intention to deceive, defraud, and induce Plaintiff into acting on the representations made by Yaqub to Plaintiff, and to induce Plaintiff to refrain from investigating further into the records and actions of The LLC.

**78.** Had Yaqub informed Plaintiff of the concealed facts, Plaintiff would have acted differently.

**79.** As a direct and proximate result of Yaqub's conduct, Plaintiff has suffered damages in an amount to be proven at trial as a result of the loss of profits

24

from the Property, loss of ownership interest and distributions from The LLC, loss of corporate opportunities, and damages.

**80.** Yaqub's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages under California Civil Code § 3294.

### G. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief and judgment as follows:

1. For injunctive relief requiring Defendant Yaqub to restore Plaintiff to the *status quo ante*;

2. For an accounting, restitution and disgorgement by Yaqub of all ill-gotten gains, profits, and benefits and imposition of a constructive trust regarding such monies;

3. For damages against Yaqub according to proof at trial;

4. For exemplary or punitive damages on such claims and in such amounts as may be permitted by law;

5. For an award of attorneys' fees and costs of suit;

6. For pre-judgment interest as may be allowed by law; and

7. For such other relief as is authorized and just in the circumstances.

25

FIRST AMENDED COMPLAINT
CASE NO. 5:21-cv-09591

Dated: February 16, 2022

Respectfully submitted,

/s/ Amjad M. Khan

Amjad M. Khan
  amjad.khan@bnsklaw.com
**BROWN NERI SMITH KHAN, LLP**
11601 Wilshire Blvd #2080
Los Angeles, CA 90025
Telephone: 310 593 9899

/s/ Jennifer L. Gordon

Jennifer L. Gordon (*pro hac vice*)
  jgordon@loriumlaw.com
**LORIUM LAW**
180 N. LaSalle Street, Suite 3700
Chicago, Illinois 60601
Telephone: (312) 564-5757

*Counsel for Plaintiff*
*Nabih "Nick" Kanaan*

26

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: February 16, 2022

Respectfully submitted,

/s/ Amjad M. Khan
Amjad M. Khan
  amjad.khan@bnsklaw.com
**BROWN NERI SMITH KHAN, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9899

/s/ Jennifer L. Gordon
Jennifer L. Gordon (*pro hac vice forthcoming*)
  jgordon@loriumlaw.com
**LORIUM LAW**
180 N. LaSalle Street, Suite 3700
Chicago, Illinois 60601
Telephone: (312) 564-5757

*Counsel for Plaintiff*
*Nabih "Nick" Kanaan*

# EXHIBIT A

# OPERATING AGREEMENT
## FOR
## The Inn at Del Monte Beach
## A California Limited Liability Company

# TABLE OF CONTENTS

                                                                Page

ARTICLE 1.   ORGANIZATIONAL MATTERS  . . . . . . . . .        1

     1.1.   Name        . . . . . . . . . . . . .              1
     1.2.   Term.       . . . . . . . . . . . . .              1
     1.3.   Office and Agent. . . . . . . . . . .              1
     1.4.   Business of the Company . . . . . . .              1

ARTICLE 2.   CAPITAL CONTRIBUTIONS . . . . . . . . . .        2

     2.1.   Capital Contributions. . . . . . . . .            2
     2.2.   Capital Accounts. . . . . . . . . . .             2
     2.3.   No Interest. . . . . . . . . . . . .              2

ARTICLE 3.   MEMBERS    . . . . . . . . . . . . . . .         2

     3.1.    Limited Liability. . . . . . . . . .             2
     3.2.    Admission of Additional Members . . . . .        2
     3.3.    Withdrawals or Resignations.  . . . . . . .      2
     3.4.    Payments to Members. . . . . . . . . .           3
     3.5.    Expulsion of Members. . . . . . . . . .          3
     3.6.    Members Not Agents. . . . . . . . . .            3
     3.7.    Competing Activities. . . . . . . . . .          3
     3.8.    Transactions With The Company.  . . . . .        4
     3.9.    Remuneration To Members. . . . . . . . .         4
     3.10.   Voting Rights. . . . . . . . . . . . .           4
             3.10.1.  Unanimous Approval.  . . . . . .        4
             3.10.2.  Approval by Members Holding
                      a Majority Interest. . . . . . .        4
     3.11.   Meetings of Members.  . . . . . . . . .          5
             3.11.1.  Date, Time and Place of
                      Meetings of Members.  . . . . .         5
             3.11.2.  Power to Call Meetings.  . . . . .      5
             3.11.3.  Notice of Meeting. . . . . . . .        5
             3.11.4.  Validity of Action.  . . . . . .        5
             3.11.5.  Action by Written Consent
                      without a Meeting. . . . . . .  6
             3.11.6.  Adjourned Meeting; Notice. . . . .      6
             3.11.7.  Quorum.  . . . . . . . . . . . .        6
             3.11.8.  Waiver of Notice or Consent. . . .      6
             3.11.9.  Telephonic Participation
                      by Member at Meetings. . . . . .        7
             3.11.10. Record Date. . . . . . . . . . .        7
             3.11.11. Proxies. . . . . . . . . . . . .        7
     3.12.   Certificate of Membership Interest. . . . .      8
             3.12.1.  Certificate. . . . . . . . . . .        8

i

**TABLE OF CONTENTS**
(Continued)

Page

3.12.2. Cancellation of Certificate. . . . .   8
3.12.3. Replacement of Lost,
        Stolen, or Destroyed Certificate. .   8

ARTICLE 4. MANAGEMENT AND CONTROL OF THE COMPANY . . . .   9

4.1. Management of the Company by Manager. . . . .   9
    4.1.1. Exclusive Management by Manager. . .   9
    4.1.2. Agency Authority of Manager. . . . .   9
4.2. Election of Manager. . . . . . . . . . . . .   9
    4.2.1. Number, Term and Qualifications. . .   9
    4.2.2. Resignation. . . . . . . . . . . . .   9
    4.2.3. Removal. . . . . . . . . . . . . . .   9
    4.2.4. Vacancies. . . . . . . . . . . . . .   10
4.3. Powers of Manager. . . . . . . . . . . . . .   10
    4.3.1. Powers of Manager. . . . . . . . . .   10
    4.3.2. Limitations on Powers of Manager. .   10
4.4. Performance of Duties; Liability of Manager.   11
4.5. Devotion of Time. . . . . . . . . . . . . . .   11
4.6. Competing Activities. . . . . . . . . . . . .   11
4.7. Transactions between the Company and the Manager.   11
4.8. Payments to Manager. . . . . . . . . . . . .   12
    4.8.1. Management Fee. . . . . . . . . . . .   12
    4.8.2. Services Performed by Manager or Affiliates  12
    4.8.3. Expenses. . . . . . . . . . . . . . .   12
4.9. Officers. . . . . . . . . . . . . . . . . . .   12
    4.9.1. Appointment of Officers. . . . . . .   12
4.10. Limited Liability. . . . . . . . . . . . . .   13
4.11. Membership Interests of Manager. . . . . . .   13

ARTICLE 5. ALLOCATIONS OF NET PROFITS AND NET LOSSES AND
           DISTRIBUTIONS . . . . . . . . . . . . . . . 13

5.1. Definitions. . . . . . . . . . . . . . . . .   13
5.2. Allocations of Net Profit and Net Loss. . . .   14
    5.2.1. Net Loss. . . . . . . . . . . . . . .   14
    5.2.2. Net Profit. . . . . . . . . . . . . .   14
5.3. Special Allocations. . . . . . . . . . . . .   14
    5.3.1. Minimum Gain Chargeback. . . . . . .   14
    5.3.2. Chargeback of Minimum Gain Attributable
          to Member Nonrecourse Debt. . . .   14
    5.3.3. Nonrecourse Deductions. . . . . . . .   15
    5.3.4. Member Nonrecourse Deductions. . . .   15
    5.3.5. Qualified Income Offset. . . . . . .   15
5.4. Code Section 704(c) Allocations. . . . . . .   16
5.5. Distribution of Assets by the Company. . . .   16

ii

**TABLE OF CONTENTS**
(Continued)

Page

ARTICLE 6.  TRANSFER AND ASSIGNMENT OF INTERESTS  . . . .    16

    6.1.   Transfers. . . . . . . . . . . . .    16
        6.1.2.   Transfer of Economic Interest. . . .    17
        6.1.3.   Rights of Company and Members
                in Transferred Membership Interests.
    6.2.   Voluntary Withdrawal. . . . . . . . . . . .    19
    6.3.   No Release of Liability. . . . . . . . . .    19
    6.4.   Involuntary Withdrawal. . . . . . . . . . .    19

ARTICLE 7.  CONSEQUENCES OF DISSOLUTION EVENTS AND TERMINATION OF
             MEMBERSHIP INTEREST . . . . . . . . . . . .    19

    7.1.   Dissolution Event. . . . . . . . . . . .    19
    7.2.   Withdrawal. . . . . . . . . . . . . . .    20
    7.3.   Purchase Price. . . . . . . . . . . . .    20
    7.4.   Notice of Intent to Purchase. . . . . . . .    20
    7.5.   Election to Purchase Less Than
          All of the Former Member's Interest. . . . .    20
    7.6.   Payment of Purchase Price. . . . . . . . .    20
    7.7.   Closing of Purchase of Former Member's Interest.    21

ARTICLE 8.  ACCOUNTING, RECORDS, REPORTING BY MEMBERS . .    21

    8.1.   Books and Records. . . . . . . . . . . .    21
    8.2.   Reports. . . . . . . . . . . . . . . . 22
    8.3.   Bank Accounts. . . . . . . . . . . . .    22
    8.4.   Tax Matters for the Company. . . . . . . .    22

ARTICLE 9.  DISSOLUTION AND WINDING UP  . . . . . . . .    22

    9.1.   Conditions of Dissolution. . . . . . . . .    22
    9.2.   Winding Up. . . . . . . . . . . . . . .    23
    9.3.   Order of Payment of Liabilities Upon Dissolution.    23
    9.4.   Limitations on Payments Made in Dissolution.    23
    9.5.   Certificates. . . . . . . . . . . . . .    23

ARTICLE 10. INDEMNIFICATION  . . . . . . . . . . . .    23

    10.1.  Indemnification of Agents. . . . . . . . .    23

ARTICLE 11. INVESTMENT REPRESENTATIONS  . . . . . . . .    24

    11.1.  Preexisting Relationship or Experience. . . .    24
    11.2.  No Advertising. . . . . . . . . . . . .    24
    11.3.  Investment Intent. . . . . . . . . . . .    24

iii

**TABLE OF CONTENTS**
(Continued)

|  |  | Page |
|---|---|---|
| ARTICLE 12. MISCELLANEOUS . . . . . . . . . . . . . . . . | | 24 |
| 12.1. | Counsel to the Company. . . . . . . . . . . . | 24 |
| 12.2. | Complete Agreement. . . . . . . . . . . . . . | 25 |
| 12.3. | Binding Effect. . . . . . . . . . . . . . . . | 25 |
| 12.4. | Interpretation. . . . . . . . . . . . . . . . | 25 |
| 12.5. | Jurisdiction. . . . . . . . . . . . . . . . . | 25 |
| 12.6. | Arbitration. . . . . . . . . . . . . . . . . | 25 |
| 12.7. | Severability. . . . . . . . . . . . . . . . . | 26 |
| 12.8. | Notices. . . . . . . . . . . . . . . . . . . | 26 |
| 12.9. | Amendments. . . . . . . . . . . . . . . . . . | 26 |
| 12.10. | Multiple Counterparts. . . . . . . . . . . . | 26 |
| 12.11. | Attorneys' Fees. . . . . . . . . . . . . . . | 26 |
| 12.12. | Remedies Cumulative. . . . . . . . . . . . . | 27 |
| 12.13. | Consent of Spouse. . . . . . . . . . . . . . | 27 |

iv

# OPERATING AGREEMENT
## FOR
## THE INN AT DEL MONTE BEACH
## A California Limited liability Company

THIS OPERATING AGREEMENT (this "Agreement") is made as of November 1, 2007, by and between the parties listed on the signature pages hereof (collectively referred to as the "Members" or individually as a "Member"), with reference to the following facts:

A.    The Members have previously filed Articles of Organization (the "Articles") for The Inn at Del Monte Beach (the "Company"), a limited liability company under the laws of the State of California, with the California Secretary of State.

B.    The Members desire to adopt and approve an operating agreement for the Company under the Beverly-Killea Limited Liability Company Act (the "Act").

NOW, THEREFORE, the Members of this Agreement set forth the operating agreement for the Company upon the terms and subject to the conditions of this Agreement.

## ARTICLE 1.
### ORGANIZATIONAL MATTERS

1.1  Name.  The name of the Company shall be "The Inn at Del Monte Beach."  The Company has conduct business under that name or any other name approved by the Members.

1.2. Term.  The term of the Company will commence as of the date of the filing of the Articles, and unless sooner terminated under Section 9.1, shall terminate on December 31, 2050.

1.3.  Office and Agent.  The Company shall continuously maintain an office and registered agent in the State of California as required by the Act.  The principal office of the Company shall be at 680 E Romie Lane, Salinas, California, or such location as the Members may determine.  The registered agent shall be Linda Seeley as stated in the Articles of Organization, or as otherwise subsequently determined by the Members.

1.4.  Business of the Company.  Notwithstanding the purpose of the Company which is described in the Articles, the Company shall not engage in any business other than the following without the consent of all of the Members:

1

1.4.1.   owning and operating real estate; and

1.4.2.   such other activities directly related to the foregoing business as may be necessary or advisable in the reasonable opinion of the Members to further such business.

## ARTICLE 2.
### CAPITAL CONTRIBUTIONS

2.1.  Capital Contributions.  Each Member shall make a cash contribution to the capital of the Company in the amount shown opposite the Member's name on Exhibit A attached hereto.  No Member shall be required to make any additional contributions to the capital of the Company.  Additional contributions to the capital of the Company shall be made only with a two-thirds (2/3) vote of the Members.  Except as provided in this Agreement, no Member may withdraw his or her capital contribution.

2.2.  Capital Accounts.  The Company shall establish an individual capital account ("Capital Account") for each Member. The Company shall determine and maintain each Capital Account in accordance with Treasury Regulations section 1.704-1(b)(2)(iv). Upon a valid transfer of a Member's interest in the Company ("Membership Interest") in accordance with Article 6, such Member's Capital Account shall carry over to the new owner.

2.3.  No Interest.  The Company shall not pay any interest on capital contributions.

## ARTICLE 3.
### MEMBERS

3.1.  Limited Liability.  Except as expressly set forth in this Agreement or required by law, no Member shall be personally liable for any debt, obligation or liability of the Company, whether that liability or obligation arises in contract, tort or otherwise.

3.2.  Admission of Additional Members.  Additional Members may be admitted with the approval of all Members.  Additional Members will participate in the "Net Profits," "Net Losses" (as such terms are defined in Section 5.1), and distributions of the Company on such terms as are determined by the Members.  Exhibit A shall be amended upon the admission of an additional Member to set forth such Member's name and capital contribution.  Each new Member must comply with all the terms of this Operating Agreement as amended.

3.3.  Withdrawals or Resignations.  Any Member who is under an obligation to render services to the Company may withdraw or resign as a Member at any time upon one hundred twenty (120) days prior written notice to the Company, without prejudice to the rights, if

2

Exhibit A, Operating Agreement, Page 7

any, of the Company or the other Members under any contract to which the withdrawing Member is a party. In the event of such withdrawal, such Member's Membership Interest shall be terminated, such Member shall thereafter only have the rights of a transferee as described in Section 6.1.2 and such Membership Interest shall be subject to purchase and sale as provided in Section 7.2. No other Member may withdraw, retire or resign from the Company.

3.4. **Payments to Members**. Except as specified in this Agreement or pursuant to a transaction permitted by Section 3.7, no Member or person or entity controlled by, controlling or under common control with the Member (each such person or entity is defined as an "Affiliate"), is entitled to remuneration for services rendered or goods provided to the Company. However, the Company shall reimburse the Members and their Affiliates for organizational expenses (including, without limitation, legal and accounting fees and costs) incurred to form the Company, prepare the Articles and this Agreement and, as approved by the Members, for the actual cost of goods and materials used by the Company.

3.5. **Expulsion of Members**. Any Member may be expelled from the Company upon the affirmative vote of Members, excluding the Member whose withdrawal is being voted upon, holding not less than seventy-five (75%) percent of the Membership Interests to terminate such Member's Membership Interest. The Members may only vote to terminate another Member's interest if that Member — whose interest is being voted upon — has committed an act which is in breach of his fiduciary duty to the Company and which has damaged the Company in some material manner.

3.6. **Members Not Agents**. Pursuant to Section 4.1 and the Articles of Organization, the management of the Company is vested in one (1) Manager. The Members have no power to participate in the management of the Company except as expressly authorized by this Agreement or the Articles of Organization, and except as expressly required by the Beverly-Killea Limited Liability Company Act. No Member, acting solely in the capacity of a Member, is an agent of the Company, nor does any Member, unless expressly and duly authorized in writing to do so by a Manager, have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit, to execute any instrument on its behalf, or to render it liable for any purpose.

3.7. **Competing Activities**. The Members and their officers, directors, shareholders, partners, members, managers, agents, employees and Affiliates may engage or invest in independently or with others, any business activity of any type or description, including, without limitation, those that might be the same as or similar to the Company's business and that might be in direct or indirect competition with the Company. Neither the Company nor any Member shall have any right in or to such other ventures or activities or to the income or proceeds derived therefrom. The Members shall not be obligated to present any investment

3

opportunity or prospective economic advantage to the Company, even if the opportunity is of the character that, if presented to the Company, could be taken by the Company. The Members shall have the right to hold any investment opportunity or prospective economic advantage for their own account or to recommend such opportunity to Persons other than the Company. Each Member acknowledges that the other Members and their Affiliates own and/or manage other businesses, including businesses that may compete with the Company and for the Members' time. Each Member hereby waives any and all rights and claims which they may otherwise have against the other Members and their officers, directors, shareholders, partners, members, managers, agents, employees, and Affiliates as a result of any of such activities.

3.8. <u>Transactions With The Company</u>. Subject to any limitations set forth in this Agreement and with the prior approval of a Manager, a Member may lend money to and transact other business with the Company. Subject to other applicable law, such Member has the same rights and obligations with respect thereto as a Person who is not a Member.

3.9. <u>Remuneration To Members</u>. Except as otherwise specifically provided in this Agreement, no Member is entitled to remuneration for acting in the Company business.

3.10. <u>Voting Rights</u>. Except as expressly provided in this Agreement or the Articles, Members shall have no voting, approval or consent rights. Members have the right to approve or disapprove matters as specifically stated in this Agreement, including the following:

3.10.1. <u>Unanimous Approval</u>. The following matters shall require the unanimous vote, approval or consent of all Members who are not the subject of a Dissolution Event, as defined in Section 7.1, or an assignor of a Membership Interest:

3.10.1.1. A decision made pursuant to Article 7 to continue the business of the Company after the occurrence of a Dissolution Event;

3.10.1.2. The transfer of a Membership Interest and admission of the Assignee as a Member of the Company in accordance with Article 6;

3.10.1.3. Any amendment of the Articles or this Agreement; and

3.10.1.4. A decision to compromise the obligation of a Member to make a Capital Contribution or return money or property paid or distributed in violation of the Act.

3.10.2. <u>Approval by Members Holding a Majority Interest</u>. Except as set forth in Section 4.3, in all other matters

4

in which a vote, approval or consent of the Members is required, a vote, consent or approval of a Majority Interest shall be sufficient to authorize or approve such act. For purpose of this Agreement, "Majority Interest" shall mean one or more Percentage Interests of Members which taken together exceed fifty percent (50%) of the aggregate of all Percentage Interests. "Percentage Interest" shall mean the percentage of a Member set forth opposite the name of such Member under the column "Member's Membership Interest" in Exhibit A.

3.11. <u>Meetings of Members</u>.

3.11.1. <u>Date, Time and Place of Meetings of Members.</u> Meetings of Members may be held at such date, time and place within or without the State of California as the Managers may fix from time to time, or if the Managers are unable to agree to such time and place, Members holding a Majority Interest shall determine the time and place. No annual or regular meetings of Members are required. At any Members' meeting, the Managers shall appoint a person to preside at the meeting and a person to act as secretary of the meeting. The secretary of the meeting shall prepare minutes of the meeting, which shall be placed in the minute book of the Company.

3.11.2. <u>Power to Call Meetings</u>. Meetings of the Members may be called by any Manager, or upon written demand of Members holding more than five percent (5%) of the Percentage Interests for the purpose of addressing any matters on which the Members may vote.

3.11.3. <u>Notice of Meeting</u>. Written notice of a meeting of Members shall be sent or otherwise given to each Member in accordance with Corporations Code section 17104(c)(2) not less than ten (10) nor more than sixty (60) days before the date of the meeting. The notice shall specify the place, date and hour of the meeting and the general nature of the business to be transacted. No other business may be transacted at this meeting. Upon written request to a Manager by any person entitled to call a meeting of Members, the Managers shall immediately cause notice to be given to the Members entitled to vote that a meeting will be held at a time requested by the person calling the meeting, not less than ten (10) days nor more than sixty (60) days after the receipt of the request. If the notice is not given within twenty (20) days after the receipt of the request, the person entitled to call the meeting may give the notice.

3.11.4. <u>Validity of Action</u>. Any action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice.

5

**3.11.5.** <u>Action by Written Consent without a Meeting</u>. Any action that may be taken at a meeting of Members may be taken without a meeting, if a consent in writing setting forth the action so taken, is signed and delivered to the Company within sixty (60) days of the record date for that action by Members having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all Members entitled to vote on that action at a meeting were present and voted. All such consents shall be filed with the Managers or the secretary, if any, of the Company and shall be maintained in the Company records. Any Member giving a written consent, or the Member's proxy holders, may revoke the consent by a writing received by the Managers or secretary, if any, of the Company before written consents of the number of votes required to authorize the proposed action have been filed.

Unless the consents of all Members entitled to vote have been solicited in writing, (i) notice of any Member approval of an amendment to the Articles or this Agreement, a dissolution of the Company, or a merger of the Company, without a meeting by less than unanimous written consent, shall be given at least ten (10) days before the consummation of the action authorized by such approval, and (ii) prompt notice shall be given of the taking of any other action approved by Members without a meeting by less than unanimous written consent, to those Members entitled to vote who have not consented in writing.

**3.11.6.** <u>Adjourned Meeting; Notice</u>. A Members' meeting, whether or not a quorum is present, may be adjourned from time to time by the vote of the majority of the Membership Interests represented at that meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at that meeting, except as provided in Section 3.11.7. When any meeting of Members is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place are announced at a meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is subsequently fixed, or unless the adjournment is for more than forty-five (45) days from the date set for the original meeting, in which case the Managers shall set a new record date. At any adjourned meeting, the Company may transact any business which might have been transacted at the original meeting.

**3.11.7.** <u>Quorum</u>. The presence in person or by proxy of a Majority Interest shall constitute a quorum at a meeting of Members. The Members present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the loss of a quorum, if any action taken after loss of a quorum (other than adjournment) is approved by at least Members holding a Majority Interest.

**3.11.8.** <u>Waiver of Notice or Consent</u>. The actions taken at any meeting of Members however called and noticed, and wherever

6

held, have the same validity as if taken at a meeting duly held
after regular call and notice, if a quorum is present either in
person or by proxy, and if, either before or after the meeting,
each of the Members entitled to vote, who was not present in person
or by proxy, signs a written waiver of notice or consents to the
holding of the meeting or approves the minutes of the meeting.  All
such waivers, consents or approvals shall be filed with the Company
records or made a part of the minutes of the meeting.

Attendance of a person at a meeting shall constitute a
waiver of notice of that meeting, except when the person objects,
at the beginning of the meeting, to the transaction of any business
because the meeting is not lawfully called or convened, and except
that the attendance at a meeting is not a waiver of any right to
object to the consideration of matters not included in the notice
of the meeting if that objection is expressly made at the meeting.
Neither the business to be transacted nor the purpose of any
meeting of Members need be specified in any written waiver of
notice except as provided in Section 3.11.4.

3.11.9.  _Telephonic Participation by Member at Meetings_.
Members may participate in any Members' meeting through the use of
any means of conference telephones or similar communications
equipment as long as all Members participating can hear one
another.  A Member so participating is deemed to be present in
person at the meeting.

3.11.10.  _Record Date_.  In order that the Company may
determine the Members of record entitled to notices of any meeting
or to vote, or entitled to receive any distribution or to exercise
any rights in respect of any distribution or to exercise any rights
in respect of any other lawful action, a Manager, or Members
representing more than ten percent (10%) of the Percentage
Interests may fix, in advance, a record date that is not more than
sixty (60) days, nor less than ten (10) days, prior to the date of
the meeting and not more than sixty (60) days prior to any other
action.  If no record date is fixed, the record date shall be as
set forth in Corporations Code section 17104(k).

3.11.11.  _Proxies_.  Every Member entitled to vote for
Managers or on any other matter shall have the right to do so
either in person or by one or more agents authorized by a written
proxy signed by the person and filed with the Managers or
secretary, if any, of the Company.  A proxy shall be deemed signed
if the Member's name is placed on the proxy (whether by manual
signature, typewriting, telegraphic transmission, electronic
transmission or otherwise) by the Member or the Member's attorney
in fact.  A validly executed proxy which does not state that it is
irrevocable shall continue in full force and effect unless
(i) revoked by the person executing it, before the vote pursuant to
that proxy, by a writing delivered to the Company stating that the
proxy is revoked, or by a subsequent proxy executed by, or
attendance at the meeting and voting in person by, the person

7

executing the proxy; or (ii) written notice of the death or incapacity of the maker of that proxy is received by the Company before the vote pursuant to that proxy is counted; provided, however, that no proxy shall be valid after the expiration of eleven (11) months from the date of the proxy, unless otherwise provided in the proxy. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Corporations Code sections 705(e) and 705(f).

3.12. <u>Certificate of Membership Interest</u>.

3.12.1. <u>Certificate</u>. A Membership Interest may be represented by a certificate of membership. The exact contents of a certificate of membership may be determined by action of the Managers but shall be issued substantially in conformity with the following requirements. The certificates of membership shall be respectively numbered serially, as they are issued, shall be impressed with the Company seal or a facsimile thereof, if any, and shall be signed by a Manager (or officers) of the Company. Each certificate of membership shall state the name of the Company, the fact that the Company is organized under the laws of the State of California as a limited liability company, the name of the person to whom the certificate is issued, the date of issue, and the Percentage Interest represented thereby. A statement of the designations, preferences, qualifications, limitations, restrictions, and special or relative rights of the Membership Interest, if any, shall be set forth in full or summarized on the face or back of the certificates which the Company shall issue, or in lieu thereof, the certificate may set forth that such a statement or summary will be furnished to any holder of a Membership Interest upon request without charge. Each certificate of membership shall be otherwise in such form as may be determined by the Managers.

3.12.2. <u>Cancellation of Certificate</u>. Except as herein provided with respect to lost, stolen, or destroyed certificates, no new certificates of membership shall be issued in lieu of previously issued certificates of membership until former certificates for a like number of Membership Interests shall have been surrendered and cancelled. All certificates of membership surrendered to the Company for transfer shall be cancelled.

3.12.3. <u>Replacement of Lost, Stolen, or Destroyed Certificate</u>. Any Member claiming that his or her certificate of membership is lost, stolen or destroyed may make an affidavit or affirmation of that fact and request a new certificate. Upon the giving of a satisfactory indemnity to the Company as reasonably required by the Managers, a new certificate may be issued of the same tenor and representing the same Percentage Interest of membership as was represented by the certificate alleged to be lost, stolen, or destroyed.

8

## ARTICLE 4.
## MANAGEMENT AND CONTROL OF THE COMPANY

### 4.1. Management of the Company by Manager.

  **4.1.1.**  <u>Exclusive Management by Manager</u>. Subject to the provisions of this Agreement relating to actions required to be approved by the Members, the business, property and affairs of the Company will be managed and all powers of the Company will be exercised by or under the direction of the Manager.

  **4.1.2.**  <u>Agency Authority of Manager</u>. Subject to Section 4.3.2, the Manager is authorized to endorse checks, drafts and other evidence of indebtedness in any amount of money made payable to the order of the Company. The Manager may also sign contracts, obligations, checks, drafts and other instruments obligating the Company to pay any amount of money on behalf of the Company.

### 4.2. Election of Manager.

  **4.2.1.**  <u>Number, Term and Qualifications</u>. The Company will initially have one (1) Manager, being Linda Seeley. The number of Managers of the Company will be fixed from time to time by the affirmative vote or written consent of a Majority Interest, provided that in no instance will there be less than one (1) Manager, and provided further, that unless the Manager resigns or is removed, the Manager will hold office until a successor has been elected and qualified. The Manager will be elected by the affirmative vote or written consent of Members holding a Majority Interest. The Manager need not be a Member, an individual, a resident of the State of California, or a citizen of the United States.

  **4.2.2.**  <u>Resignation</u>. The Manager may resign at any time by giving written notice to the Members (and remaining Managers, if applicable) without prejudice to the rights, if any, of the Company under any contract to which the Manager is a party. The resignation of the Manager will take effect upon receipt of that notice or at such later time as will be specified in the notice. Unless otherwise specified in the notice, the acceptance of the resignation is not necessary to make it effective. The resignation of the Manager who is also a Member will not affect the Manager's rights as a Member and will not constitute a withdrawal of a Member.

  **4.2.3.**  <u>Removal</u>. The Manager may be removed at any time, with cause, by the affirmative vote of a Majority Interest at a meeting called expressly for that purpose, or by the written consent of a Majority Interest. Any removal will terminate any and all rights, if any, of the Manager under any employment contract with the Company. If the Manager is also a Member when the Manager is terminated, then this termination will not affect the

9

Manager's rights as a Member or constitute a withdrawal of a Member. For purpose of this section, "cause" means fraud, gross negligence, willful misconduct, embezzlement or a breach of such Manager's obligations under this Agreement or any employment contract with the Company.

    4.2.4.   <u>Vacancies</u>.  Any vacancy occurring for any reason in the number of Managers may be filled by the affirmative vote or written consent of a Majority Interest (or by a majority of the remaining Managers, if there is more than one (1) Manager.)

   4.3.   <u>Powers of Manager</u>.

    4.3.1.   <u>Powers of Manager</u>. Without limiting the generality of Section 4.1, but subject to Section 4.3.2 and to the express limitations set forth elsewhere in this Agreement, the Manager has all necessary powers to manage and carry out the purposes, business, property, and affairs of the Company, including, without limitation, the power to exercise on behalf and in the name of the Company all of the powers described in Corporations Code section 17003.

    4.3.2.   <u>Limitations on Powers of Manager</u>. There is no limitation on the amount of debt or liability that the Manager can incur on behalf of the Company, so long as the Manager complies with Section 4.1.2. However, the Manager does not have authority hereunder to cause the Company to engage in the following transactions without first obtaining the affirmative vote or written consent of a Majority Interest of the Members:

    4.3.2.1. The sale, exchange or other disposition of all, or substantially all, of the Company's assets occurring as part of a single transaction or plan, or in multiple transactions over a three-month period, except in the orderly liquidation and winding up of the business of the Company upon its duly-authorized dissolution;

    4.3.2.2. The merger of the Company with another limited liability company or limited partnership;

    4.3.2.3. The merger of the Company with a corporation or a general partnership or other Person;

    4.3.2.4. The establishment of different classes of Members;

    4.3.2.5. Any act which would make it impossible to carry on the ordinary business of the Company; and

    4.3.2.6. Any other transaction described in this Agreement as requiring the vote, consent, or approval of the Members.

10

4.4.  **Performance of Duties; Liability of Manager.**  The Manager is not liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage is the result of fraud, deceit, gross negligence, reckless or intentional misconduct, or a knowing violation of law by the Manager.  The Manager will perform its managerial duties in good faith, in a manner it reasonably believes to be in the best interests of the Company and its Members, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.  Any Manager who so performs the duties of Manager does not have any liability by reason of being or having been a Member of the Company.

4.5.  **Devotion of Time.**  The Manager is not obligated to devote all of its time or business efforts to the affairs of the Company.  The Manager will devote whatever time, effort and skill as it deems appropriate for the operation of the Company.

4.6.  **Competing Activities.**  The Manager and, if applicable, the Manager's officers, directors, shareholders, partners, members, managers, agents and employees (collectively "Affiliates") may engage or invest in, independently or with others, any business activity of any type or description, including, without limitation, those that might be the same as or similar to the Company's business and that might be in direct or indirect competition with the Company.  Neither the Company nor any Member has any right in or to such other ventures or activities or to the income or proceeds derived therefrom.  The Manager is not obligated to present any investment opportunity or prospective economic advantage to the Company, even if the opportunity is of the character that, if presented to the Company, could be taken by the Company.  The Members acknowledge that the Manager and its Affiliates may own and manage other businesses, including businesses that may compete with the Company and for the Manager's time.  The Members hereby waive any and all rights and claims which they may otherwise have against the Manager and its officers, directors, shareholders, partners, members, managers, agents and employees as a result of any of such activities.

4.7.  **Transactions between the Company and the Manager.**  Notwithstanding that it may constitute a conflict of interest, the Manager may, and may cause its Affiliates to, engage in any transaction (including, without limitation, the purchase, sale, lease, or exchange of any property or the rendering of any service, or the establishment of any salary, other compensation, or other terms of employment) with the Company so long as the following conditions are met:

4.7.1.  Such transaction is not expressly prohibited by this Agreement; and

4.7.2.  The terms and conditions of such transaction, on an overall basis, are fair and reasonable to the Company.

11

4.8.  _Payments to Manager_.  Except as specified in this Agreement, no Manager or Affiliate of a Manager is entitled to remuneration for services rendered or goods provided to the Company.  The Manager and its Affiliates can receive only the following payments:

4.8.1.  _Management Fee_.  The Company may pay the Manager a monthly fee for services in connection with the management of the Company in an amount to be determined from time to time by an affirmative vote of Members holding at least a Majority Interest.  No Manager will be prevented from receiving a management fee because the Manager is also a Member of the Company.

4.8.2.  _Services Performed by Manager or Affiliates_. The Company will pay the Manager or Affiliates of the Manager for services rendered or goods provided to the Company to the extent that:

4.8.2.1.  The Manager is not required to render such services or goods themselves without charge to the Company; and

4.8.2.2.  The fees paid to such Manager or Affiliates do not exceed the fees that would be payable to an independent responsible third party that is willing to perform such services or provide such goods.

4.8.3.  _Expenses_.  The Company will reimburse the Manager and its Affiliates for the actual cost of materials used for or by the Company.  The Company will also pay or reimburse the Manager or its Affiliates for organizational expenses (including, without limitation, legal and accounting fees and costs) incurred to form the Company and prepare and file the Articles and this Agreement.  Except as otherwise provided herein, the Manager and its Affiliates will not be reimbursed by the Company for the following expenses:  (i) salaries, compensation or fringe benefits of the Manager or its Affiliates; (ii) overhead expenses of the Manager or its Affiliates, including, without limitation, rent and general office expenses; and (iii) the cost of providing any services or goods for which the Manager or its Affiliates are entitled to compensation under this Agreement.

4.9.  _Officers_.

4.9.1.  _Appointment of Officers_.  The Manager may appoint officers at any time.  The officers of the Company may include a chairperson, president, vice president, secretary and chief financial officer.  The officers will serve at the pleasure of the Manager, subject to all rights, if any, of an officer under any contract of employment.  Any individual may hold any number of offices.  No officer need be a resident of the State of California or citizen of the United States.  If a Manager is not an

12

individual, such Manager's officers may serve as officers of the Company if elected by the Manager. The officers will exercise such powers and perform such duties as determined from time to time by the Manager.

4.10. <u>Limited Liability</u>. No person who is a Manager or officer or both a Manager and officer of the Company is personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a Manager or officer or both a Manager and officer of the Company.

4.11. <u>Membership Interests of Manager</u>. Except as otherwise provided in this Agreement, Membership Interests held by a Manager as a Member entitles the Manager to all the rights of a Member, including, without limitation, the economic, voting, information and inspection rights of a Member.

## ARTICLE 5.
## ALLOCATIONS OF NET PROFITS AND NET LOSSES AND DISTRIBUTIONS

5.1. <u>Definitions</u>. When used in this Agreement, the following terms shall have the meanings set forth below:

"<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended from time to time, the provisions of succeeding law, and to the extent applicable, the Treasury Regulations.

"<u>Company Minimum Gain</u>" shall have the meaning ascribed to the term "Partnership Minimum Gain" in the Treasury Regulations section 1.704-2(d).

"<u>Member Nonrecourse Debt</u>" shall have the meaning ascribed to the term "Partner Nonrecourse Debt" in Treasury Regulations section 1.704-2(b)(4).

"<u>Member Nonrecourse Deductions</u>" shall mean items of Company loss, deduction, or Code section 705(a)(2)(B) expenditures which are attributable to Member Nonrecourse Debt.

"<u>Net Profits</u>" and "<u>Net Losses</u>" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with generally accepted accounting principles employed under the method of accounting at the close of each fiscal year on the Company's information tax return filed for federal income tax purposes.

"<u>Nonrecourse Liability</u>" shall have the meaning set forth in Treasury Regulations section 1.752-1(a)(2).

13

"Treasury Regulations" shall mean the final or temporary regulations that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

## 5.2. Allocations of Net Profit and Net Loss.

5.2.1. Net Loss. Net Loss shall be allocated to the Members in proportion to their Membership Interest. Notwithstanding the previous sentence, loss allocations to a Member shall be made only to the extent that such loss allocations will not create a deficit Capital Account balance for that Member in excess of an amount, if any, equal to such Member's share of

Company Minimum Gain that would be realized on a foreclosure of the Company's property. Any loss not allocated to a Member because of the foregoing provision shall be allocated to the other Members (to the extent the other Members are not limited in respect of the allocation of losses under this Section 5.2.1). Any loss reallocated under this Section 5.2.1 shall be taken into account in computing subsequent allocations of income and losses pursuant to this Article 5, so that the net amount of any item so allocated and the income and losses allocated to each Member pursuant to this Article 5, to the extent possible, shall be equal to the net amount that would have been allocated to each such Member pursuant to this Article 5 if no reallocation of losses had occurred under this Section 5.2.1.

5.2.2. Net Profit. Net Profit shall be allocated to the Members in proportion to their Membership Interest.

## 5.3. Special Allocations. Notwithstanding Section 5.2,

5.3.1. Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain that is allocable to the disposition of Company property subject to a Nonrecourse Liability, which share of such net decrease shall be determined in accordance with Treasury Regulations section 1.704-2(g)(2). Allocations pursuant to this Section 5.3.1 shall be made in proportion to the amounts required to be allocated to each Member under this Section 5.3.1. The items to be so allocated shall be determined in accordance with Treasury Regulations section 1.704-2(f). This Section 5.3.1 is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations section 1.704-2(f) and shall be interpreted consistently therewith.

5.3.2. Chargeback of Minimum Gain Attributable to Member Nonrecourse Debt. If there is a net decrease in Company Minimum Gain attributable to a Member Nonrecourse Debt, during any

14

fiscal year, each Member who has a share of the Company Minimum Gain attributable to such Member Nonrecourse Debt (which share shall be determined in accordance with Treasury Regulations section 1.704-2(i)(5)) shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to that portion of such Member's share of the net decrease in Company Minimum Gain attributable to such Member Nonrecourse Debt that is allocable to the disposition of Company property subject to such Member Nonrecourse Debt (which share of such net decrease shall be determined in accordance with Treasury Regulations section 1.704-2(i)(5)). Allocations pursuant to this Section 5.3.2 shall be made in proportion to the amounts required to be allocated to each Member under Section 5.3.2. The items to be so allocated shall be determined in accordance with Treasury Regulations section 1.704-2(i)(4). This Section 5.3.2 is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations section 1.704-2(i)(4) and shall be interpreted consistently therewith.

5.3.3. <u>Nonrecourse Deductions</u>. Any nonrecourse deductions (as defined in Treasury Regulations section 1.704-2(b)(1)) for any fiscal year or other period shall be specially allocated to the Members in proportion to their Membership Interests.

5.3.4. <u>Member Nonrecourse Deductions</u>. Those items of Company loss, deduction, or Code section 705(a)(2)(B) expenditures which are attributable to Member Nonrecourse Debt for any fiscal year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such items are attributable in accordance with Treasury Regulations section 1.704-2(i).

5.3.5. <u>Qualified Income Offset</u>. If a Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), or any other event creates a deficit balance in such Member's Capital Account in excess of such Member's share of Company Minimum Gain, items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate such excess deficit balance as quickly as possible. Any special allocations of items of income and gain pursuant to this Section 5.3.5 shall be taken into account in computing subsequent allocations of income and gain pursuant to this Article 5 so that the net amount of any item so allocated and the income, gain, and losses allocated to each Member pursuant to this Section 5.3.5 to the extent possible, shall be equal to the net amount that would have been allocated to each such Member pursuant to the provisions of this Article 5 if such unexpected adjustments, allocations, or distributions had not occurred.

15

5.4.   Code Section 704(c) Allocations.  Notwithstanding any other provision in this Article 5, in accordance with Code section 704(c) and the Treasury Regulations promulgated thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its fair market value on the date of contribution.  Allocations pursuant to this Section 5.4 are solely for purposes of federal, state and local taxes.  As such, they shall not affect or in any way be taken into account in computing a Member's Capital Account or share of profits, losses, or other items of distributions pursuant to any provision of this Agreement.

5.5.   Distribution of Assets by the Company.  Subject to applicable law and any limitations contained elsewhere in this Agreement, Members holding a majority of the Membership Interests may elect from time to time to cause the Company to make distributions.  Distributions shall be first to the Members in proportion to their unreturned capital contributions until each Member has recovered his or her capital contributions, and then to the Members in proportion to their Membership Interests.

## ARTICLE 6.
## TRANSFER AND ASSIGNMENT OF INTERESTS

6.1.   Transfers.  Except as herein provided, no Member may Transfer all, or any portion of, or any interest or rights in, the Membership Interest owned by the Member.  Each Member hereby acknowledges the reasonableness of this prohibition in view of the purposes of the Company and the relationship of the Members.  The attempted Transfer of any portion or all of a Membership Interest in violation of the prohibition contained in this Section 6.1 shall be deemed invalid, null and void, and of no force or effect, except any Transfer mandated by operation of law and then only to the extent necessary to give effect to such Transfer by operation of law.

6.1.1.   A Member may Transfer all or any portion of or any interest or rights in the Member's Economic Interest if each of the following conditions ("Conditions of Transfer") is satisfied:

6.1.1.1. the Transfer may be accomplished without registration, or similar process, under federal and state securities laws;

6.1.1.2. the transferee delivers to the Company a written agreement to be bound by the terms of Article 6 of this Agreement;

16

6.1.1.3. the Transfer will not result in the termination of the Company pursuant to IRC section 708;

6.1.1.4. the Transfer will not result in the Company being subject to the Investment Company Act of 1940, as amended;

6.1.1.5. the transferor or the transferee delivers the following information to the Company: (i) the transferee's taxpayer identification number; and (ii) the transferee's initial tax basis in the transferred Membership Interest; and

6.1.1.6. the transferor complies with the provisions set forth in Section 6.1.3. Notwithstanding the foregoing, the Economic Interest of any Member may be transferred, without compliance with Section 6.1.3, by inter vivos gift or by testamentary transfer to any spouse, parent, sibling, in-law, child or grandchild of the Member or to a trust for the benefit of the Member or such enumerated relative, or to any affiliate owned by the Member. Any subsequent transfer of any such Economic Interest shall be subject to the provisions of Section 6.1.3, unless said subsequent transferee is a spouse, parent, sibling, in-law, child or grandchild of a Member or a trust for the benefit of the Member or such Member's relative, or to an affiliate, as provided in this section. An inter vivos transfer of a Member's interest to that Member as a trustee in a trust established by that Member shall be deemed to also transfer the Membership Interest, provided that a subsequent transfer by the Member as trustee, or the appointment of a subsequent trustee in any such trust shall be deemed a transfer of an Economic Interest only and shall be otherwise subjection to the provisions of Section 6.1.

6.1.2.   Transfer of Economic Interest.  If the Conditions of Transfer are satisfied, the Member may Transfer all or any portion of the Member's Economic Interest. Except as specifically provided in this Agreement, the Transfer of an Economic Interest pursuant to this Section 6.1 shall not result in the transfer of any of the transferor's other Membership rights. The transferee of the Economic Interest shall have no right to: (i) become a Member; (ii) exercise any Membership rights other than those specifically pertaining to the ownership of an Economic Interest; or (iii) act as an agent of the Company. The transfer of a Membership Interest by a member which shall comply with paragraph 6.1.3. and shall otherwise comply with this Article 6, shall be effective to transfer a Membership Interest to the Transferee together with all rights of Membership. The admission of the holder of a transferred Economic Interest to status of Membership shall be subject to Section 3.2 and in the absolute discretion of the Members voting thereon.

6.1.3.   Rights of Company and Members in Transferred Membership Interests.

6.1.3.1. If any Member desires to transfer all or any part of his, her or its Membership Interest, such Member

17

shall notify the Company and the other Members in writing of such desire and, for a period of thirty (30) days thereafter, the Remaining Members and the Company shall negotiate with respect to the purchase of such Member's Membership Interest. During such period, the Member desiring to transfer such Membership Interest may not otherwise solicit a transferee for such Membership.

6.1.3.2. If the time period described in subsection 6.1.3.1 expires without an agreement being reached as to the purchase of the Membership Interest referred to therein, the Member desiring to transfer his, her or its Membership Interest may solicit transferees. In such event, each time a Member proposes to transfer all or any part of his, her or its Membership Interest (or as required by operation of law or other involuntary transfer to do so), such Member shall first offer such Membership Interest to the Company, and then the other Members, in accordance with the following provisions:

6.1.3.2.1. Such Member shall deliver a written notice ("Option Notice") to the Company and the Remaining Members stating (i) such Member's bona fide intention to transfer such Membership Interest, (ii) the Membership Interest to be transferred, (iii) the purchase price and terms of payment for which the Member proposes to transfer such Membership Interest, and (iv) the name and address of the proposed transferee.

6.1.3.2.2. Within thirty (30) days after receipt of the Option Notice, the Company shall have the right, but not the obligation, to purchase all or part of the Membership Interest upon the price and terms of payment in the Option Notice. The Remaining Members, or any of them, shall thereafter, for thirty (30) days, have the pro rata right, but not the obligation, to purchase all or part of the Membership Interest upon the price and terms of payment in the Option Notice. The failure of a Member to purchase a pro rata share shall proportionately increase the share which may be purchased by the other Remaining Members. If the Option Notice provides for the payment of non-cash consideration, the Company or the Remaining Members, as appropriate, may elect to pay the consideration in cash equal to the good faith estimate of the present fair market value of the non-cash consideration offered as determined by the Company (excluding the vote of the transferring Member).

6.1.3.2.3. If the Company and the other Remaining Members elect to purchase or obtain any or all of the Membership Interest designated in the Option Notice, as provided in this Article 6, then the closing of such purchase shall occur within sixty (60) days after receipt of such notice and the transferring Member, the Company and/or the Remaining Members shall execute such documents and instruments and make such deliveries as may be reasonably required to consummate such purchase.

6.1.3.2.4. If the Company and the Remaining Members elect not to purchase or obtain, or default in their obligation to purchase or obtain, all of the Membership Interest designated in the Option Notice, then the transferring

Member may elect to transfer the entire Membership Interest described in the Option Notice, to the proposed transferee, providing such transfer (i) is completed within thirty (30) days after the expiration of the Company's and the other Members' rights to purchase such Membership Interest, and (ii) is made on terms no less favorable to the transferring Member than as designated in the Option Notice. If such Membership Interest is not so transferred, the transferring Member must give notice in accordance with this Section 6.1.3.2.4 prior to any other or subsequent transfer of such Membership Interest.

6.1.3.2.5. Upon a transfer in violation of this Article 6, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member. Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled. Notwithstanding the immediately preceding sentences, if, in the determination of the Remaining Members, a transfer in violation of this Article 6 would cause the termination of the Company under the Code, in the sole discretion of the Remaining Members, the transfer shall be null and void.

6.2. <u>Voluntary Withdrawal</u>. No Member shall have the right or power to Voluntarily Withdraw from the Company, except as otherwise provided by this Agreement.

6.3. <u>No Release of Liability</u>. The admission of a substitute Member, pursuant to Sections 6.1 or 6.2, does not release the Member who assigned, sold or transferred his, her or its Membership Interest from any liability that such Member may have to the Company.

6.4. <u>Involuntary Withdrawal</u>. Immediately upon the occurrence of an Involuntary Withdrawal, which is defined as a transfer in violation of this Article 6, the successor of the withdrawn Member shall thereupon become an Interest Holder but shall not become a Member. If the Company is not dissolved, the successor Interest Holder shall have all the rights of an Interest Holder, but shall not have the right to exercise any other rights of a Member.

### ARTICLE 7.
### CONSEQUENCES OF DISSOLUTION EVENTS AND
### TERMINATION OF MEMBERSHIP INTEREST

7.1. <u>Dissolution Event</u>. Upon the occurrence of the death, withdrawal, resignation, retirement, insanity, bankruptcy or dissolution of any Member ("Dissolution Event"), the Company shall dissolve unless two-thirds (2/3) of the remaining Members ("Remaining Members") consent within ninety (90) days of the Dissolution Event to the continuation of the business of the

19

Company. If the Remaining Members so consent, the Company and/or the Remaining Members shall have the right to purchase, and if such right is exercised, the Member (or his or her legal representative) whose actions or conduct resulted in the Dissolution Event ("Former Member") shall sell, the Former Member's Membership Interest ("Former Member's Interest") as provided in this Article 7.

7.2. <u>Withdrawal</u>. Notwithstanding Section 7.1, upon the withdrawal by a Member in accordance with Section 3.3 such Member shall be treated as a Former Member, and, unless the Company dissolves as a result of such withdrawal, the Company and/or the Remaining Members shall have the right to purchase, and if such right is exercised, the Former Member shall sell, the Former Member's Interest as provided in this Article 7.

7.3. <u>Purchase Price</u>. The purchase price for the Former Member's Interest will be the fair market value of the Former Member's Interest, as the Former Member, or his successor or his estate, and the Company, or Members purchasing the Former Member's Interest, may agree upon. If the parties cannot agree on the fair market value of the Former Member's Interest, then the fair market value will be determined by an independent appraiser selected by agreement of the Company, or Members purchasing the Former Member's Interest, and the Former Member, or his successor or his estate. If the parties cannot agree on an appraiser, the parties agree to submit the dispute to arbitration in accordance with the rules of the American Arbitration Association then in effect.

7.4. <u>Notice of Intent to Purchase</u>. Within thirty (30) days after the fair market value of the Former Member's Interest has been determined in accordance with Section 7.3, the Company shall have a first right to purchase the Former Member's Interest. Thereafter, the Remaining Members shall have the pro rata right, exercisable within the following thirty (30) days, to purchase the remaining portion of the Former Member's Interest. Each Remaining Member shall notify the other Members in writing of his or her desire to purchase a portion of the Former Member's Interest. The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of the Member not to purchase any of the Former Member's Interest.

7.5. <u>Election to Purchase Less Than All of the Former Member's Interest</u>. If the Company and the Remaining Members fail to purchase the entire remaining interest of the Former Member, pro rata, then the failure of a Member to purchase a pro rata share shall proportionately increase the share which may be purchased by the other Remaining Members.

7.6. <u>Payment of Purchase Price</u>. The Company or the Remaining Members, as the case may be, shall pay at the closing one-fifth (1/5) of the purchase price and the balance of the purchase price shall be paid in four equal annual principal installments, plus accrued interest, and be payable each year on the anniversary date of the closing. The unpaid principal balance

20

shall accrue interest at the current applicable federal rate as provided in the Code for the month in which the initial payment is made, but the Company and the Remaining Members shall have the right to prepay in full or in part at any time without penalty. The obligation of the Company and each purchasing Remaining Member, as applicable, to pay its portion of the balance due shall be evidenced by a separate promissory note executed by the Company or the respective purchasing Remaining Member, as applicable. Each such promissory note shall be in an original principal amount equal to the portion owed by the Company or the respective purchasing Remaining Member, as applicable. Any promissory note executed by any purchasing Remaining Member shall be secured by a pledge of that portion of the Former Member's Interest purchased by such Remaining Member.

7.7. <u>Closing of Purchase of Former Member's Interest</u>. The closing for the sale of a Former Member's Interest pursuant to this Article 7 shall be held at 10:00 a.m. at the principal office of the Company no later than sixty (60) days after the determination of the purchase price, except that if the closing date falls on a Saturday, Sunday, or California legal holiday, then the closing shall be held on the next succeeding business day. At the closing, the Former Member shall deliver to the Company or the Remaining Members an instrument of transfer (containing warranties of title and no encumbrances) conveying the Former Member's Interest. The Former Member, the Company and the Remaining Members shall do all things and execute and deliver all papers as may be reasonably necessary fully to consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

## ARTICLE 8.
## ACCOUNTING, RECORDS, REPORTING BY MEMBERS

8.1. <u>Books and Records</u>. The books and records of the Company shall be kept in accordance with the accounting methods followed for federal income tax purposes. The Company shall maintain at its principal office in California all of the following:

8.1.1. A current list of the full name and last known business or residence address of each Member set forth in alphabetical order, together with the capital contributions, capital account and Membership Interest of each Member;

8.1.2. A copy of the Articles, this Operating Agreement and any and all amendments thereto, and any and all resolutions adopted by the Managers or Members, as appropriate, together with executed copies of any powers of attorney pursuant to which the Articles or any amendments thereto have been executed;

8.1.3. Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six (6) most recent taxable years;

21

8.1.4. A copy of this Agreement and any and all amendments thereto, and any and all resolutions passed by the Members, together with executed copies of any powers of attorney pursuant to which this Agreement or any amendments thereto have been executed;

8.1.5. Copies of the financial statements of the Company, if any, for the six (6) most recent fiscal years; and

8.1.6. The Company's books and records as they relate to the internal affairs of the Company for at least the current and past four (4) fiscal years.

8.2. Reports. The Company shall cause to be filed, in accordance with the Act, all reports and documents required to be filed with any governmental agency. The Company shall cause to be prepared at least annually information concerning the Company's operations necessary for the completion of the Members' federal and state income tax returns. The Company shall send or cause to be sent to each Member within ninety (90) days after the end of each taxable year (i) such information as is necessary to complete the Members' federal and state income tax or information returns and (ii) a copy of the Company's federal, state, and local income tax or information returns for the year.

8.3. Bank Accounts. The Managers shall maintain the funds of the Company in one or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be commingled in any fashion with the funds of any other person.

8.4. Tax Matters for the Company. Linda Seeley is designated as "Tax Matters Partner" (as defined in Code section 6231), to represent the Company (at the Company's expense) in connection with all examination of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith.

### ARTICLE 9.
### DISSOLUTION AND WINDING UP

9.1. Conditions of Dissolution. The Company shall dissolve upon the occurrence of any of the following events:

9.1.1. Upon the happening of any event of dissolution specified in the Articles;

9.1.2. Upon the entry of a decree of judicial dissolution pursuant to section 17351 of the Corporations Code;

9.1.3. Upon the vote of Members holding at least sixty-six and two-thirds percent (66.667%) of the Membership Interests;

22

9.1.4.    The occurrence of a Dissolution Event and the failure of the Remaining Members to consent in accordance with Section 7.1 to continue the business of the Company within ninety (90) days after the occurrence of such event; or

9.1.5.    The sale of all or substantially all of the assets of Company.

9.2.    <u>Winding Up</u>.  Upon the dissolution of the Company, the Company's assets shall be disposed of and its affairs wound up. The Company shall give written notice of the commencement of the dissolution to all of its known creditors.

9.3.    <u>Order of Payment of Liabilities Upon Dissolution</u>. After determining that all the known debts and liabilities of the Company have been paid or adequately provided for, the remaining assets shall be distributed to the Members in accordance with their positive capital account balances, after taking into account income and loss allocations for the Company's taxable year during which liquidation occurs.

9.4.    <u>Limitations on Payments Made in Dissolution</u>.  Except as otherwise specifically provided in this Agreement, each Member shall be entitled to look only to the assets of the Company for the return of his or her positive Capital Account balance and shall have no recourse for his or her Capital Contribution and/or share of Net Profits against any other Member except as provided in Article 10.

9.5.    <u>Certificates</u>.  The Company shall file with the California Secretary of State a Certificate of Dissolution upon the dissolution of the Company and a Certificate of Cancellation upon the completion of the winding up of the Company's affairs.

### ARTICLE 10.
### INDEMNIFICATION

10.1.    <u>Indemnification of Agents</u>.  The Company shall indemnify any Member or Manager and may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding by reason of the fact that he or she is or was a Member, Manager, officer, employee or other agent of the Company or that, being or having been such a Member, Manager, officer, employee or agent, he or she is or was serving at the request of the Company as a manager, director, officer, employee or other agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise (all such persons being referred to hereinafter as an "agent"), to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit.

23

## ARTICLE 11.
## INVESTMENT REPRESENTATIONS

Each Member hereby represents and warrants to, and agrees with, the Members and the Company as follows:

11.1. Preexisting Relationship or Experience. He or she has a preexisting personal or business relationship with the Company or one or more of its officers, if applicable, or controlling persons, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any affiliate or selling agent of the Company, he or she is capable of evaluating the risks and merits of an investment in the Company and of protecting his or her own interests in connection with this investment.

11.2. No Advertising. He or she has not seen, received, been presented with, or been solicited by any leaflet, public promotional meeting, article or any other form of advertising or general solicitation with respect to the sale of the Membership Interest.

11.3. Investment Intent. He or she is acquiring the Membership Interest for investment purposes for his or her own account only and not with a view to or for sale in connection with any distribution of all or any part of the Membership Interest. No other person will have any direct or indirect beneficial interest in or right to the Membership Interest.

## ARTICLE 12.
## MISCELLANEOUS

12.1. Counsel to the Company. Counsel to the Company has been counsel to certain Members and/or certain Affiliates of Members in the past. The Company has initially selected Noland, Hamerly, Etienne & Hoss, A Professional Corporation ("Company Counsel") as legal counsel to the Company which has prepared this Agreement at its sole request. Each Member acknowledges that Company Counsel has not represented any Member in the preparation of this Agreement or given advice concerning the propriety of signing it. In the absence of a clear and explicit written agreement, Company Counsel owes no duties directly to any Member concerning this Agreement including, without limitation, its preparation, execution or rights arising from it. Each Member acknowledges that the interests of a Member may be different than or actually conflict with the interests of the Company or the interests of another Member. Each Member hereby consents to the representation of the Company by Company Counsel notwithstanding

24

Exhibit A, Operating Agreement, Page 29

such a conflict, and notwithstanding that Company Counsel may represent a Member in other legal matters. Each Member acknowledges that such Member has been advised that it should seek the advice of independent counsel of its choice concerning any question regarding the consequences of executing this Agreement. Notwithstanding any adversity that may develop, in the event any dispute or controversy arises between any Members and the Company, then each Member agrees that Company Counsel may represent either the Company or such Member in any such dispute or controversy to the extent permitted by the California Rules of Professional Conduct or similar rules in any other jurisdiction, and each Member hereby consents to such representation.

12.2. Complete Agreement. This Agreement and the Articles constitute the complete and exclusive statement of agreement among the Members with respect to the subject matter herein and therein and replace and supersede all prior written and oral agreements among the Members. To the extent that any provision of the Articles conflict with any provision of this Agreement, the Articles shall control.

12.3. Binding Effect. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members, and their respective successors and assigns.

12.4. Interpretation. All pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the context in which they are used may require. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the interpretation of any provision of this Agreement. Numbered or lettered articles, sections and subsections herein contained refer to articles, sections and subsections of this Agreement unless otherwise expressly stated. In the event any claim is made by any Member relating to any conflict, omission or ambiguity in this Agreement, no presumption or burden of proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by or at the request of a particular Member or his or her counsel.

12.5. Jurisdiction. Each Member hereby consents to the exclusive jurisdiction of the state and federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement. Each Member further agrees that personal jurisdiction over him or her may be effected by service of process by registered or certified mail addressed as provided in Section 12.8 of this Agreement, and that when so made shall be as if served upon him or her personally within the State of California.

12.6. Arbitration. Except as otherwise provided in this Agreement, any controversy between the parties arising out of this

25

Exhibit A, Operating Agreement, Page 30

Agreement shall be submitted to the American Arbitration Association for arbitration in Monterey County, California. The costs of the arbitration, including any American Arbitration Association administration fee, the arbitrator's fee, and costs for the use of facilities during the hearings, shall be borne equally by the parties to the arbitration. Attorneys' fees may be awarded to the prevailing or most prevailing party at the discretion of the arbitrator. The provisions of sections 1282.6, 1283, and 1283.05 of the California Code of Civil Procedure apply to the arbitration. The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this Agreement nor to grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law. In addition, the arbitrator shall have no power or authority to award any punitive damages.

12.7. Severability. If any provision of this Agreement or the application of such provision to any person or circumstance shall be held invalid, the remainder of this Agreement or the application of such provision to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

12.8. Notices. Any notice to be given or to be served upon the Company or any party hereto in connection with this Agreement must be in writing (which may include facsimile) and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice. Such notices will be given to a Member at the address specified in Exhibit A hereto. Any party may, at any time by giving five (5) days' prior written notice to the other Members, designate any other address in substitution of the foregoing address to which such notice will be given.

12.9. Amendments. All amendments to this Agreement will be in writing and signed by all of the Members.

12.10. Multiple Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

12.11. Attorneys' Fees. In the event that any dispute between the Company and the Members or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party, including, without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interest from

26

the date of the breach at the maximum rate allowed by law. For the purposes of this Section: (a) attorneys' fees shall include, without limitation, fees incurred in the following: (1) post judgment motions; (2) contempt proceedings, (3) garnishment, levy, and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation; and (b) prevailing party shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.

12.12. Remedies Cumulative. The remedies under this Agreement are cumulative and shall not exclude any other remedies to which any person may be lawfully entitled.

12.13. Consent of Spouse. Within ten (10) days after any individual becomes a Member or a Member marries, such Member shall have his or her spouse execute a consent substantially in the form attached to this Agreement.

IN WITNESS WHEREOF, all of the members of The Inn at Del Monte Beach, a California limited liability company, have executed this Agreement, effective as of the date written above.

MEMBERS

_____          _____
LINDA SEELEY                      NICK KANAAN

27

FROM : Panasonic FAX SYSTEM          PHONE NO. : 312 927 0113          Dec. 13 2007 03:53PM P3

Dec 13 07 03:49p                                                        p.3

THE INN AT DEL MONTE BEACH
OPERATING AGREEMENT

EXHIBIT A

| Initial Name, Address and Taxpayer ID Number | Initial Capital Contribution | Membership Interest |
| --- | --- | --- |
| Linda Seeley 680 E Romie Lane Salinas, CA 93901 ▮▮▮▮▮▮▮ | $ 7,000 | 70% |
| Nick Kanaan 680 E Romie Lane Salinas, CA 93901 ▮▮▮▮▮▮▮ | $ 3,000 | 30% |

_____          _____
LINDA SEELEY                     NICK KANAAN

## CONSENT OF SPOUSE

I, the undersigned, certify that:

1. I am the spouse of a member who has signed the OPERATING AGREEMENT OF THE DEL MONTE BEACH INN DATED November 1, 2007.

2. I have read and approve the provisions of the OPERATING AGREEMENT OF THE INN AT DEL MONTE BEACH.

3. I agree to be bound by and accept the provisions of the OPERATING AGREEMENT OF THE INN AT DEL MONTE BEACH in lieu of all other interests I may have in such Agreement.

Dated: November 1, 2007

ELIZABETH KANAAN

# EXHIBIT B

## SECURED PROMISORY NOTE

1. **Promise to Pay**. For value received, **THE INN AT DEL MONTE BEACH LLC.**, (Borrower) promises to pay **DORIS KNAPP** (Lender) $140,000.00 and interest at the yearly rate of 10% on the unpaid balance as specified below.

**Date of Payment:** November 1, 2009

**Type of payment:** Lump sum payment of principle and interest

**Amount Due:** $143,3600.00

2. **Prepayment**. Borrower may prepay all or any part of the principal without penalty.

3. **Security**

☒ Borrower agrees that until the principal and interest owed under this promissory note are paid in full, this note will be secured by the

- Mortgage
- Deed of trust covering the real estate commonly known as 1110 Del Monte Ave, Monterey, CA 93940, and more fully described as follows: Lot 8 and portion of lot 7, in block 31, of Oak Grove, in the City of Monterey, County of Monterey, State of California, according to map filed in Book 1, page 20, of map of cities and towns, in the Office of the County Recorder described as follows: Beginning at the northwest corner of said lot 8; thence, along the westerly line of said lot 8.

1. Southerly, 120.50 feet to the southwest corner thereof; thence, along the southerly line of lot 7 and 8.

2. Easterly, 41.83 feet; thence, parallel to said westerly line of said lot 8.

3. Northerly, 110.63 feet to the northerly line of said lot 7; thence, along the northerly line of lot 7 and 8.

4. Westerly, 42.98 feet to the point of beginning.

The undersigned and all other parties to this note agree to remain bound until this note is fully paid and waive demand, presentment and protest, and all

Exhibit B, Secured Promissory Note, Page 1

notices hereto and further agree to remain bound notwithstanding any extension, modification, waiver, or other indulgence or discharge or release of any obligor hereunder or exchange, substitution, or release of any collateral granted as security for this note. No modification or indulgence by any holder hereof shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. Any modification or change in terms, hereunder granted by any holder hereof, shall be valid and binding upon each of the undersigned, notwithstanding the acknowledgement of any of the undersigned, and each of the undersigned does hereby irrevocably grant to each of the others a power of attorney to enter into any such modification on their behalf. The rights of any holder hereof shall be cumulative and not necessarily successive. This note shall take effect as a sealed instrument and shall be construed, governed and enforced in accordance with the laws of the State of California.

Borrower: The Inn at Del Monte Beach, LLC, represented by

Linda Seeley (Managing Partner)

Date: 7/27/09

Witness _____ Date: 7/30/09

# EXHIBIT C

# FIRST AMENDED OPERATING AGREEMENT
## FOR
## THE INN AT DEL MONTE BEACH, LLC

This First Amended Limited Liability Company Operating Agreement is entered into as of the 1st day of December 20 11 by Nizar "Nick" Yaqub (the "Member") as the sole remaining member of The Inn at Del Monte Beach, LLC, following the conveyance to him by Linda Seeley (now deceased) of her membership interest and the redemption of the membership interest of Nick Kanaan by The Inn at Del Monte Beach, LLC. The Member desires to amend the existing Operating Agreement (made November 1, 2007) of The Inn at Del Monte Beach, LLC pursuant to California law, to provide as follows:

## ARTICLE I

### Name, Place of Business and Agent

The name of the Company shall remain The Inn at Del Monte Beach, LLC. Its principal place of business is 1110 Del Monte Ave., Monterey, California 93940 such other place or places as the Member may hereafter the Company shall remain The Inn at Del Monte Beach, LLC. Its principal place of business is 1110 Del Monte Ave., Monterey, California 93940.

## ARTICLE II

### Business, Purpose, and Term of Company

Section 2.1    Purposes.  The purpose for which the Company is formed and organized is to conduct any lawful business which may be conducted by a limited liability company formed under the Act, including to acquire, improve, manage, lease, own and operate the real property.

Section 2.2    Term.  The term of the Company shall continue until dissolved pursuant to Article VI of this Agreement.

## ARTICLE III

### Capital Contributions

Section 3.1    Capital Contribution by Members.  Upon the formation of the Company, the Member shall not be required to make a Capital Contribution.  Capital Contributions shall be made from time to time as the Member shall determine.

Section 3.2    Capital Accounts.  A Capital Account shall be maintained for the Member to which shall be credited (i) the Member's Capital Contributions, if any and (ii) all Company revenues.  The Capital Account shall be debited with (i) all costs, expenses, and losses of the

Company and (ii) the amount of any distributions (including return of capital) made to the Member. No interest shall be paid on the Member's Capital Account.

## ARTICLE IV

### Allocation of Profits and Distributions

Section 4.1    Allocation of Profits and Distributions. All profits and losses of the Company shall be allocated to the Member.

Section 4.2    Allocation of Distributions. All distributions of cash or other assets of the Company shall be made to the Member when and as determined by the Member.

## ARTICLE V

### Management of the Company

Section 5.1    General. Nizar "Nick" Yaqub shall be the Managing Member and shall be responsible for the management of the Company. Any action to be undertaken by the Manager may be undertaken by Nizar "Nick" Yaqub. The Managing Member shall have the right, power and authority to manage, direct and control on behalf of the Company, to sign for the Company or on behalf of the Company or otherwise to bind the Company.

Section 5.2    Delegation of Powers of Managing Member. The Managing Member shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to delegate the management, control, administration, and operation of the business and affairs of the Company or the custody of the Company's assets for all purposes stated in this Agreement. Such delegation shall be as provided in such documentation as the Managing Member shall determine. Any such delegation shall not cause the Managing Member to cease to be the Managing Member.

Sections 5.3    Officers. The Managing Member may appoint individuals with or without such titles as the Managing Member may elect, including the titles of President, Vice President, Treasurer, and Secretary, to act on behalf of the Company with such power and authority as the Managing Member may delegate in writing to any such persons.

Sections 5.4    Powers of Managing Member. The Managing Member shall have the right, power and authority, in the management of the business and affairs of the Company, to do or cause to be done any and all acts deemed by the Managing Member to be necessary or appropriate to effectuate the business, purposes and objectives of the Company at the expense of the Company, including but not limited to the execution of all documents or instruments in all matters necessary, desirable, convenient or incidental to the purpose of the Company or the

–2–

making of investments of Company funds. The Managing Member shall have the right, power and authority to buy and sell real and personal property on behalf of the Company and to execute any and all documents necessary to do so.

Section 5.5    Reliance by Third Parties. Any person or entity dealing with the Company may rely on a certificate signed by the Managing Member as to:

      (i)    the identity of the Managing Member;

      (ii)    the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Managing Member or are in any matter germane to the affairs of the Company;

      (iii)    the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

      (iv)    any act or failure to act by the Company or as to any other matter whatsoever involving the Company.

Section 5.6    Actions Requiring Member Approval. Notwithstanding any other provision of this Agreement, the written consent of the Member shall be required to approve the following matters:

      (i)    the dissolution or winding up of the Company;

      (ii)    the merger or consolidation of the Company;

      (iii)    the sale, transfer, contribution, exchange, mortgage, pledge, encumbrance, lease or other disposition or transfer of all or substantially all of the assets of the Company; and

      (iv)    amendments to this Agreement.

## ARTICLE VI

### Dissolution

The Company shall be dissolved, and shall terminate and wind up its affairs, upon the first to occur of the following:

      (a)    the determination by the Member to dissolve the Company; or

      (b)    the entry of a decree of judicial dissolution pursuant to Section 17351 of the Act.

## ARTICLE VII

–3–

### Governing Law and Jurisdiction

This Agreement, including its existence, validity, construction and operating effect, and the rights of each of the parties hereto, shall be governed by and construed in accordance with the laws of the State of California (without regard to principles of conflicts of laws.)

### ARTICLE VIII

### Indemnification

Section 8.1    Indemnification and Liability. (a) To the maximum extent permitted by applicable law, the Managing Member shall not be liable to the Company or any other third party (i) for mistakes of judgment, (ii) for any act or omission suffered or taken by it, or (iii) for losses due to any such mistakes, action or inaction.

(b)    Except as may be restricted by applicable law, the Managing Member shall not be liable for and the Company shall indemnify the Managing Member against, and agrees to hold the Managing Member harmless from, all liabilities and claims (including reasonable attorney's fees and expenses in defending against such liabilities and claims) against the Managing Member, arising from the Managing Member's performance of its duties in conformance with the terms of this Agreement.

(c)    The Managing Member may consult with legal counsel or accountants selected by the Managing Member and, to the maximum extent permitted by applicable law, any action or omission suffered or taken in good faith in reliance and in accordance with the written opinion or advice of any such counsel or accountants (provided such counsel or accountants have been selected with reasonable care) shall be fully protected and justified with respect to the action or omission so suffered or taken.

### ARTICLE IX

### Assignment of Interests

The Member may Transfer all or part of its Membership Interest in the Company at any time and on such terms and conditions as he or she deems appropriate.

### ARTICLE X

-4-

## Winding Up and Distribution of Assets

Section 10.1   Winding Up. If the Company is dissolved, the Member shall wind up the affairs of the Company.

Section 10.2   Distribution of Assets. Upon the winding up of the Company, subject to the provisions of the Act, the Member shall pay or make reasonable provision to pay all claims and obligations of the Company, including all costs and expenses of the liquidation and all contingent, conditional or unmatured claims and obligations shall be paid in full and any such provision shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor. Any remaining assets shall be distributed to the Member.

## ARTICLE XI

### Definitions

As used herein, the following terms shall have the indicated definitions.

"**Act**" means the Beverly-Killea Limited Liability Company Act, as may be amended from time to time.

"**Articles of Organization**" means the articles of organization as filed with the California Secretary of State on April 11, 2016, as the same may be amended from time to time.

"**Agreement**" means this Limited Liability Company Agreement, as may be amended from time to time.

"**Capital Account**" means a separate accounting maintained with respect to the Member pursuant to section 3.2 of this Agreement.

"**Capital Contribution**" means the contribution by the Member to capital of the Company.

"**Company**" means The Inn at Del Monte Beach, LLC, a California limited liability company.

"**Managing Member**" means Nizar "Nick" Yaqub.

"**Membership Interest**" means the ownership interest of the Member in the Company, including any and all rights, powers, benefits, duties or obligations conferred or imposed on the Member under the Act or this Agreement.

–5–

**"Transfer"** means a transfer, assignment, pledge or encumbrance relative to any Membership Interest of the Company.

IN WITNESS WHEREOF, the Member has executed and delivered this First Amended Operating Agreement the day and year first above written.

MEMBER:

Nizar "Nick" Yaqub

12/1/2018

–6–

Exhibit C, First Amended Operating Agreement, Page 6

## MINUTES TO MEMORIALIZE PRIOR ACTION TAKEN

These minutes are created and intended to memorialize prior events relating to the membership interests of the LLC.

Request having been made in April 2008 and in October 2009 on the members of the LLC to make capital contributions of $700,000 and $ 300,000 required to fund operations and improvements, and only Linda Seeley [or Nizar "Nick" Yaqub, depending on timing] having made the requested capital contribution, and Nick Kannan having failed to contribute any capital, effective January 2011 the membership interests of the LLC are revised to the following:

Linda Seeley [Nizar "Nick" Yaqub]          92%

Nick Kanaan          8%

November 15, 2018

_____

Nizar "Nick" Yaqub, Managing Member

RECEIVED

DEC 1 0 2018

Alcoholic Beverage Control
SALINAS DISTRICT

Exhibit C, First Amended Operating Agreement, Page 7

JK

Nizar "Nick" Yaqub, M.D.

Managing Member

The Inn at Del Monte Beach LLC

1110 Del Monte Avenue

Monterey, CA 93940-2426

December 5, 2018

Department of Alcoholic Beverage Control

Salinas District Office

1137 Westridge Parkway

Salinas, CA 93907

Re: Your File No. 47-586141

The Inn at Del Monte Beach LLC dba Hotel 1110

Dear Sir/Madam:

My apologies for the delay in responding to your earlier correspondence.

Pursuant to the request for clarification made by you please be advised that Dr. Nizar "Nick" Yaqub is the owner of a 92% of the membership interests of The Inn at Del Monte Beach LLC, as documented in the "Minutes to Memorialize Prior Action Taken", a copy of which is enclosed herewith. Mr. Nabih "Nick" Kanaan holds the remaining 8% interest.

May this also confirm that Mr. Nabih "Nick" Kanaan is the same person as identified as Nick Kanaan in the prior application in 2008-09.

Should you need any further information, please feel free to contact me or my attorney, William J. Murray, Belzer & Murray LLP, 3650 Mt. Diablo Blvd., Suite 130, Lafayette, CA 94549; (925) 284-9105.

Thank you.

Very truly yours,

Nizar "Nick" Yaqub, M.D.

cc: William J. Murray, Esq.

RECEIVED

DEC 1 0 2013

Alcoholic Beverage Control
SALINAS DISTRICT

Exhibit C, First Amended Operating Agreement, Page 8

Option Notice

To:      The Inn at Del Monte Beach, LLC, a California Limited Liability Company

Nick Kanaan

In accordance with the Limited Liability Company's Operating Agreement, Section 6.1.3.2.1., this notice is to serve the Limited Liability Company and its members for the intention of Linda Seeley to transfer all of her economic interests as cited in section Section 6.1.2. and her rights of membership interest as cited in Section 6.1.3. to her husband, Nizar Yaqub, MD, as inter vivos gift as allowed under Section 6.1.1.6.

In accordance with the Operating Agreement, Section 6.1.3.2.2. any objections should be filed with the agent of the LLC within 30 days after receipt of this option notice.

Signed by:

_____

Linda Seeley, Member

Exhibit C, First Amended Operating Agreement, Page 9

Department of Alcoholic Beverage Control

**LIMITED LIABILITY COMPANY QUESTIONNAIRE**

State of California
Edmund G. Brown Jr., Governor

Instructions: An individual managing member or designee may sign on behalf of the limited liability company.
Attach a copy of original operating agreement and all amendments.

| 1. LIMITED LIABILITY COMPANY NAME | | 2. TELEPHONE NUMBER |
|---|---|---|
| The Inn at Del Monte Beach LLC DBA Hotel 1110 | | 831-655-0515 |

| 3. PREMISES ADDRESS *(Street number and name, city, zip code)* |
|---|
| 1110 Del Monte Ave, Monterey CA 93940 |

| 4. COMPANY HEADQUARTERS ADDRESS *(Street number and name, city, state, zip code)* | 5. HEADQUARTERS TELEPHONE NUMBER |
|---|---|
| 1110 Del Monte Ave, Monterey CA 93940 | 831-655-0515 |

| 6. COMPANY ATTORNEY'S NAME | 7. ATTORNEY'S TELEPHONE NUMBER |
|---|---|
| William J Murray | 925-284-9000 |

| 8. COMPANY ATTORNEY'S ADDRESS *(Street number and name, city, state, zip code)* |
|---|
| Belzer & Murray LLP 3650 Mt. Diablo Blvd suite 130, Lafayette, CA 94549 |

| 9. DATE LLC-1 FILED WITH SECRETARY OF STATE | 10. STATE WHERE LLC-1 FILED WITH SECRETARY OF STATE | 11. STATE WHERE LLC FORMED | 12. ARTICLES OF ORGANIZATION (LLC-2 OR LLC-10) HAS BEEN AMENDED |
|---|---|---|---|
| 11/30/2007 | California | California | ☑ YES ☐ NO |

| 13. OPERATING AGREEMENT DATE | 14. LAST AMENDMENT DATE |
|---|---|
| 11/30/2007 | January 2011 |

15. The Limited Liability Company will be managed by (check one)

☑ One Manager  ☐ More than one Manager  ☐ Members  ☐ Single Member

**16. NAME OF MANAGER(S)**

| MANAGER PRINTED NAME  NOTE: MGT BY | MANAGER PRINTED NAME |
|---|---|
| Nizar Yaqub  SINGLE MEMBER | |
| MANAGER PRINTED NAME | MANAGER PRINTED NAME |

**17. NAME OF OFFICERS AUTHORIZED BY ARTICLES OR AGREEMENT**

| OFFICER PRINTED NAME | OFFICER PRINTED NAME |
|---|---|
| Nizar Yaqub | |
| OFFICER PRINTED NAME | OFFICER PRINTED NAME |

**18. LIST ALL MEMBERS**

| MEMBER'S PRINTED NAME | PERCENTAGE OF OWNERSHIP | EFFECTIVE DATE |
|---|---|---|
| Nizar Yaqub | 92% | 12-1-11 |
| Nabih Kanaan | 8% | 12-1-11 |
| MEMBER'S PRINTED NAME | PERCENTAGE OF OWNERSHIP | EFFECTIVE DATE |
| MEMBER'S PRINTED NAME | PERCENTAGE OF OWNERSHIP | EFFECTIVE DATE |
| MEMBER'S PRINTED NAME | PERCENTAGE OF OWNERSHIP | EFFECTIVE DATE |

I hereby certify that the above are the present managers, officers, and members of the limited liability company and that each such manager, officer, and member is the real party in interest with respect to his or her position and is not acting, directly or indirectly as an agent, employee or representative of any other person not reported to the Department. The provisions of sections 23405.2 and 23405.3 of the Business and Professions Code are hereby acknowledged and it is understood that changes within the limited liability company and/or entities holding interest in the limited liability company will be reported to the Department as required.

| 19. SIGNATURE OF MANAGER OR DESIGNEE | PRINTED NAME  Nizar Yaqub | DATE SIGNED  11/15/2017 |
|---|---|---|

*(Use reverse for additional names if needed)*

ABC-256-LLC (rev. 01-11)

# EXHIBIT D



## State of California
### Secretary of State

**LLC-4/7**

**FILED**
Secretary of State
State of California

**FEB 0 4 2013**

### LIMITED LIABILITY COMPANY
### CERTIFICATE OF CANCELLATION

There is no fee for filing a Certificate of Cancellation.

IMPORTANT – Read instructions before completing this form.

This Space For Filing Use Only

| FILE NUMBER | ENTITY NAME (Enter the exact name of the limited liability company.) |
|---|---|
| 1. Secretary of State File Number<br><br>**199800910028** | 2. Name of Limited Liability Company<br><br>**Medical Equities, LLC** |

**TAX LIABILITY** (The following statement should not be altered.)

3. A final franchise tax return, as described by Section 23332 of the Revenue and Taxation Code, or a final annual tax return, as described by Section 17947 of the Revenue and Taxation Code, has been or will be filed with the Franchise Tax Board, as required under Part 10.2 (commencing with Section 18401) of Division 2 of the Revenue and Taxation Code.

**DISSOLUTION** (Domestic limited liability companies ONLY: Check the "YES" or "NO" box, as applicable. Note: If the "NO" box is checked, a Certificate of Dissolution (Form LLC-3) pursuant to Corporations Code section 17356(a) must be filed prior to or together with this Certificate of Cancellation.)

4. The dissolution was made by a vote of all of the members. ☑ YES ☐ NO

**ADDITIONAL INFORMATION** (Enter any other information the managers or members filing the Certificate of Cancellation determine to include. Attach additional pages, if necessary. Additional information set forth on attached pages, if any, is incorporated herein by this reference and made part of this certificate. If no other information is to be included, leave Item 5 blank and proceed to Item 6.)

5.

**EXECUTION**

6. I declare I am the person who executed this instrument, which execution is my act and deed.

| Signature of Authorized Person | 1/7/12<br>Date | Nick Yaqub, Manager<br>Type or Print Name and Title of Authorized Person |
|---|---|---|
| Signature of Authorized Person | Date | Type or Print Name and Title of Authorized Person |

**RETURN TO** (Enter the name and the address of the person or firm to whom a copy of the filed document should be returned.)

| 7. NAME | ⌈Nick Yaqub | ⌉ |
|---|---|---|
| FIRM | | |
| ADDRESS | 1110 Del Monte Ave | |
| CITY/STATE/ZIP | ⌊Monterey, CA 93940 | ⌋ |

LLC-4/7 (REV 09/2006)                                          APPROVED BY SECRETARY OF STATE

Exhibit D, Certificate Of Cancellation Medical Equities, Page 1

# EXHIBIT E

## MINUTES TO MEMORIALIZE PRIOR ACTION TAKEN

These minutes are created and intended to memorialize prior events relating to the membership interests of the LLC.

Request having been made in April 2008 and in October 2009 on the members of the LLC to make capital contributions of $700,000 and $ 300,000 required to fund operations and improvements, and only Linda Seeley [or Nizar "Nick" Yaqub, depending on timing] having made the requested capital contribution, and Nick Kannan having failed to contribute any capital, effective January 2011 the membership interests of the LLC are revised to the following:

Linda Seeley [Nizar "Nick" Yaqub]          92%

Nick Kanaan          8%

November 15, 2018

Nizar "Nick" Yaqub, Managing Member

**RECEIVED**

DEC 1 0 2018

Alcoholic Beverage Control
SALINAS DISTRICT

Exhibit E, Purported Minutes of Prior Action, Page 1

# EXHIBIT "2"

1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**NORTHERN DISTRICT OF CALIFORNIA**

7

**SAN JOSE DIVISION**

8

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| NABIH KANAAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>NIZAR YAQUB, and individual; and THE INN AT DEL MONTE BEACH, LLC, a California Limited Liability Company,<br><br>                    Defendants. | Case No.  21-cv-09591-BLF<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF FIRST AMENDED COMPLAINT**<br><br>[Re:  ECF 20] |

18          This case arises out of a falling-out between Plaintiff Nabih Kanaan and Defendant Nizar

19   Yaqub, the two members of a profitable limited liability company, The Inn at Del Monte Beach,

20   LLC ("the LLC").  Kanaan alleges that Yaqub engaged in fraud and other misconduct for the

21   purpose of squeezing Kanaan out of the LLC and converting to himself all or most of Kanaan's

22   ownership interest.  Kanaan sues Yaqub and the LLC (collectively, "Defendants") for breach of

23   contract, fraud, and related claims under California law.

24          Defendants move to dismiss the first amended complaint ("FAC") under Federal Rule of

25   Civil Procedure 12(b)(6) or, in the alternative, to strike portions of the FAC under Federal Rule of

26   Civil Procedure 12(f).  The motion is opposed by Kanaan.  The Court previously vacated the July

27   14, 2022 hearing on the motion.  *See* Order Submitting Mot., ECF 39.

28          The motion is DENIED for the reasons discussed below.

# I.     BACKGROUND

Kanaan filed this action on December 10, 2021.  *See* Compl., ECF 1.  In the complaint, Kanaan described investments he entered into with Yaqub and Yaqub's wife, Linda Seeley, dating back to 1998.  Compl. ¶¶ 10-15.  Kanaan, Yaqub, and Seeley formed the LLC in 2007, with Kanaan holding a 30% interest and Seeley holding a 70% interest.  *Id*. ¶ 16.  Seeley died in 2011.  *Id*. ¶ 21.

Of particular importance here, the complaint alleged that, "*In 2010*, Plaintiff discovered that Seeley had used The LLC's credit cards and other business funds to pay for her personal medical debts without Plaintiff's knowledge or approval."  Compl. ¶ 30 (emphasis added).  The complaint alleged further that, "*At that time*, Plaintiff also discovered that Yaqub and Seeley had used The LLC's credits cards and other business funds to pay for other personal expenses without Plaintiff's knowledge or approval."  *Id*. ¶ 31 (emphasis added).  The complaint also alleged that after Seeley's death, Yaqub falsified documents to reflect that he is the sole or majority member of the LLC.  *See id.* ¶¶ 22-25.  Based on those allegations, Kanaan asserted claims for: (1) breach of fiduciary duty, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) violation of California Business & Professions Code § 17200,  (5) declaratory and injunctive relief, and (6) fraudulent concealment.

On January 26, 2022, Defendants filed a motion to dismiss the complaint under Rule 12(b)(6) or, alternatively, to strike portions of the complaint under Rule 12(f).  *See* Mot., ECF 12.  The motion was based primarily on statute of limitations grounds in light of Kanaan's allegation that he discovered the credit card misuse in 2010.  *See id.*  Kanaan filed an administrative motion seeking an extension of time to file an amended complaint.  *See* Admin. Mot., ECF 17.  Kanaan asserted that amendment was necessary to correct a typographical error in the complaint, specifically, the allegation that he discovered the credit card misuse in 2010.  *See id.* ¶ 6.  Kanaan represented that the correct discovery date was 2019.  *See id.*  Defendants agreed to the request for extension.  *See id.* ¶ 8.  Kanaan filed the operative FAC on February 16, 2022, correcting the typographical error and adding allegations regarding his discovery of wrongdoing by Seeley and Yaqub.  *See* FAC, ECF 18.

2

United States District Court
Northern District of California

On February 18, 2022, the Court issued an order terminating as moot Defendants' pending motion to dismiss or strike the original complaint. *See* Order Terminating Mot., ECF 19. The Court indicated that Kanaan had timely amended his complaint as of right under Federal Rule of Civil Procedure 15(a), which provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a). Defendants' motion to dismiss or strike was filed on January 26, 2022, and Kanaan filed his FAC twenty-one days later on February 16, 2022. The Court terminated Kanaan's administrative motion for an extension of time as moot. *See* Order Terminating Mot., ECF 19.

The operative FAC asserts the same six claims as the original complaint: (1) breach of fiduciary duty, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) violation of California Business & Professions Code § 17200, (5) declaratory and injunctive relief, and (6) fraudulent concealment. Defendants move to dismiss those claims under Rule 12(b)(6) or, alternatively, to strike portions of the claims under Rule 12(f).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss under Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.    Motion to Strike under Rule 12(f)

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2012) (citations omitted).

3

United States District Court
Northern District of California

### III.   DISCUSSION

The Court first addresses Defendants' motion to dismiss, and then their alternative motion to strike.  Before taking up those motions, however, the Court briefly addresses the parties' evidentiary submissions.

Defendants' motion is accompanied by a request that the Court take judicial notice of two documents previously filed in this action, Kanaan's original complaint and Defendants' motion to dismiss the original complaint.  *See* Ds.' RJN, ECF 20-2.  That request for judicial notice is GRANTED.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

Kanaan has submitted a declaration of counsel, explaining the circumstances of the correction of the typographical error in the original complaint.  *See* Gordon Decl., ECF 21-1.  Defendants have submitted two declarations of counsel with their reply, both attaching correspondence with Kanaan's counsel regarding the filing of the FAC.  *See* Murray Decl., ECF 22-1; Rich Decl., ECF 22-2.  The Court cannot consider any of the declarations of counsel, or the attached exhibits.  When evaluating a motion under Rule 12(b)(6) or Rule 12(f), the district court may consider only the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice.  *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (Rule 12(b)(6)); *Maxum Indem. Co. v. Polymer80, Inc.*, No. 2:21-cv-05852-FLA (GJSx), 2022 WL 3013134, at *2 (C.D. Cal. Apr. 18, 2022) (Rule 12(f)).  The declarations of counsel and attached exhibits are not appropriate material for incorporation by reference or judicial notice.  Accordingly, the parties' requests that the Court consider those declarations and exhibits in ruling on the current motion is DENIED.

### A.   Motion to Dismiss under Rule 12(b)(6)

Defendants move to dismiss five out of the six claims asserted in the FAC on statute of limitations grounds, including:  Claim 1 for breach of fiduciary duty, Claim 2 for breach of contract, Claim 3 for breach of the implied covenant of good faith and fair dealing, Claim 4 for violation of California Business & Professions Code § 17200, and Claim 5 for declaratory and injunctive relief.  Defendants move to dismiss Claim 6, for fraud/concealment, on the ground that

1    it fails to allege sufficient facts.  Kanaan argues that no time bar appears on the face of the FAC
2    and that his fraud claim is adequately pled.

3                    **1.    Statute of Limitations (Claims 1-5)**

4           As noted above, Defendants argue that Claims 1-5 are barred by the applicable limitations
5    periods.  "When the running of the statute is apparent from the face of the complaint . . . then the
6    defense may be raised by a motion to dismiss."  *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d
7    117, 119 (9th Cir. 1980).   A federal court sitting in diversity[1] must apply the forum state's choice
8    of law rules to determine the controlling substantive law, including the applicable statute of
9    limitations.  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011).   "Where, as here,
10   parties do not address choice-of-law issues, California courts presumptively apply California law."
11   *Id*.

12          Under California law, Claims 1-4 are governed by a four-year limitations period.  *See*
13   *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011) (breach of fiduciary duty); Cal. Civ. Proc.
14   Code § 337(a) (breach of contract and breach of implied covenant); Cal. Bus. & Prof. Code §
15   17208 (violation of § 17200).  Claim 5 is not governed by a separate limitations period, because
16   "[d]eclaratory and injunctive relief are not independent claims, rather they are forms of relief."
17   *Santos v. Countrywide Home Loans*, No. 2:09-02642 WBS DAD, 2009 WL 3756337, at *5 (E.D.
18   Cal. Nov. 6, 2009).

19          It is not apparent from the face of the FAC that the four-year limitations period ran before
20   Kanaan filed this suit.  In the FAC, Kanaan alleges that Seeley purportedly transferred all her
21   ownership interest in the LLC to Yaqub in April 2011 via an Option Notice, and that after
22   Seeley's death, Yaqub – purporting to be the sole member of the LLC – drafted a First Amended
23   Operating Agreement for the LLC in December 2011.  FAC ¶¶ 20-22.  Kanaan alleges that he was
24   not advised of, and had no knowledge of, those transactions.  *Id*.  According to Kanaan, he
25   received a letter from Yaqub's counsel on June 1, 2018, stating that a capital call was held for the
26   LLC in 2010 and that Kanaan's equity interest in the LLC had been decreased from 30% to 8%.

27

28   _____

[1] Subject matter jurisdiction in this case is based on diversity of citizenship.  *See* FAC ¶ 8.

United States District Court
Northern District of California

*Id.* ¶ 29.  In September 2019, Kanaan discovered that Seeley and Yaqub had used the LLC's credit cards for personal expenses, including Seeley's medical bills.  *Id.* ¶¶ 31-32.

Based on these allegations, the four-year limitations period at issue here began to run at the earliest on June 1, 2018, when Kanaan discovered the drastic reduction of his equity interest in the LLC.  While a cause of action generally "accrues at the time when the cause of action is complete with all of its elements," under California law the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806-07 (2005) (internal quotation marks and citation omitted).  It appears from the face of the FAC that the four-year limitations period expired on June 1, 2022.  Kanaan filed this suit prior to that date, on December 10, 2021.

Defendants urge the Court to disregard Kanaan's allegations regarding his June 1, 2018 discovery of wrongdoing, and to "hold Plaintiff to his original averments" that he discovered wrongdoing in 2010.  *See* Mot. at 6, ECF 20-1.  Defendants rely on the Ninth Circuit's panel decision in *Airs Aromatics*, which held that "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding."  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (internal quotation marks, citation, and brackets omitted).  While the quoted language from *Airs Aromatics* certainly supports Defendants' position, other panels of the Ninth Circuit have held both before and after *Airs Aromatics* that a party *can* amend a pleading to directly contradict an earlier iteration.

For example, in *PAE* a panel of the Ninth Circuit held that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations."  *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).  The *PAE* court stated that, "[u]nless there is a showing that the party acted in bad faith – a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11 – inconsistent allegations are simply not a basis for striking the pleading."  *Id.*  The *PAE* court reversed the district court's order dismissing an amended pleading after striking allegations that were inconsistent with the prior pleading.  *See id.*  More recently, another panel of the Ninth Circuit cited *PAE* when it reiterated that "nothing in the Federal Rules of Civil

6

1    Procedure prohibits inconsistent pleadings." *Allen v. City of Arcata*, 691 F. App'x 461, 463 (9th

2    Cir. 2017).

3        This Court cannot follow both Ninth Circuit lines of cases at the same time. Like many

4    other district courts within the Ninth Circuit, this Court elects to follow the *PAE* line of cases,

5    which is more consistent with the Ninth Circuit's liberal policy favoring amendment. *See, e.g.,*

6    *Jefferson v. Raisen*, No. CV 19-9107-DMG (MAAx), 2020 WL 6440034, at *5 (C.D. Cal. Aug.

7    14, 2020) ("Given that the Court cannot follow *PAE*, *Corinthian Colleges*, and *Reddy* at the same

8    time, it will adhere to clearer Ninth Circuit precedent requiring that courts must liberally grant

9    leave to amend."); *Hernandez v. Schaad*, No. 17-CV-04055-HSG, 2017 WL 6731624, at *3 (N.D.

10   Cal. Dec. 29, 2017) (noting inconsistency between *Airs Aromatics* and *PAE* and following *PAE*).

11   Accordingly, this Court evaluates Defendants' statute of limitations challenge based on the

12   allegations of the FAC. As discussed above, no time-bar arises from the dates alleged in the FAC.

13       Defendants suggest in their reply that even if Kanaan's amendment of his pleading to

14   correct a typographical error was appropriate, Kanaan should have included an explanation for the

15   changes to his factual allegations in the FAC. Imposing such a requirement would be inconsistent

16   with *PAE*, which this Court follows here. Moreover, the Court notes that Kanaan provided an

17   explanation for the amendment – the need to correct the 2010 discovery date erroneously alleged

18   in the original complaint – in his administrative motion filed contemporaneously with his FAC.

19   *See* Admin. Mot. ¶ 6, ECF 17. The Court is at a loss to understand Defendants' insistence that the

20   explanation should have been repeated in the FAC itself.

21       Defendants' motion to dismiss Claims 1-5 on statute of limitations grounds is DENIED.

22                   **2.      Fraudulent Concealment Allegations (Claim 6)**

23       Defendants contend that Kanaan has not alleged all the elements of Claim 6, for fraudulent

24   concealment. "The required elements for fraudulent concealment are (1) concealment or

25   suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff;

26   (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the

27   fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she

28   had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of

United States District Court
Northern District of California

the concealment or suppression of the fact." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (internal quotation marks and citation omitted).

The FAC alleges the following: Yaqub initiated a capital call for the LLC. FAC ¶ 75. Yaqub, as a controlling interest holder in the LLC, owed fiduciary duties of care and fidelity to Kanaan as a noncontrolling minority interest holder of the LLC. *Id*. ¶ 35. Yaqub nonetheless failed to inform Kanaan of the capital call. *Id*. ¶ 29. Yaqub drafted minutes memorializing Kanaan's failure to respond to the capital call with a capital contribution, and purporting to revise the membership interests in the LLC such that Yaqub held a 92% interest and Kanaan held an 8% interest. *Id*. ¶ 30. Yaqub also drafted and executed an Amended Operating Agreement for the LLC. *Id*. ¶ 22. The Operating Agreement states that unanimous approval of the LLC's members is required for any amendment. *Id*. ¶ 33. Yaqub nonetheless did not give notice of the amendment to Kanaan or obtain his approval of the amendment. *Id*. ¶¶ 22, 33. By taking these actions and concealing them from Kanaan, Yaqub intended to defraud Kanaan of his ownership interest in the LLC, thus squeezing Kanaan out of the LLC. FAC ¶¶ 1-3. Yaqub also intended to induce Kanaan not to investigate the records and actions of the LLC, and had Kanaan been aware of the facts concealed by Yaqub, Kanaan would have acted differently. *Id*. ¶¶ 77-78. Kanaan suffered damages as a result of Yaqub's actions, including loss of ownership interest and distributions from the LLC. *Id*. ¶ 79.

Kanaan's allegations satisfy all of the elements of a claim for fraudulent concealment. The Court finds Defendants' arguments to the contrary to be utterly unpersuasive and bordering on the frivolous. Defendants contend that Kanaan has not adequately alleged when he learned of Yaqub's misconduct and why he did not learn of the misconduct earlier. However, Kanaan alleges that he learned about the misconduct relating to the purported capital call when he received the letter on June 1, 2018, advising him of the drastic reduction of his equity interest in the LLC, and that Yaqub did not advise him of the capital call. Defendants argue that Kanaan has not allowed how he would have acted differently if he had known about the misconduct Yaqub concealed. Kanaan alleges that Yaqub concealed his misconduct so that Kanaan would not investigate the records and actions of the LLC and that Kanaan would have acted differently – that

is, would have investigated – had he been aware of Yaqub's misconduct. These allegations give rise to a reasonable inference that Kanaan would have acted to protect his interest in the LLC had Yaqub not concealed his misconduct. Finally, Defendants argue that Kanaan's allegations are insufficient because Kanaan's damages flow from Yaqub's alleged wrongful *acts* and not the fraudulent *concealment* of those acts. Kanaan's theory is that Yaqub essentially stole Kanaan's ownership interest in the LLC and prevented Kanaan from acting to protect his ownership interest by concealing the purported capital call and amendment to the Operating Agreement. Kanaan's damages thus flow from Yaqub's alleged fraudulent conduct and fraudulent concealment of that conduct. Yaqub has not cited any case authority suggesting that something more is required to state a claim for fraudulent concealment.

Defendants' motion to dismiss Claim 6 is DENIED.

## B. Motion to Strike under Rule 12(f)

Defendants' alternative motion to strike is based on the same meritless arguments underpinning their motion to dismiss, that is, their arguments that Claims 1-5 are time-barred and that Claim 6 is inadequately pled.

Defendants' alternative motion to strike is DENIED.

## IV. ORDER

(1)     Defendants' motion to dismiss or strike the FAC is DENIED.

(2)     This order terminates ECF 20.

Dated:  August 15, 2022

_____
BETH LABSON FREEMAN
United States District Judge

EXHIBIT "3"

1  Amjad M. Khan (SBN 237325)
    *amjad.khan@bnsklaw.com*
2  **BROWN NERI SMITH & KHAN LLP**
   11601 Wilshire Boulevard, Suite 2080
3  Los Angeles, California 90025
   Telephone: (310) 593-9890
4  Facsimile: (310) 593-9980

5  Jennifer L. Gordon (*pro hac vice*)
    *jgordon@loriumlaw.com*
6  **LORIUM LAW**
   180 N. LaSalle Street, Suite 3700
7  Chicago, Illinois 60601
   Telephone: (312) 564-5757
8  Facsimile: (312) 564-5758

9  *Counsel for Plaintiff*
   *Nabih "Nick" Kanaan*
10

11            **IN THE UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13

14 | NABIH "NICK" KANAAN,          | Case No. 5:21-cv-09591

15 |                               | **PLAINTIFF'S NOTICE OF**
                  Plaintiff,       | **VOLUNTARY DISMISSAL OF**
16 |                               | **DEFENDANT THE INN AT DEL**
                                   | **MONTE BEACH, LLC WITHOUT**
17 |      v.                       | **PREJUDICE**

18 |                               |
   | NIZAR YAQUB, an individual, and | Hearing Date:
19 | THE INN AT DEL MONTE BEACH,   | Time:
   | LLC, a California Limited Liability | Dept.:
20 | Company,                      | Judge:

21 |              Defendant(s).

22

23

24

25

26

27

28

1   **TO THE HONORABLE COURT, ALL PARTIES AND COUNSEL**

2          **PLEASE TAKE NOTICE THAT** pursuant to Federal Rules of Civil Procedure, Rule

3   41(a)(1)(A)(i), Plaintiff Nabih "Nick" Kanaan ("Kanaan") by and through undersigned counsel,

4   hereby gives notice of their voluntary dismissal of Defendant The Inn at Del Monte Beach, LLC

5   ("The LLC") without prejudice.

6          Defendants have not answered or moved for summary judgment.

7

8

9

10  Dated: September 14, 2022

11
                                    Respectfully submitted,
12                                  /s/ Amjad M. Khan
                                    Amjad M. Khan
13                                    amjad.khan@bnsklaw.com
                                    **BROWN NERI SMITH KHAN, LLP**
14                                  11601 Wilshire Blvd #2080
                                    Los Angeles, CA 90025
15                                  Telephone: 310 593 9899

16                                  /s/ Jennifer L. Gordon
                                    Jennifer L. Gordon (*pro hac vice*)
17                                    jgordon@loriumlaw.com
                                    **LORIUM LAW**
18                                  180 N. LaSalle Street, Suite 3700
                                    Chicago, Illinois 60601
19                                  Telephone: (312) 564-5757

20
                                    *Counsel for Plaintiff*
21                                  *Nabih "Nick" Kanaan*

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL OF DEFENDANT WITHOUT PREJUDICE
CASE NO. 5:21-cv-09591

EXHIBIT "4"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NABIH KANAAN,

Plaintiff,

v.

NIZAR YAQUB,

Defendant.

Case No. 21-cv-09591-BLF

**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND VACATING JANUARY 5, 2023 HEARING**

[Re: ECF 41]

Plaintiff Nabih Kanaan ("Kanaan") alleges that he and Defendant Nizar Yaqub ("Yaqub") are the sole members of a limited liability company, The Inn at Del Monte Beach, LLC ("the LLC"). Kanaan asserts that Yaqub has engaged in fraud and other misconduct to squeeze Kanaan out of the LLC and convert Kanaan's ownership interest to himself. Kanaan's operative first amended complaint ("FAC") asserts state law claims against both Yaqub and the LLC (collectively, "Defendants") for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of California Business & Professions Code § 17200, declaratory and injunctive relief, and fraudulent concealment. *See* FAC, ECF 18. Subject matter jurisdiction is premised on diversity of citizenship. *See id.* ¶ 8.

Before the Court is Defendants' motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, here, diversity jurisdiction. *See* ECF 41 ("MTD"). The Court finds the motion to dismiss suitable for decision without oral argument. *See* Civ. L.R. 7-1(b). The hearing previously set for January 5, 2023 is VACATED.

United States District Court
Northern District of California

1   The thrust of the motion to dismiss is that complete diversity of citizenship does not exist

2   because Kanaan alleges that he is a citizen of Illinois and that he is an owner/member of the LLC.

3   *See* FAC ¶¶ 4, 35.  "For purposes of diversity jurisdiction, a limited liability company is a citizen

4   of every state of which its owners/members are citizens."  *3123 SMB LLC v. Horn*, 880 F.3d 461,

5   465 (9th Cir. 2018) (internal quotation marks and citation omitted).  Because Plaintiff Kanaan and

6   Defendant LLC share Illinois citizenship, there was no diversity jurisdiction at the time the action

7   was filed.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (Diversity jurisdiction "applies

8   only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each

9   defendant.").

10   In response to Defendants' motion to dismiss, Kanaan voluntarily dismissed the LLC from

11   the action under Federal Rule of Civil Procedure 41(a)(1)(A)(i).  *See* Pl.'s Not. of Voluntary

12   Dismissal, ECF 42.  Kanaan thereafter filed a one-page opposition, arguing that the motion to

13   dismiss should be denied as moot.  *See* Pl.'s Opp., ECF 43.  There is complete diversity of

14   citizenship between Kanaan, a citizen of Illinois, and Yaqub, a citizen of California.  *See* FAC ¶¶

15   4-5.  Yaqub did not file a reply in support of the motion to dismiss, apparently conceding

16   Kanaan's assertion that the motion is moot.

17   Although subject matter jurisdiction ordinarily is determined at the time an action is filed,

18   a well-established exception to the time-of-filing rule allows a court to "cure a jurisdictional defect

19   by dismissing a dispensable nondiverse party" at any time, even after judgment has been rendered

20   and an appeal has been filed.  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 573 (2004).

21   The court's authority to cure a jurisdictional defect in this manner flows from Federal Rule of

22   Civil Procedure 21, which provides that "the court may at any time, on just terms, add or drop a

23   party."  Fed. R. Civ. P. 21; *see also Grupo Dataflux*, 541 U.S. at 573 (citing Rule 21).  The Ninth

24   Circuit has characterized Rule 21 "as a grant of discretionary power to the federal court to perfect

25   its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not

26   indispensable to the action under Rule 19."  *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th

27   Cir. 2003) (internal quotation marks, citation, and brackets omitted).

28   Yaqub did not file a reply to Kanaan's opposition, thereby foregoing his opportunity to

argue that the LLC is an indispensable party.  Such an argument would have been unsuccessful in

any event, as it is clear from the face of the FAC that the LLC is not an indispensable party to

Kanaan's claims against Yaqub that are grounded in Yaqub's own alleged misconduct.  Those

claims include breach of fiduciary duty, breach of contract, and fraudulent concealment.  The

Court thus concludes that under the well-established exception to the time-of-filing rule discussed

above, Kanaan's voluntary dismissal of the LLC cured the jurisdictional defect that existed when

the action was filed.  The motion to dismiss is DENIED on that basis.

## ORDER

(1)     The motion to dismiss for lack of subject matter jurisdiction is DENIED;

(2)     The hearing previously scheduled for January 5, 2023 is VACATED; and

(3)     This order terminates ECF 41.

Dated:  October 27, 2022

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

3

EXHIBIT "5"

1

2

3      **UNITED STATES DISTRICT COURT**

4      **NORTHERN DISTRICT OF CALIFORNIA**

5      **SAN JOSE DIVISION**

6

7  NABIH KANAAN,                          Case No.  21-cv-09591-BLF

8            Plaintiff,

9       v.                                **ORDER DENYING MOTION TO
                                           DISMISS FIRST AMENDED
10 NIZAR YAQUB,                           COMPLAINT FOR FAILURE TO JOIN
                                          AN INDISPENSABLE PARTY**

11           Defendant.                    [Re: ECF 45]

12

13        Plaintiff Nabih Kanaan ("Kanaan") alleges that he and Defendant Nizar Yaqub ("Yaqub")

14  are the sole members of a profitable limited liability company, The Inn at Del Monte Beach, LLC

15  ("the LLC").  Kanaan claims that Yaqub engaged in fraud and other misconduct in an order to

16  convert to himself the majority of Kanaan's ownership interest in the LLC.  Kanaan originally

17  filed this suit against both Yaqub and the LLC, but subsequently dismissed the LLC.

18        Before the Court is Yaqub's third motion to dismiss the operative first amended complaint

19  ("FAC").  The Court denied Yaqub's prior motions to dismiss the FAC under Federal Rules of

20  Civil Procedure 12(b)(6) and 12(b)(1).  Yaqub now moves to dismiss the FAC under Federal Rule

21  of Civil Procedure 12(b)(7), for failure to join an indispensable party.  *See* Mot., ECF 45.  The

22  Court previously vacated the hearing that had been set for March 30, 2023 and took the motion

23  under submission without oral argument.  *See* Order, ECF 53.

24        Yaqub's Rule 12(b)(7) motion is DENIED for the reasons discussed below.

25  **I.    BACKGROUND**

26        Kanaan filed the complaint in this action on December 10, 2021, and filed the operative

27  FAC on February 16, 2022.  *See* Compl., ECF 1; FAC, ECF 18.  In the FAC, Kanaan describes

28  investments he entered into with Yaqub and Yaqub's wife, Linda Seeley, dating back to 1998.

United States District Court
Northern District of California

1   Compl. ¶¶ 10-15. Kanaan, Yaqub, and Seeley formed the LLC in 2007, with Kanaan holding a

2   30% interest and Seeley holding a 70% interest. *Id.* ¶ 16. Seeley purportedly transferred all of her

3   ownership interest in the LLC to Yaqub in April 2011. *Id.* ¶ 20. Seeley died in July 2011. *Id.* ¶

4   21. Kanaan claims that Yaqub thereafter engaged in fraud and other misconduct in order to

5   squeeze him out of the company. Yaqub allegedly amended the LLC's Operating Agreement

6   without notice to Kanaan, even though an amendment required unanimous approval of the LLC's

7   members, FAC ¶ 22, 33; falsified documents to make it seem as though Kanaan's ownership

8   interest had decreased from 30% to 8%, FAC ¶ 28; scheduled a capital call without notice to

9   Kanaan, FAC ¶ 29; and falsified LLC minutes, FAC ¶ 30. Kanaan also alleges that before her

10  death, Seeley used LLC funds for personal expenses, and that Yaqub colluded with Seeley in the

11  misuse of LLC funds. FAC ¶¶ 31-32, 38(c), 47(c).

12      The Court has denied two prior motions to dismiss the FAC. The first motion, which was

13  brought under Federal Rule of Civil Procedure 12(b)(6), asserted that Kanaan's claims were time-

14  barred and were not adequately pled. *See* Mot., ECF 20. The Court found the statute of

15  limitations argument to be without merit and found the claims to be adequately pled. *See* Order,

16  ECF 40. The second motion, which was brought under Federal Rule of Civil Procedure 12(b)(1),

17  asserted that the Court lacked subject matter jurisdiction because there was not complete diversity

18  of citizenship between the parties. *See* Mot., ECF 41. The motion correctly pointed out that

19  subject matter jurisdiction was based on diversity, and that Kanaan and the LLC necessarily are

20  citizens of the same state because an LLC is a citizen of every state of which its owners/members

21  are citizens. *See id.* In response to the Rule 12(b)(1) motion, Kanaan voluntarily dismissed the

22  LLC from the suit. *See* Notice of Dismissal, ECF 42. Kanaan thereafter filed an opposition

23  arguing that the Rule 12(b)(1) motion should be denied as moot. *See* Opp., ECF 43. Yaqub did

24  not file a reply. The Court denied the Rule 12(b)(1) motion, finding that dismissal of the LLC was

25  permissible and cured the jurisdictional defect. *See* Order, ECF 44.

26      Yaqub now seeks dismissal of the FAC pursuant to Rule 12(b)(7) on the basis that the LLC

27  is an indispensable party.

28

United States District Court
Northern District of California

2

## II.    LEGAL STANDARD

A party may move under Federal Rule of Civil Procedure 12(b)(7) to dismiss a claim for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Joinder of parties is governed by Federal Rule of Civil Procedure 19, which imposes a three-step inquiry: "1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)? 2. If so, is it feasible to order that the absent party be joined? 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citation omitted).

"In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings." *Hammons v. Wells Fargo Bank, N.A.*, No. 15-cv-04897-RS, 2015 WL 9258092, at *7 (N.D. Cal. Dec. 18, 2015). "The burden of persuasion is on the party moving to dismiss for failure to join." *Reddy v. Morrissey*, No. 3:18-CV-00938-YY, 2018 WL 4844164, at *2 (D. Or. Sept. 17, 2018), report and recommendation adopted, No. 3:18-CV-00938-YY, 2018 WL 4832352 (D. Or. Oct. 3, 2018).

## III.   DISCUSSION

Yaqub contends that the LLC is a necessary and indispensable party and that joinder is not feasible because joinder would destroy personal jurisdiction. Yaqub asks the Court to dismiss the action on these grounds. In opposition, Kanaan argues that Yaqub is precluded from seeking dismissal on these grounds under the law of the case doctrine. Alternatively, Kanaan argues that the LLC is not an indispensable party.

### A.    Law of the Case Doctrine

As noted above, Kanaan voluntarily dismissed the LLC in response to Yaqub's Rule 12(b)(1) motion to dismiss for lack of diversity jurisdiction. Kanaan then filed a short opposition asserting that the Rule 12(b)(1) motion was moot in light of the dismissal of the LLC. Yaqub did not file a reply. In determining whether voluntary dismissal of the LLC cured the jurisdictional defect, the Court relied on case authority providing that a district court may preserve subject matter jurisdiction by dropping a nondiverse party, *providing the party is not indispensable under Rule 19. See* Order at 2, ECF 44. The Court stated that "Yaqub did not file a reply to Kanaan's

3

1   opposition, thereby foregoing his opportunity to argue that the LLC is an indispensable party." *Id.*

2   The Court then opined that "[s]uch an argument would have been unsuccessful in any event, as it

3   is clear from the face of the FAC that the LLC is not an indispensable party to Kanaan's claims

4   against Yaqub that are grounded in Yaqub's own alleged misconduct." *Id.* at 3.  The Court

5   concluded that "Kanaan's voluntary dismissal of the LLC cured the jurisdictional defect that

6   existed when the action was filed," and therefore denied Yaqub's Rule 12(b)(1) motion.  *Id.*

7        Kanaan argues that in light of these statements in the Court's prior order, the law of the

8   case doctrine bars Yaqub's current motion.  "The law of the case doctrine is a judicial invention

9   designed to aid in the efficient operation of court affairs."  *United States v. Lummi Indian Tribe,*

10  235 F.3d 443, 452 (9th Cir. 2000) (internal quotation marks and citation omitted).  "Under the

11  doctrine, a court is generally precluded from reconsidering an issue previously decided by the

12  same court, or a higher court in the identical case."  *Id.*  However, "[t]he law of the case doctrine

13  does not preclude a court from reassessing its own legal rulings in the same case."  *Askins v. U.S.*

14  *Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018).

15       Yaqub contends that the Court should not apply the doctrine here, explaining that he did

16  not believe that a reply in support of his Rule 12(b)(1) motion was warranted given that Kanaan

17  had an absolute right to dismiss the LLC because no answer or summary judgment had been filed.

18  Yaqub points out that the issue of whether the LLC is an indispensable party was not expressly

19  raised in Kanaan's opposition to the Rule 12(b)(1) motion.  Under these circumstances, Yaqub

20  argues, it was reasonable for him to raise the issue in a Rule 12(b)(7) motion, and he urges the

21  Court to reach the merits of the motion.

22       The Court finds Yaqub's arguments on this point to be well-taken.  Although the Court had

23  to consider whether the LLC is an indispensable party in order to rule on Yaqub's prior Rule

24  12(b)(1) motion, that issue was not squarely teed up for the parties until now.  The Court therefore

25  exercises its discretion to reassess its determination that the LLC is not an indispensable party, and

26  to consider Yaqub's current motion on the merits.  *See Askins*, 899 F.3d at 1042 (law of the case

27  doctrine does not bar a court from reconsidering its rulings in the same case).

28

United States District Court
Northern District of California

4

**B.    Rule 19 Analysis**

As set forth above, courts apply a three-step inquiry to decide joinder issues under Rule 19: "1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)? 2. If so, is it feasible to order that the absent party be joined? 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" *Salt River*, 672 F.3d at 1179.

"An archetypal example of a necessary and indispensable party is a corporation that was not joined in a derivative suit by one of its shareholders." *Azoulai v. La Porta*, No. CV 15-06083-MWF-PLA, 2016 WL 9045852, at *2 (C.D. Cal. Jan. 25, 2016). "Because a 'company has a legal existence separate from its members, . . . a corporation which suffers damages through wrongdoing by its officers and directors must itself bring the action to recover the losses thereby occasioned.'" *Id.* (quoting *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 965 (2001). "Courts have recognized for decades that a derivative action may not proceed without the corporation joined either as plaintiff or, if the corporation's interests are antagonistic to those of the shareholder, as a defendant." *Id.* "In California, the same rule applies to limited liability companies." *Id.* at *3 (citing *PacLink*, 90 Cal. App. 4th at 963).

"[T]he action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, *or it seeks to recover assets for the corporation or to prevent the dissipation of its assets*." *PacLink*, 90 Cal. App. 4th at 964 (internal quotation marks and citation omitted, italics in original). In contrast, a stockholder may bring a direct action "to enforce a right against the corporation which the stockholder possesses as an individual." *Id.* (internal quotation marks and citation omitted). Moreover, a minority stockholder may bring a direct action against majority stockholders for breach of fiduciary duty, as the injury caused by such breach is not incidental to an injury to the corporation. *See id.*

Applying these rules to LLCs, district courts within the Ninth Circuit have concluded that "[i]f the gravamen of the wrong alleged in a complaint is an injury to a limited liability company, affecting its members only by diminishing their stake in the company, the suit is derivative."

5

*Azoulai*, 2016 WL 9045852, at *3. In contrast, district courts have found that claims brought by one LLC owner against another for breach of contract, declaratory relief, or fraud are not derivative but personal to the plaintiff. *See id*. at *4 (LLC owner's claims for declaratory relief and fraud were not derivative); *Reddy*, 2018 WL 4844164, at *3 (claim for breach of contract was direct claim, not derivative claim).

In the present case, the Court finds that the claims asserted against Yaqub in the FAC are direct claims and not derivative claims. Claim 1, for breach of fiduciary duty, alleges that "Defendant Yaqub is a controlling interest holder and member of The LLC, and therefore owed fiduciary duties of care and fidelity to Plaintiff as a noncontrolling minority interest holder of The LLC." FAC ¶ 35. Claim 1 alleges that Yaqub violated his fiduciary duties to Kanaan in numerous ways, including by failing to provide Kanaan with notice of alleged capital contribution calls, falsifying documents related to capital contribution calls, and acting in bad faith to reduce Kanaan's 30% ownership interest in the LLC to 8%. FAC ¶ 38. Claim 2, for breach of contract, alleges that both Yaqub and Kanaan are parties to the LLC's Operating Agreement, and that Yaqub breached the Operating Agreement in several ways, including by failing to provide Kanaan with notice of any alleged capital contribution calls, falsifying documents related to capital contribution calls, and acting in bad faith to reduce Kanaan's 30% ownership interest in the LLC to 8%. FAC ¶ 47. Claim 3, for breach of the implied covenant of good faith and fair dealing, alleges that Yaqub breached the implied covenant by using his authority as a majority interest holder in bad faith to deprive Kanaan of benefits to which he was entitled as a minority interest holder in the LLC. FAC ¶¶ 53-56.

Claim 4, for unfair competition under California Business & Professions Code § 17200, alleges that Yaqub has engaged in unfair business practices by violating California public policies designed to protect minority interest holders, and has engaged in fraudulent business practices by falsifying minutes of LLC meetings and fraudulently amending the LLC's Operative Agreement in order to divest Kanaan of his ownership interest in the LLC. FAC ¶¶ 60-61. Claim 5, for declaratory and injunctive relief, seeks resolution of an actual controversy between Yaqub and Kanaan regarding their respective ownership interests in the LLC. FAC ¶ 69. Claim 6, for

6

fraudulent concealment, alleges that Yaqub intentionally failed to disclose material facts to Kanaan, including that Yaqub initiated a capital call, amended the LLC's Operating Agreement, and falsified minutes. FAC ¶ 75.

All of these claims assert wrongful conduct by Yaqub that caused harm to Kanaan individually – divestiture of the majority of his interest in the LLC – which is separate and apart from any harm caused to the LLC itself. Yaqub correctly points out that the FAC contains other allegations of misconduct by Yaqub that harmed the LLC, for example, allegations that Yaqub colluded with Seeley to use LLC funds for personal expenses and failed to renew the liquor license for a property owned by the LLC. FAC ¶¶ 38(c), 47(c), 75(d). Any claims based on those allegations would be derivative and would require joinder of the LLC to proceed. However, reading the FAC as a whole, the Court concludes that the allegations regarding Yaqub's collusion in the misuse of LLC funds and failure to renew the liquor license are not central to Kanaan's claims. The the gravamen of the FAC is Yaqub's attempt to squeeze Kanaan out of the LLC. The LLC is not an indispensable party to those claims.

Yaqub's motion to dismiss is DENIED. Yaqub SHALL file an answer within 14 days after the filing of this order, or by May 31, 2023. *See* Fed. R. Civ. P. 12(a)(4) (answer must be filed within 14 days after court denies a motion to dismiss).

## IV. ORDER

(1)     Defendant Yaqub's motion to dismiss the FAC for failure to join an indispensable party is DENIED;

(2)     Defendant Yaqub SHALL file an answer by May 31, 2023; and

(3)     This order terminates ECF 45.

Dated:  May 17, 2023

BETH LABSON FREEMAN
United States District Judge

EXHIBIT "6"

1   WILLIAM J. MURRAY – BAR #087936
    BELZER & MURRAY, LLP
2   1600 S. Main Street, Suite 260
    Walnut Creek, CA 94596
3   Telephone: 925/284-9000/925/926-9000
    E-Mail: Murray@wjmattorneys.com
4

5   Attorneys for Defendants & Counter-Claimant
    NIZAR YAQUB
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  NABIH "NICK" KANAAN,                      Case No. 5:21-cv-09591

12                    Plaintiffs,

13  v.

14

15  NIZAR YAQUB, an individual; THE INN
    AT DEL MONTE BEACH, LLC, a
16  California Limited Liability Company,      ANSWER TO FIRST AMENDED
                                              COMPLAINT AND COUNTERCLAIM
17                    Defendants.

18  NIZAR YAQUB, an individual;               DEMAND FOR JURY TRIAL

19                    Counter Complainant

20  v.

21  NABIH "NICK" KANAAN,

22                    Counter-Defendant

23

24      Defendant and Counter-Complainant NIZAR YAQUB, for himself alone, hereby Answers

25  the First Amended Complaint, as follows:

26

27  / / /

28  / / /

                                1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As to the allegations in the unnumbered first paragraph, p. 2, lines 1-9, Defendant denies any and all allegations of "unlawful and fraudulent management and transfers of assets and membership units of the LLC by Yaqub as against Kanaan." Other than the labeling of the causes of action of the First Amended Complaint, Defendant lacks sufficient information and knowledge to form a belief about the truth of the allegations of the rest of the paragraph including as to how Plaintiff "brings this action" and on that basis denies said allegations. As to the allegations against, The Inn at Del Monte Beach, LLC (hereinafter, the "LLC") it is no longer a party to this action.

1.     As to the allegations in paragraph 1 Defendant only admits that he is informed and believes that the LLC was formed, with Plaintiff having an initial interest therein of 30% and that the LLC owns a property in Monterey.   Except as to these specified admissions, Defendant denies all and each and every the allegations of this paragraph.

2.     As to the allegations in paragraph 2 with respect to the alleged quotation, Defendant lacks sufficient knowledge or information to form a belief as to the truth of this allegation and on that basis denies it.   As to the remaining allegations in this paragraph, Defendant denies each and every one of them.

3.     As to the allegations in paragraph 3 Defendant denies each and every allegation in said paragraph.

4.     As to the allegations in paragraph 4 Defendant admits only that Plaintiff is an individual, and alleges his residence. Plaintiff lacks sufficient knowledge or information to form a belief as to the truth of the other allegations of this paragraph, and based thereon denies each and every one of them.

5.     As to paragraph 5, Defendant admits only that he is an individual and resident of California and that he is the managing member of and holder of a majority interest in the LLC. As to the remaining allegations as phrased Defendant lacks sufficient information and knowledge as to form a belief as to their truth and based thereon denies them.

6.     Defendant admits the allegations of paragraph 6.

7.     Defendant admits the allegations of paragraph 7.

2

8.      As to the allegations in paragraph 8, Defendant admits that he is a California resident.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of the other allegations, in this paragraph and based thereon denies them.

9.      As to the allegations in paragraph 9 Defendant admits only that based on the allegations of the First Amended Complaint venue is proper.

10.      As to the allegations in paragraph 10, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations as to the ownership of Medical Equities, LLC, and based thereon denies said allegations.

11.      Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11, including because the "Morgan Hill Property" is not identified properly and on this basis denies all said allegations.

12.      Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12, including but not limited to because the "Morgan Hill Property" is not identified properly and on this basis denies all said allegations.

13.      In response to paragraph 13, Defendant admits only that Medical Equities purchased the Property in 2002.  As to the remaining allegations Responding Party denies them or lacks sufficient knowledge or information to form a belief as to the truth of the allegations and on that basis denies them.

14.      As to the allegations in Paragraph 14, based solely on the ABC website, this appears to be correct.

15.      As to the allegations in paragraph 15, because it is unclear whether Plaintiff is alleging that Yaqub operated a bed and breakfast, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations, and based thereon denies them.

16.      As to the allegations in paragraph 16, Defendant denies that he formed the LLC. As to the other allegations of this paragraph, Defendant lacks sufficient information and belief to lacks sufficient information and belief to form a belief as to the truth these allegations, and based thereon denies them.

17.      As to the allegations in paragraph 17, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations and based thereon denies them.

3

18.     As to the allegations in paragraph 18, Defendant admits these allegations.

19.     As to the allegations in paragraph 19, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations and based thereon denies them.

20.     As to the allegations in paragraph 20, Defendant admits only that Seeley transferred all her ownership interest in the LLC to Defendant.  Defendant lacks sufficient knowledge or information to lacks sufficient information and belief to form a belief as to the truth of the remaining allegations of this paragraph, and based thereon denies them.

21.     Defendant admits the allegations of paragraph 21.

22.     As to paragraph 22, partially because of the wording of this paragraph, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations and based thereon denies them.

23.     With respect to the allegations in paragraph 23, Defendant denies the allegation that Plaintiff was never contacted and the allegation that he never consented to the cancellation of Medical Equities.

24.     As to the allegations in paragraph 24, Defendant notes that this appears to relate, if to anything, to a claim which would be derivative and precluded by the Court's Order denying Defendant's Motion to Dismiss.  In response to the allegations, Defendant admits that a lawsuit was filed alleging that there was a default on the loan.  As to the other allegations, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations, and based thereon denies them.

25.     In response to the allegations in paragraph 25, Defendant admits only that he applied for a liquor license on behalf of the LLC, and stated in connection with that application that he owned 92% of the LLC and, Plaintiff owned 8%.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations as stated in this paragraph, and based thereon denies them.

26.     As to the allegations in paragraph 26, Defendant admits only that the lawsuit was settled, and denies all other allegations.

27.     As to the allegations in paragraph 27, while the letter referenced speaks for itself and Defendant denies any characterization of it to the extent it varies from the letter, Defendant

4

otherwise admits the allegations of paragraph 27.

28.     As to the allegations in paragraph 28 Defendant admits only that he believes and contends that Plaintiff's ownership interest in the LLC was reduced to 8%. With respect to all the other allegations of this paragraph, Defendant denies each and every one of them.

29.     As to the allegations of paragraph 29 Defendant lacks information and belief sufficient to lacks sufficient information and knowledge to form a belief as to the truth  of these allegations, and on that basis denies them.

30.     As to the allegations of paragraph 30,  based on what is alleged, Defendant lacks sufficient information and knowledge to form a belief as to the truth of these allegations and based thereon denies them, except that Defendant admits that Exhibit E appears to be a copy of the Minutes to Memorialize Prior Action Taken.

31.     As to the allegations of Paragraph 31, without in any way admitting them, Defendant responds that based on the Court's Order Denying Motion to Dismiss the First Amended Complaint these allegations are no longer part of this action, and no response is required. To the extent any response would be required, Defendant lacks sufficient information and knowledge to form a belief as to the truth of these allegations and based thereon denies them.

32.     As to the allegations of Paragraph 32, without in any way admitting them, Defendant responds that based on the Court's Order Denying Motion to Dismiss the First Amended Complaint these allegations are no longer part of this action, and no response is required.   To the extent any response would be required, Defendant lacks knowledge or information  sufficient to form a belief as to the truth of these allegations and based thereon denies them, and also denies any wrongdoing by Defendant.

33.     As to the allegations of Paragraph 33 of the First Amended Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of these allegations and based thereon denies them.

34.     As to the allegations in paragraph 34 of the First Amended Complaint, Defendant incorporates his responses to the prior allegations incorporated by reference.

/ / /

/ / /

5

35. As to the allegations in paragraph 35, which appear to be argument, based on the allegations, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations and based thereon denies them.

36. As to the allegations in paragraph 36, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations which appear to be argument, and based thereon denies them.

37. As to the allegations in paragraph 37 Defendant lacks sufficient knowledge or information to form a belief as to the truth of these vague allegations which appear to be argument, and based thereon denies them.

38. As to the allegations in paragraph 38, Defendant denies all these allegations. Defendant also notes that as to the allegations in subpart C, based on the Court's ruling Denying the Motion to Dismiss the First Amended Complaint, they are no longer part of this action.

39. As to the allegations of paragraph 39, Defendant denies all such allegations. Defendant also notes that based on the Court's ruling Denying the Motion to Dismiss the First Amended Complaint, the damages allegations may not be part of this action.

40. As to the allegations in paragraph 40 of the First Amended Complaint, Defendant incorporates his responses to the prior allegations incorporated by reference.

41. As to the allegations of paragraph 41, which appear to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations and based thereon denies them.

42. As to the allegations of paragraph 42, which appear to be argument, Defendant lacks knowledge or information sufficient to form a belief about their truth, and based thereon denies them.

43. As to the allegations of paragraph 43, which appear to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations and based thereon denies them.

44. As to the allegations of paragraph 44, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations and based thereon denies them.

45. As to the allegations of paragraph 45, which appears to be argument, Defendant

6

lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

46. As to the allegations in paragraph 46, which appears to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

47. As to the allegations in paragraph 47, Defendant denies each and every and all these allegations. Defendant also notes that as to the allegations in subpart C, based on the Court's ruling Denying the Motion to Dismiss the First Amended Complaint, they are no longer part of this action.

48. As to the allegations in paragraph 48, Defendant lacks sufficient knowledge or information as to the truth of these allegations to either admit or deny these allegations to the extent he understands them, and based thereon denies them.

49. As to the allegations in paragraph 49, which appears to include argument, Defendant lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and based thereon denies them.

50. As to the allegations in paragraph 50, Defendant denies all of them.

51. As to the allegations in paragraph 51 of the First Amended Complaint, Defendant incorporates his responses to the prior allegations incorporated by reference.

52. As to the allegations of paragraph 52, which appears to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

53. As to the allegations of paragraph 53, which appear to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

54. As to the allegations of paragraph 54, which appear to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations and based thereon denies them.

55. As to the allegations of paragraph 55, which appear to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and

7

based thereon denies them.

56. As to the allegations of paragraph 56, which appear to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

57. As to the allegations of paragraph 57, Defendant denies all of them.

58. As to the allegations in paragraph 58 Defendant incorporates his responses to the prior allegations incorporated by reference.

59. As to the allegations of paragraph 59, which appears to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

60. As to the allegations of paragraph 60, which appears to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

61. As to the allegations of paragraph 61, Defendant denies all of them.

62. As to the allegations of paragraph 62, Defendant denies all of them.

63. As to the allegations of paragraph 63, which appears to contain argument, Defendant denies all of them.

64. As to the allegations of paragraph 64, Defendant denies all of them.

65. As to the allegations of paragraph 65, which appears to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

66. As to the allegations of paragraph 66, which appears to be argument, Defendant lacks sufficient knowledge or information to admit or deny them, and based thereon denies them.

67. As to the allegations in paragraph 67 of the First Amended Complaint, Defendant incorporates his responses to the prior allegations incorporated by reference.

68. As to the allegations of paragraph 68, due at least in part to their vagueness Defendant lacks sufficient knowledge or information to either admit only or deny them and based thereon denies them, except to admit that it is his understanding that Plaintiff's ownership interest was reduced to 8%.

8

69.     As to the allegations of paragraph 66, which appears to be argument, Defendant lacks sufficient knowledge or information to admit or deny them, and based thereon denies them.

70.     Defendant admits the allegations in paragraph 70.

71.     As to the allegations of paragraph 71, which appears to be argument, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

72.     As to the allegations in paragraph 72, Defendant denies all such allegations.

73.     As to the allegations in paragraph 73, Defendant denies all such allegations.

74.     As to the allegations in paragraph 74, of Defendant incorporates his responses to the prior allegations incorporated by reference.

75.     As to the allegations of paragraph 75, Defendant denies all of them.

76.     As to the allegations of paragraph 76, Defendant incorporate his denial all the allegations of Paragraph 25, and as to the remaining allegations, lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

77.     As to the allegations of paragraph 77, Defendant denies all of them.

78.     As to the allegations of paragraph 78, Defendant denies the allegations that he concealed facts, and as to the remaining allegations, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and based thereon denies them.

79.     As to the allegations of paragraph 79, Defendant denies them. Defendant also notes that these appear to be derivative claims which cannot be asserted by Plaintiff as recognized by the Court in its ruling denying the Motion to Dismiss.

80.     As to the allegations of paragraph 80, Defendant denies them.

Defendant alleges the following affirmative defenses on information and belief:

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

(Failure to State a Claim Upon Which Relief May Be Granted)

As and for a First, Separate and Affirmative defense to the Causes of Action set forth in

9

the First Amended Complaint, and each of them, this Answering Defendant alleges that said Causes of Action fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Proximate Cause)

As and for a Second , Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges that if Plaintiff suffered any losses or damages, which this Answering Defendant denies, said losses or damages were, in whole or in part, caused by the acts and/or omissions of Plaintiff, whether negligent or intentional, and Plaintiff is thus barred, estopped and precluded, in whole or in part, from recovering any such damages against this Answering Defendant.

## THIRD AFFIRMATIVE DEFENSE

### (Conduct of Third Parties)

As and for a Third, Separate and Affirmative defense to the Causes of Action set forth in the First  Amended Complaint, and each of them, this Answering Defendant alleges, that the damages, if any, suffered by Plaintiff, which Defendant denies,  were the result of the acts, conduct and/or omissions of parties other than this Answering Defendant, and Plaintiff thus barred, estopped and precluded from recovery of any such damages against this Answering Defendant.

## FOURTH AFFIRMATIVE DEFENSE

### (Comparative Fault/Negligence)

As and for a Fourth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, Plaintiff and others were negligent in and about the matters

10

referred to in the First Amended Complaint, and that such negligence bars or diminishes Plaintiff's recovery against this Answering Defendant.

### FIFTH AFFIRMATIVE DEFENSE

(Apportionment)

As and for a Fifth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges that he is entitled to a determination and apportionment of such liability and damages, if any, as may be attributable solely to him.

### SIXTH AFFIRMATIVE DEFENSE

(Not a Substantial Factor)

As and for a Sixth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges that Plaintiff is barred from any recovery as against this Answering Defendant in that the actions of this Answering Defendant, if any, were not a substantial factor in the alleged damages, if any.

### SEVENTH AFFIRMATIVE DEFENSE

(Estoppel)

As and for a Seventh, Separate and Affirmative defense to each Cause of Action alleged in the First Amended Complaint, and each of them, this Answering Defendant alleges that Plaintiff is estopped from seeking relief therein due to his own acts or omissions with reference to the subject matter of the First Amended Complaint.

///

///

11

## EIGHTH AFFIRMATIVE DEFENSE

(Statute of Limitations)

As and for an Eighth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges that said Causes of Action are barred by the applicable statutes of limitations including, without limitation California Code of Civil Procedure §§337, 338, 339, 340, 343 and Business and Professions Code §17208.

## NINTH AFFIRMATIVE DEFENSE

(Doctrine of Laches)

As and for a Ninth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges that said Causes of Action are barred under the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

(Failure to Join A Necessary Party)

As and for a Tenth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges that the LLC was an indispensable or necessary party which cannot be joined in this action.

## ELEVENTH AFFIRMATIVE DEFENSE

(Lack of Standing)

As for an Eleventh, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint and each of them, Defendant alleges that Plaintiff lacks standing and is not the real party in interest and is pursuing derivative claims which cannot be prosecuted

12

without the LLC being a party to this action.

## TWELFTH AFFIRMATIVE DEFENSE

(Punitive Damages)

As and for a Twelfth, Separate and Affirmative defense to the Causes of Action set forth in the First Amended Complaint, and each of them, this Answering Defendant alleges any award punitive damages would not be appropriate in this case and would violate the Fifth, Sixth and Fourteenth Amendments the United States Constitution of similar California constitutional provisions.

## THIRTEENTH AFFIRMATIVE DEFENSE

As a thirteenth separate affirmative defense to the Cause of Action in the First Amended Complaint Defendant alleges he acted reasonably and in accordance with his duties in connection with the operation of the LLC.

## COUNTERCLAIM

**Defendant and Counterclaimant alleges on information and belief as follows:**

### FIRST CAUSE OF ACTION

**(Declaratory Relief)**

1.      Defendant and Counterclaimant is informed and believes that Plaintiff Kanaan alleges and claims that he is the holder of a 30% interest in the LLC.

2.      Yaqub disputes this contention and alleges that Kanaan's interest in the LLC is 8%.

/ / /

13

3.     There is a dispute between Plaintiff and Defendant as to the percent of ownership of the LLC by Kanaan and Yaqub and a judicial declaration is necessary so that the parties can resolve this difference and know how to proceed with respect to the ownership of the LLC.

**WHEREFORE** Defendant and Counterclaimant prays that:

1.   Plaintiff take nothing by way of his First Amended Complaint;

2.   For a judgment adjudicating that the interests of Yaqub and of Plaintiff are that Yaqub holds 92% of the LLC and Kanaan hold 8%;

3.   That Yaqub be awarded fees and costs as appropriate, and

4.   For such other and further relief as the Court determines to be appropriate.


Dated: May 31, 2023                    BELZER & MURRAY, LLP


                                       _____/s/_____
                                       WILLIAM J. MURRAY
                                       Attorneys for Defendants
                                       NIZAR YAQUB, an individual; THE INN
                                       AT DEL MONTE BEACH, LLC, a
                                       California Limited Liability Company

14

Re: Kanaan v. Yaqub, et al.
Case No. 5:21-cv-09591

## PROOF OF SERVICE

I, LYNN EDWARDS, declare as follows:

I am over the age of eighteen years and not a party to the within action; my business address is 1600 S. Main Street, Suite 260, Walnut Creek, California 94596; I am employed in Contra Costa County, California.

I am readily familiar with my employer's practices for collection and processing of correspondence for mailing with the United States Postal Service. On May 31, 2023, 2022, I served a copy, with all exhibits, of the following documents:

**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**

on the interested parties in this case by:

___ Following ordinary business practices and placing for collection and mailing at 1600 S. Main Street, Suite 260, Walnut Creek, California 94596, a true copy of the above-referenced document(s), enclosed in a sealed envelope; in the ordinary course of business, the above documents would have been deposited for first-class delivery with the United States Postal Service the same day they were placed for deposit, with postage thereon fully prepaid, in the United States mail at Walnut Creek, California, addressed as follows:

___ Depositing copies of the above documents in a box or other facility regularly maintained by *California Overnight* or Federal Express for overnight delivery in an envelope or package designated by the carrier with delivery fees paid or provided for, addressed as follows:

_X_ Causing the above documents to be electronically delivered to the addressees as follows:

| | |
|---|---|
| Amjad M. Kahn, Esq.<br>BROWN NERI SMITH & KHAN LLP<br>11601 Wilshire Blvd., Ste. 2080<br>Los Angeles, CA 90025<br>Tel: (310) 593-9890<br>E-Mail: Amjad.khan@bnsklaw.com | Jennifer L. Gordon, Esq.<br>LORIUM LAW<br>180 N. LaSalle, Ste. Ste. 3700<br>Chicago, IL 60601<br>Tel: (312) 564-5757<br>E-Mail: jgordon@loriumlaw.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on May 31, 2023, at Walnut Creek, California.

_____/s/_____
LYNN EDWARDS

15

EXHIBIT "7"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABIH KANAAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>NIZAR YAQUB,<br><br>                    Defendant. | Case No. 21-cv-09591-PCP<br><br>**ORDER DENYING IN PART AND<br>GRANTING IN PART PLAINTIFF'S<br>MOTION TO STRIKE**<br><br>Re: Dkt. No. 57 |

Plaintiff Nabih Kanaan moves to strike the affirmative defenses raised by Defendant Nizar Yaqub in his answer to the complaint. For the following reasons, the Court denies the motion as to affirmative defenses 2–9 and 12–13, grants the motion in part as to defenses 1 and 11, and grants the motion to strike affirmative defense 10.

## BACKGROUND

Kanaan and Yaqub co-founded an LLC in 1998, in which Kanaan owned a 30% member interest. In his complaint, Kanaan alleges that Yaqub falsified documents in 2017 to make it seem as though Kanaan has only an 8% ownership interest in the LLC. Kanaan asserts claims for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, declaratory and injunctive relief, and fraud through concealment.

Yaqub answered Kanaan's complaint, asserting 13 affirmative defenses and one counterclaim for declaratory relief. The affirmative defenses are: (1) failure to state a claim; (2) lack of proximate cause; (3) conduct of third parties; (4) comparative fault; (5) apportionment; (6) not a substantial factor; (7) estoppel; (8) statute of limitations; (9) doctrine of laches; (10) failure to join a necessary party; (11) lack of standing; (12) punitive damages; and (13) defendant acted

1    reasonably.

2          Kanaan now moves to strike all affirmative defenses in Yaqub's answer under Federal

3    Rule of Civil Procedure 12(f). First, Kanaan argues that affirmative defenses 2, 3, 4, 5, 7, 8, 9, and

4    13 fail to meet the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554

5    (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Second, Kanaan argues that affirmative

6    defenses 1, 6, 11, and 12 are improper because a "defense which demonstrates that the plaintiff

7    has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302

8    F.3d 1080, 1088 (9th Cir. 2002). Third, Kanaan argues that affirmative defense 10 (failure to join

9    a necessary party) should be stricken because the Court already rejected it. Dkt. No. 54.

## STANDARD OF REVIEW

11         Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or a

12   redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The key to

13   determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair

14   notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Motions to

15   strike are "generally not granted unless it is clear that the matter to be stricken could have no

16   possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*,

17   814 F. Supp. 820, 830 (N.D. Cal. 1992). Ultimately, "whether to grant a motion to strike lies

18   within the sound discretion of the district court." *Woods v. Google LLC*, 2018 WL 5292210, at *2

19   (N.D. Cal. Oct. 23, 2018).

## ANALYSIS

21   **I.     Affirmative Defenses Are Not Subject to *Twombly* and *Iqbal*.**

22         Kanaan argues that Yaqub's affirmative defenses 2–5, 7–9, and 13 should be stricken

23   because they are not adequately supported by factual allegations per the pleading requirements

24   established by the Supreme Court in *Twombly* and *Iqbal*. But *Twombly* and *Iqbal* considered the

25   sufficiency of the affirmative claims pleaded by a plaintiff in their complaint, and neither the

26   Supreme Court nor the Ninth Circuit has considered whether the requirements set forth in those

27   decisions also apply to a defendant's affirmative defenses. *See Dodson v. Gold Country Foods,*

28   *Inc.*, 2013 WL 5970410, at *2 (E.D. Cal. Oct. 18, 2013) ("Neither the Ninth Circuit, nor any other

2

United States District Court
Northern District of California

1    Circuit Court of Appeals, however, has ruled on this issue."). That question remains open.

2          As Kanaan notes, the vast majority of decisions from this District apply the heightened

3    pleading requirements of *Twombly* and *Iqbal* to affirmative defenses. *See, e.g.*, *Dion v. Fulton*

4    *Friedman & Gullace LLP*, 2012 WL 160221, at *2 (N.D. Cal. Jan. 17, 2012) ("A majority of

5    district courts have held that [*Twombly* and *Iqbal*] does apply"); *Illumina, Inc. v. BGI Genomics*

6    *Co.*, 2020 WL 571030, at *5 (N.D. Cal. Feb. 5, 2020) ("I apply the *Twombly* / *Iqbal* pleading

7    standard to affirmative defenses."); *Pertz v. Heartland Realty Inv'rs, Inc.*, 2020 WL 95636, at *1

8    (N.D. Cal. Jan. 8, 2020) ("[T]his Court and the majority of courts in this district have held that the

9    heightened pleading standard of *Twombly* and *Iqbal*, which followed *Wyshak*, is now the correct

10   standard to apply to affirmative defenses."); *Fishman v. Tiger Natural Gas Inc.*, 2018 WL

11   4468680, at *3 (N.D. Cal. Sept. 18, 2018) ("This order finds persuasive the reasoning of the

12   district courts of this circuit and those across the country that apply the *Twombly* / *Iqbal* standard

13   to affirmative defenses"). Notably, however, several decisions from elsewhere within the Ninth

14   Circuit hold otherwise. *See, e.g.*, *Pac. Dental Servs., LLC v. Homeland Ins. Co. of N.Y.*, 2013 WL

15   3776337, at *2 (C.D. Cal. July 17, 2013) ("[T]here is good reason to conclude that *Twombly* /

16   *Iqbal* do not apply to affirmative defenses, and an affirmative defense is sufficiently pled if it

17   gives plaintiff fair notice of the defense."); *DC Labs Inc v. Celebrity Signatures Int'l, Inc.*, 2013

18   WL 4026366, at *5 (S.D. Cal. Aug. 6, 2013) (concluding under *Wyshak*'s more lenient "fair

19   notice" standard that *Iqbal* and *Twombly*'s plausibility standard does not apply to affirmative

20   defenses). With due respect to those decisions that reach a different conclusion, the Court is

21   persuaded by the rationale of the decisions declining to apply the pleading requirements of

22   *Twombly* and *Iqbal* to affirmative defenses.

23          There are both textual and pragmatic reasons for this conclusion. First, the language of

24   Rule 8(a)(2) governing the pleading standards for claims substantially differs from the language of

25   Rules 8(b)(1)(A) and 8(c) governing defenses. Rule 8(a)(2) requires the pleader to "*show[]* that

26   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Rule 8(b)(1)(A), by

27   contrast, only requires that the responding party "state" its defenses. Rule 8(c) similarly requires

28   that the responding party only "affirmatively state" its defenses. *See Kohler v. Islands*

3

United States District Court
Northern District of California

1    *Restaurants, LP*, 280 F.R.D. 560, 566 (S.D. Cal. 2012) ("Factual plausibility—which is the key

2    difference between *Twombly* / *Iqbal* pleading and 'fair notice' pleading—is particularly suited to

3    claim pleading because Rule 8(a)(2) requires that the party 'show' that it is entitled to relief.");

4    *Dodson*, 2013 WL 5970410, at *2 ("In contrast [to Rule 8(a)(2)], Rule 8(c), which governs

5    affirmative defenses, requires only that the responding party 'affirmatively state' its defenses.").

6          Second, there are practical reasons that militate against extending *Twombly* and *Iqbal* to

7    affirmative defenses. Unlike plaintiffs who have substantial time to draft their complaint (limited

8    only by statutes of limitations), defendants typically have a far more compressed timeline (often

9    just 21 days) to respond. *See Kohler*, 280 F.R.D. at 566 ("[T]he Court is persuaded by the …

10   recognized distinction between the time plaintiff has to compose a complaint versus the time a

11   defendant has to answer it."). Further, unlike a plaintiff who can usually freely amend her

12   complaint if the Court finds that she fails to state a claim, a defendant is required to raise all

13   affirmative defenses in her answer or otherwise risk waiving them. *See Serby v. First Alert, Inc.*,

14   943 F. Supp. 2d 506, 516 (E.D.N.Y. 2013) ("[W]hile a defendant is deemed to admit the

15   allegations in a complaint if he or she does not respond, a plaintiff may largely ignore an answer

16   without formal legal consequence…. A defendant, by contrast, risks waiving affirmative defenses

17   that are omitted from its answer."). Finally, there is a "diminished concern that plaintiffs receive

18   notice in light of their ability to obtain more information during discovery." *Bayer CropScience

19   AG v. Dow AgroSciences LLC*, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011). While the

20   inclusion of frivolous claims in a complaint can substantially increase the time and expense of

21   discovery, the risk that a defendant will "unlock[] the doors of discovery" with additional defenses

22   is reduced because it is "unlikely that either side will pursue discovery on frivolous defenses." *Id.*

23         For these reasons, the Court concludes that the plausibility standard established in *Iqbal*

24   and *Twombly* does not apply to affirmative defenses. Because Yaqub's affirmative defenses 2–5,

25   7–9, and 13 are properly pleaded under *Wyshak*'s "fair notice" standard, the Court denies the

26   motion to strike those eight affirmative defenses.

27

28

4

United States District Court
Northern District of California

## II.      Defenses 1 and 11 Are Stricken in Part.

Kanaan further argues that affirmative defenses 1 (failure to state a claim), 6 (not a substantial factor), 11 (lack of standing), and 12 (punitive damages) should be stricken because they "simply embod[y] the contention that Plaintiff will be unable to prove the elements of the claims contained in the Complaint." Dkt. No. 57, at 4.

Courts are split on whether failure to state a claim can be raised as an affirmative defense. *Compare Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) ("Failure to state a claim is not a proper affirmative defenses but, rather, asserts a defect in [Plaintiff's] prima facie case."), *and LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 818 (N.D. Cal. 2019) ("The defense of failure to state a claim is, in essence, an argument that the plaintiff has not met its burden of alleging the elements of its claims."), *with Belvedere Partnership, Ltd. v. SSI Investment Management, Inc.*, 2010 WL 11508362, at *3 (C.D. Cal. May 12, 2010) (declining to strike an affirmative defense asserting failure to state a claim), *and Cintron Beverage Group, LLC v. Depersia*, 2008 WL 1776430, at *2 (E.D. Pa. Apr. 15, 2008) ("The Federal Rules specifically permit an averment of failure to state a claim to be raised as an affirmative defense" and "it is well-settled that a party can set forth the defense of failure to state a claim as an affirmative defense in the answer.").

The Court finds persuasive the reasoning of courts who allow failure to state a claim to be asserted as a defense in an answer. As then-District Judge Nguyen explained in *Belvedere*, "Rule 12(h)(2) allows a party to raise a defense for failure to state a claim in any pleading under Rule 7(a) and an answer is a pleading explicitly provided for in Rule 7(a)." 2010 WL 11508362, at *3. At the same time, it is clear that failure to state a claim is not an *affirmative* defense because it does no more than "demonstrate[] that plaintiff has not met its burden of proof." *Zivkovic*, 302 F.3d at 1088. The Court will therefore grant the motion to strike affirmative defense 1 in part, striking "affirmative" from Yaqub's characterization of the defense but denying the motion as to that defense in all other respects.

Kanaan similarly contends that lack of standing cannot be raised as an affirmative defense. He is again correct that lack of standing, like failure to state a claim, is not a true affirmative

1   defense. *See, e.g., J&J Sports Productions, Inc. v. Vizcarra*, 2011 WL 4501318, at \*2 (N.D. Cal.

2   Sept. 27, 2011) ("Because a plaintiff must plead and ultimately prove standing, lack of standing is

3   not an affirmative defense under federal law."); *Perez v. Gordon & Wong Law Group, P.C.*, 2012

4   WL 1029425, at \*11 (N.D. Cal. Mar. 26, 2012) (holding that lack of standing "is not an

5   affirmative defense but rather a denial of Plaintiff's allegations contained in the complaint

6   asserting the constitutional requirement of standing"); *Polo v. Schwiff*, 2013 WL 1797671, at \*3

7   (N.D. Cal. Apr. 29, 2013) ("[L]ack of standing is not a true affirmative defense, because [Plaintiff]

8   bears the burden of proof on that issue"); *G&G Closed Circuit Events, LLC v. Benjamin*, 2023 WL

9   2934930, at \*4 (N.D. Cal. Apr. 12, 2023) ("Because standing must be affirmatively proven by

10  plaintiffs, lack of standing is a negative defense...."). Rule 8(b)(1)'s requirement that a defendant

11  state its defenses to the plaintiff's claims, however, is not limited to affirmative defenses, and Rule

12  12(h) characterizes lack of subject matter jurisdiction (of which lack of standing is one form) as a

13  "legal defense" by including it under the heading "Waiving and Preserving Certain Defenses."

14  Fed. R. Civ. P. 12(h). Yaqub is thus entitled to assert lack of standing as a defense in his answer.

15  The Court will therefore grant the motion to strike affirmative defense 11 only in part, striking

16  "affirmative" from Yaqub's characterization of the defense but denying the motion as to that

17  defense in all other respects.

18          It bears noting that there is little practical significance to this Court's holding that

19  defendants like Yaqub can assert failure to state a claim or lack of standing as a defense in their

20  answer. Because standing is a jurisdictional issue, Yaqub could raise that argument at any time in

21  these proceedings even if his answer omitted defense 11. *Hernandez v. Dutch Goose, Inc.*, 2013

22  WL 5781476, at \*7 (N.D. Cal. Oct. 25, 2013). Likewise, Yaqub would be able to challenge

23  Kanaan's satisfaction of his burden to state a valid claim by motion or at trial whether or not his

24  answer included defense 1. In short, Yaqub was not required to include those defenses in his

25  answer to preserve them, while their inclusion in the answer will not impose any additional burden

26  on Kanaan.

27          Next, Kanaan argues that affirmative defense 6 (not a substantial factor) should be stricken

28  because it amounts to a basic denial of liability. But Yaqub's defense that his actions were not a

6

1   substantial factor in the alleged damages is an argument "regarding the lack of causation," which

2   is a valid affirmative defense. *ExeGi Pharma, LLC v. Brookfield Pharmaceuticals, LLC*, 2020 WL

3   13860694, at *3 (E.D. Wis. July 15, 2020). The Court thus denies the motion to strike defense 6.

4   Finally, Kanaan argues that affirmative defense 12 (punitive damages are inappropriate) is

5   improper. *See Classical Silk, Inc. v. Dolan Group, Inc.*, 2016 WL 7638112, at *2 (C.D. Cal. Mar.

6   21, 2016) ("[I]t is Plaintiff's burden to establish that an award of enhanced damages and/or

7   attorneys' fees is proper," so Defendant's affirmative defense acts "only to negate elements of

8   Plaintiff's prima facie case."). The Court disagrees. *Hill v. Herbert Roofing & Insulation, Inc.*,

9   2014 WL 234217, at *3 (E.D. Mich. Jan. 22, 2014) ("[Defendant's] affirmative defense that

10  punitive damages are unavailable is clearly material to the case."). Given a general policy against

11  striking relevant portions of pleadings, the Court denies the motion to strike defense 12.

12  In sum, the Court grants in part the motion to strike affirmative defenses 1 and 11, striking

13  only Yaqub's characterization of those defenses as "affirmative," but otherwise denies the motion

14  to strike affirmative defenses 1, 6, 11, and 12.

### III.    Affirmative Defense 10 Has Already Been Rejected by the Court.

16  Finally, Kanaan contends that affirmative defense 10 (failure to join a necessary party)

17  should be stricken because the defense was previously rejected by the Court in an order denying

18  Yaqub's motion to dismiss under Federal Rule of Civil Procedure 12(b)(7). Dkt. No. 54. Yaqub

19  argues in affirmative defense 10 that his and Kanaan's California LLC is an indispensable party to

20  this litigation, but the Court has already rejected this argument. *Id.* at 6–7 (finding the claims

21  against Yaqub to be direct and not derivative and that the LLC is therefore not an indispensable

22  party). The Court agrees with Kanaan and finds that affirmative defense 10 "must be stricken as

23  redundant." *See, e.g.*, *Knit With v. Knitting Fever, Inc.*, 2009 WL 973492, at *9 (E.D. Pa. Apr. 8,

24  2009) (striking an assumption of risk affirmative defense that had already been rejected by the

25  Court in a prior order).

### CONCLUSION

27  For the foregoing reasons, the Court denies Kanaan's motion to strike affirmative defenses

28  2–9 and 12–13, grants in part the motion to strike defenses 1 and 11, and strikes defense 10.

United States District Court
Northern District of California

7

**IT IS SO ORDERED.**

Dated: December 26, 2023

P. Casey Pitts
United States District Judge

8

# EXHIBIT "8"

ROBERT A. BELZER

WILLIAM J. MURRAY

OF COUNSEL
    BRUCE CORNELIUS
    MICHAEL MANDELL

LAW OFFICES OF
**BELZER & MURRAY LLP**
3650 MT. DIABLO BOULEVARD, SUITE 130
LAFAYETTE, CALIFORNIA 94549-3765
TELEPHONE (925) 284-9000

Kanaan 083

Writer's Direct Phone
(925) 284-9015

Writer's E-Mail:
Murray@wjmattorneys.com

June 1, 2018

Mr. Nabih Kanaan
236 Harvard Ln.
Bloomington, IL 60108

*By electronic mail only to:*
**Chicagobay@sbcglobal.net**

Re: *Inn at Del Monte Beach/1110 Del Monte*

Dear Mr. Kanaan:

    I have the pleasure of representing Dr. Yaqub, whom I understand has been a good friend of yours for many years.

    I am in the process of discussing with Dr. Yaqub his estate planning and in the course of doing so it became clear that there may be a disagreement as to the interest you own in the LLC that owns the hotel.

    I understand that you may initially have been the owner of a thirty percent (30%) interest in the LLC, although there does not appear to be any documentation as to any initial contribution into the LLC. I would ask that you please provide whatever records you may have in that regard.

    Then apparently in or about 2010, a request was made that you proportionately contribute toward expenses necessary to complete work required to finish and open the hotel, totaling approximately $750,000 (or $225,000 based on a 30% interest). You failed to do so, and Dr. Yaqub and Linda Seeley were forced to make that entire contribution themselves, which necessitated their personally borrowing funds at high interest rates. As a result of your failure to make any contribution, your interest was reduced to eight percent (8%). Ms. Seeley provided you notice of that change, to which you did not object.

    Subsequently there was apparently further agreement and/or action taken that reduced your interest in the LLC to zero, although frankly we have been unable to locate the underlying documentation of that agreement and/or event.

    If you disagree with any of the above, including that your interest was reduced to 8% in 2010 and/or subsequently reduced to zero, please let me know and provide whatever documentation you have to the contrary.

Kanaan 084

Currently the LLC is in need of approximately $385,000 to make renovations and upgrades to the facility. Your 8% share (if you still have a share) of that would be $30,800. (Note: if you still owned a 30% interest, that contribution would be $115,000 instead.)

Please advise whether you are willing to make that contribution.

If it is of interest to you, I may have an investor that would be willing to acquire your interest for the sum of $100,000 (possibly a bit more), *subject to his being able to work out an increased equity interest and additional terms with Dr. Yaqub.* If that would be of interest to you, please let us know.

Thank you.

Very truly yours,

William J. Murray

WJM:dla

Cc: Dr. Nizar Yaqub (electronic)

# EXHIBIT "9"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NABIH "NICK" KANAAN,                    )

               Plaintiff,        )

        -vs-                          ) No. 5:21-cv-09591-PCP

NIZAR YAQUB, and individual,)

            Defendant.        )

        The deposition of NABIH "NICK" KANAAN, called for examination pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Raelene Stamm, a Certified Shorthand Reporter licensed by the State of Illinois, at 401 North Michigan Avenue, Suite 1200, Chicago, Illinois, on the 18th day of March, 2025, at the hour of 10:00 a.m.

Reported by:  RAELENE STAMM, CSR

License No.:  084-004445

                                Page 1

1    credit card bills for Dr. Yaqub and Linda?

2        A.    Well, they didn't have income.  That's

3    from the company or from the loan.

4        Q.    So it was your understanding that they

5    were paying their credit card bills with either

6    loan money --

7        A.    That's what Linda told me.  You know, I

8    understanding -- that's her say, you know.

9        Q.    Correct.  And did Linda ever communicate

10   to you that the money that they were -- that she

11   and Dr. Yaqub were taking out of the company were

12   being considered distributions from the company?

13       A.    Can you repeat that question?

14       Q.    Sure.  Did Linda or -- did Linda ever tell

15   you that the money that was being taken out of the

16   company by her to pay the credit card bills would

17   be considered her distribution of her ownership in

18   the company or did she intend to pay it back?

19       MR. MURPHY:  Objection, leading.

20       THE WITNESS:  I don't know what her thinking

21   was.

22   BY MS. GORDON:

23       Q.    So did she ever explain to you whether the

24   money that they took out would be paid back by

25   them?

Page 89

1  A. No.

2  Q. Do you recall why Dr. Yaqub was not listed

3 as a guarantor on any of the loan agreements?

4  A. Which agreement?

5  Q. Pardon?

6  A. Which agreement?

7  Q. On the -- for example, on the loan

8 agreement for the construction loan, the 1.7 and

9 change?

10  A. Well, he didn't have enough good

11 reputation to be -- to borrow money.

12  Q. When you say good reputation, you mean

13 that he did not have good credit?

14  A. Good credit, yes.

15  Q. To your knowledge, has Dr. Yaqub ever

16 filed for bankruptcy?

17  A. Yes.

18  Q. When you spoke with Linda about her having

19 the 70 percent ownership in the Inn LLC, did you

20 understand that she was doing that to protect

21 Dr. Yaqub's assets?

22  A. Well, it's not only the corporation,

23 whatever belong to Dr. Yaqub, even the house was in

24 her name.

25  Q. It was in Linda's name only?

Page 90

1    A.   Yes.

2    Q.   And is it your understanding that they

3    structured the ownership that way due to his

4    financial liabilities?

5    A.   I believe so.

6    MS. GORDON:  I don't have anymore questions.

7    MR. MURPHY:  Just one or two.

8                   FURTHER EXAMINATION

9    BY MR. MURPHY:

10    Q.   So, Mr. Kanaan, during counsel's questions

11    you said that Linda told you they were using

12    company money to pay credit card bills, right?

13    A.   Linda told me.  She said she paying the

14    credit card bills.  I mean, it's her credit cards.

15    I mean, whatever she buy on it for the company, she

16    pay for the company's money.

17    Q.   Okay.  So they were per credit cards,

18    correct?

19    A.   Her credit cards.

20    Q.   Okay.  And she was using company money to

21    pay the credits card bills?

22    A.   Whatever she bought for the company.

23    Q.   Okay.  And how do you know that those

24    bills didn't include personal expenses or was she

25    using the company money to pay personal expenses

                                        Page 91

1  too?

2      A.    Actually, I didn't see the statement, what

3  include, what doesn't include.

4      Q.    So do you know whether she was using

5  company money to pay personal expenses on her

6  credit card?

7      A.    She told me that.

8      Q.    That she was?

9      A.    Yes.

10     Q.    Okay.  And so obviously she would have had

11  to tell you that before she died in 2011?

12     A.    I believe so.

13     MR. MURPHY:  Okay.  Nothing further.

14     MS. GORDON:  Okay.

15     VIDEOGRAPHER:  We are off the record at

16  12:21 p.m., and this concludes today's continuation

17  and the deposition of Nabih Nick Kanaan.  The total

18  number of media units used was two today and will

19  be retained by Veritext.  Thanks, everyone.

20     MS. GORDON:  Thank you.

21     MR. MURPHY:  Thank you.

22              FURTHER DEPONENT SAITH NAUGHT.

23                  (WHEREUPON, the deposition

24                  concluded at 12:21 p.m.)

25

Page 92

1              IN THE UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3    NABIH "NICK" KANAAN,          )

4                    Plaintiff,    )

5            vs.                   )  No. 5:21-cv-09591-PCP

6    NIZAR YAQUB, an individual,)

7                    Defendant.    )

8

9              This is to certify that I have read the

10   transcript of my deposition taken in the

11   above-entitled cause by Raelene Stamm, Certified

12   Shorthand Reporter, on March 18, 2025, and that the

13   foregoing transcript accurately states the

14   questions asked and the answers given by me as they

15   now appear.

16              Please check one:

17              _____  I have submitted errata sheet(s)

18              _____  No corrections were noted

19        _____

20              NABIH "NICK" KANAAN

21   SUBSCRIBED AND SWORN TO

22   before me this _____ day

23   of _____, 2025.

24   _____

25      Notary Public

                                        Page 93

```
 1    STATE OF ILLINOIS  )
 2                       )  SS:
 3    COUNTY OF C O O K  )
 4
 5         I, RAELENE STAMM, Certified Shorthand
 6    Reporter, licensed by the State of Illinois, do
 7    hereby certify that heretofore, to-wit, on the
 8    18th day of March, 2025, personally appeared before
 9    me NABIH "NICK" KANAAN, a witness in a certain
10    cause now pending and undetermined in the United
11    States District Court, Northern District of
12    California, Eastern Division, wherein NABIH "NICK"
13    KANAAN is the Plaintiff and NIZAR YAQUB, an
14    individual, is the Defendant.
15         I further certify that the said
16    NABIH "NICK" KANAAN was by me first duly sworn to
17    testify the truth, the whole truth, and nothing but
18    the truth in the cause aforesaid; that the
19    testimony then given by said witness was reported
20    stenographically by me in the presence of said
21    witness and afterwards reduced to typewriting by
22    Computer-Aided Transcription, and the foregoing is
23    a true and correct transcript of the testimony so
24    given by said witness as aforesaid.
25         I further certify that the signature to
```

Page 94

1  the foregoing deposition was not waived by counsel

2  for the respective parties.

3          I further certify that the taking of this

4  deposition was pursuant to Notice and that there

5  were present at the deposition the attorneys

6  hereinbefore mentioned.

7          I further certify that I am not counsel

8  for nor in any way related to the parties to this

9  suit, nor am I in any way interested in the outcome

10 thereof.

11         IN TESTIMONY WHEREOF:  I have hereunto set

12 my hand this 11th day of April, 2025.

13

14

15

16

       CERTIFIED SHORTHAND REPORTER

17

18

19

20

21

22

23

24

25

Page 95

## CERTIFICATE OF SERVICE

I am employed in the County of Riverside, State of California. I am over the age of 18 years and not a party to the within action; my business address is that of SLOVAK BARON EMPEY MURPHY & PINKNEY LLP, 74774 Highway 111, Indian Wells, California 92210.

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California by using the CM/ECF system and served the foregoing document described as **DECLARATION OF SHAUN M. MURPHY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** on all interested parties in this action by placing [] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

[]      **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at INDIAN WELLS, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]      **(BY ELECTRONIC MAIL)** I am personally and readily familiar with the business practice of the firm for the preparation and processing of documents by electronic transmission using the CM/ECF system. I prepared said document(s) in PDF and then caused such document(s) to be served by electronic mail at yeakel@sbemp.com to the above addressee.

[X]      **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 22, 2025, at Indian Wells, California.



_____
Dianne Yeakel

**DECLARATION OF SHAUN M. MURPHY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Slovak Baron Empey Murphy & Pinkney LLP
74774 Highway 111
Indian Wells, CA 92210

1

*UNITED STATE DISTRICT COURT; NORTHERN DISTRICT*
*CASE NO. 5:21-cv-09591 PCP*

2

3

4    Jennifer L. Gordon, Esq. (pro hac vice)          *Attorney for Plaintiff*
     jgordon@loriumlaw.com                            *Nabih "Nick" Kanaan*

5    LORIUM LAW
     401 N. Michigan Avenue, Suite 1200

6    Chicago, IL 60611
     Telephone: (312) 564-5757

7    Facsimile: (312) 564-5758

8

9    Steven Alan Heath, Esq.                          *Attorney for Plaintiff*
     saheath@heathsteinbeck.com                       *Nabih "Nick" Kanaan*

10   HEATH STEINBECK, LLP

11   407 N. Maple Drive
     Ground Floor

12   Beverly Hills, CA 90210
     Telephone: (213) 335-6245

13   Facsimile: (213) 335-6246

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Slovak Baron Empey Murphy & Pinkney LLP
74774 Highway 111
Indian Wells, CA 92210

5