Steven A. Heath (SBN 250867)
saheath@heathsteinbeck.com
HEATH STEINBECK, LLP
407 N. Maple Drive, Ground Floor
Beverly Hills, California 90210
Telephone: (213) 335-6245

Jennifer L. Gordon (admitted *pro hac vice*)
jgordon@woodphillips.com
WOOD, PHILLIPS, KATZ, CLARK & MORTIMER
500 West Madison Street, Suite 1130
Chicago, Illinois 60661-2562
Telephone: (312) 876-1800

Attorneys for Plaintiff and Counter-Defendant
NABIH "NICK" KANAAN

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| NABIH "NICK" KANAAN,<br><br>Plaintiff,<br><br>v.<br><br>NIZAR YAQUB, an individual,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No. 5:21-cv-09591-PCP<br><br>**PLAINTIFF NABIH KANAAN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: Thursday, December 17, 2026<br>Time: 10:00 a.m.<br>Ctrm: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Action Filed: December 10, 2021<br>Trial Date: None set |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT NIZAR YAQUB AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, December 17, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8, 4th Floor, of the Robert F. Peckham Federal Building and United States Courthouse, 280 South First Street, San Jose, California 95113, before the Honorable P. Casey Pitts, Plaintiff and Counter-Defendant Nabih "Nick" Kanaan will and hereby does move under Federal Rule of Civil Procedure 56 for summary judgment or, in the alternative, partial summary judgment, as follows:

1. **Count V (Declaratory and Injunctive Relief).** A declaration that (a) Kanaan holds a thirty percent (30%) Membership Interest in The Inn at Del Monte Beach, LLC (the "LLC") under its Operating Agreement dated November 1, 2007; (b) that interest has not been reduced, redeemed, or otherwise diminished; and (c) the "Minutes to Memorialize Prior Action Taken" dated November 15, 2018 and the "First Amended Operating Agreement" signed by Yaqub on December 1, 2018 are void and of no effect as to Kanaan's Membership Interest; together with further relief under 28 U.S.C. § 2202 directing Yaqub, as Manager, to conform the LLC's records to that declaration and not to act on the void instruments.

2. **Count II (Breach of Contract).** Judgment as to liability, with the amount of damages reserved for trial.

3. **Count III (Breach of the Implied Covenant of Good Faith and Fair Dealing).** In the alternative to Count II, judgment as to liability, with damages reserved for trial.

4. **Yaqub's Counterclaim for Declaratory Relief (Dkt. No. 55).** Judgment for Kanaan, because the counterclaim seeks the converse of the declaration requested on Count V.

5. **Affirmative Defenses.** Judgment for Kanaan on Yaqub's Seventh (estoppel), Eighth (statute of limitations), and Ninth (laches) affirmative defenses as asserted against Counts II, III, and V.

6. **Alternatively, Rule 56(g).** An order stating that the material facts identified in Section V.E of the accompanying memorandum are not genuinely in dispute and are established in the case.

Kanaan does not seek summary judgment on Count IV (Cal. Bus. & Prof. Code § 17200) by this motion.

The motion is made on the grounds that there is no genuine dispute of material fact and Kanaan is entitled to judgment as a matter of law. It is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Nabih Kanaan and Jennifer L. Gordon and the exhibits thereto, the Separate Statement of Undisputed Material Facts served under

the Court's Standing Order for Summary Judgment Motions, the pleadings and records on file, and such argument as the Court may permit.

Dated October 30, 2026.

**WOOD, PHILLIPS, KATZ, CLARK & MORTIMER HEATH STEINBECK, LLP**

By: /s/ Jennifer L. Gordon
Jennifer L. Gordon (*pro hac vice*)
Steven A. Heath
Attorneys for Plaintiff and Counter-Defendant
Nabih "Nick" Kanaan

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....1
II. STATEMENT OF ISSUES TO BE DECIDED (Civ. L.R. 7-4(a)(3)) ....2
III. STATEMENT OF UNDISPUTED FACTS ....2
A. The Operating Agreement fixes Kanaan's 30% interest and states how it may be changed. ....2
B. Yaqub succeeds to Seeley's interest and becomes Manager. ....3
C. No writing, notice, meeting, or record ever reduced Kanaan's interest. ....3
D. In 2018, after the ABC demands Kanaan's signature, Yaqub documents the reduction on his own. ....5
E. The LLC's business. ....7
IV. LEGAL STANDARD ....7
V. ARGUMENT ....7
A. Kanaan Holds a 30% Membership Interest as a Matter of Law (Count V and the Counterclaim). ....7
1. The Agreement fixes Kanaan's interest at 30% and allows it to be changed only by a unanimous, signed writing. ....7
2. The Agreement does not allow a Member's interest to be diluted because he declined to contribute. ....8
3. The 2018 Minutes and First Amended Operating Agreement are void. ....9
4. Yaqub's account of an unwritten 2009 understanding does not create a genuine dispute. ....10
B. Yaqub Breached the Operating Agreement (Count II). ....12
C. Alternatively, Yaqub Breached the Implied Covenant (Count III). ....14
D. Yaqub's Remaining Equitable Defenses Fail. ....14

E. The Court Should Enter Declaratory Judgment and Further Relief, or Alternatively Establish the Undisputed Facts. ......................................................15

VI. CONCLUSION ..........................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ... 7, 11

*Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013) ... 13

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992) ... 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ... 7

*City of Ukiah v. Fones*, 64 Cal. 2d 104 (1966) ... 11, 12

*D.L. Godbey & Sons Constr. Co. v. Deane*, 39 Cal. 2d 429 (1952) ... 11

*Driscoll v. City of Los Angeles*, 67 Cal. 2d 297 (1967) ... 11

*Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1 (2003) ... 13

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) ... 14

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217 (9th Cir. 2005) ... 1

*Johnson v. City of Loma Linda*, 24 Cal. 4th 61 (2000) ... 14

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011) ... 12

*Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861 (1965) ... 7

*S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) ... 7

*Styne v. Stevens*, 26 Cal. 4th 42 (2001) ... 14

**Statutes**

28 U.S.C. § 2201 ... 15

28 U.S.C. § 2202 ... 15

Cal. Civ. Code §§ 1636, 1638, 1639, 1641 ... 8

Cal. Civ. Code § 1698 ... 2, 10, 11

Cal. Civ. Proc. Code § 337 ... 13

Cal. Civ. Proc. Code § 1858 ... 8

Cal. Corp. Code § 17701.10 ... 8, 10

Cal. Corp. Code § 17701.11 ... 8, 12

Cal. Evid. Code § 500 ........................................ 8

**Rules**

Fed. R. Civ. P. 30(e) ........................................ 1

Fed. R. Civ. P. 56 ........................................ 7, 13, 15, 16

Fed. R. Civ. P. 57 ........................................ 15

**Other Authorities**

Judicial Council of California Civil Jury Instructions (CACI) No. 313 ........................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In 2007, Nabih Kanaan and Linda Seeley signed an Operating Agreement for The Inn at Del Monte Beach, LLC. It gave Kanaan a 30% Membership Interest. It also told the Members what it would take to change that number: an amendment approved unanimously and made "in writing and signed by all of the Members." OA §§ 3.10.1.3, 12.9.[1] It provided that "[n]o Member shall be required to make any additional contributions to the capital of the Company." OA § 2.1. Nowhere did it say that a Member who declined to contribute more would lose part of his interest.

Defendant Nizar Yaqub, Seeley's widower and successor, now says Kanaan owns 8%, or nothing. His own testimony shows how that claim came to be. Kanaan never signed anything. No one ever sent him a written request for capital or notice of a meeting. Yaqub has no record of the Members' interests. In 2018, the Department of Alcoholic Beverage Control ("ABC") would not accept Yaqub's claim that Kanaan held only 8% without Kanaan's signature. Yaqub's lawyer then drafted, and Yaqub alone signed, "Minutes to Memorialize Prior Action Taken" assigning Kanaan 8%. Two weeks later Yaqub signed a "First Amended Operating Agreement" naming himself the "sole remaining member." He backdated it seven years. Asked why, Yaqub said that "the attorney advised me that the only way to get the liquor license is to get him out of the picture. And that's what I did." Dep. 59:13–20.

One Member cannot amend the Agreement to take away another Member's interest. Each of these questions is one of contract interpretation, and the material facts are undisputed. Nearly all

[1] "Ex." refers to the exhibits to the concurrently filed Declaration of Jennifer L. Gordon. "OA" is the Operating Agreement (Ex. 1). "Dep." is the April 17, 2025 deposition of Nizar Yaqub (Ex. 2), cited by page and line. Yaqub later served an errata sheet, dated May 19, 2025 and sent to the court reporter on August 5, 2025, that states no reasons and rewrites several answers. Ex. 12. None of the changes alters the testimony on which this motion relies. Rule 30(e) requires a statement of reasons and permits "corrective, and not contradictory, changes," so a substantive rewrite of sworn answers cannot create a genuine dispute. *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224–26 (9th Cir. 2005). "Rog Resp." is Yaqub's verified Supplemental Response to Plaintiff's Interrogatories, Set One (Ex. 9). Exhibits 13 through 16 are excerpts of the records that Pinnacle Bank, the LLC's lender, produced under its custodian's declaration in response to Yaqub's subpoena (Ex. 13), cited by the exhibit page number stamped on each page. "Kanaan Decl." is the Declaration of Nabih Kanaan. Each fact is also set out, with citations, in the Separate Statement served with this motion.

of them come from Yaqub's own sworn testimony. Even accepting Yaqub's account of an unwritten 2009 "handshake," the Agreement does not allow what he says happened, and California law does not let an unrecorded understanding override an operating agreement that requires signed, written amendments. The Court should declare that Kanaan holds 30%, enter judgment for Kanaan on liability, and leave only the amount of damages for trial.

## II. STATEMENT OF ISSUES TO BE DECIDED (Civ. L.R. 7-4(a)(3))

1. Whether, under the Operating Agreement, Kanaan holds a 30% Membership Interest, and whether the November 15, 2018 Minutes and the First Amended Operating Agreement, each signed by Yaqub alone, are void.

2. Whether Yaqub's account of an unwritten 2009 understanding creates a genuine dispute of material fact, given OA §§ 2.1, 3.10.1.3, and 12.9 and California Civil Code § 1698.

3. Whether Yaqub is liable for breach of the Operating Agreement (and, alternatively, of the implied covenant), with damages reserved for trial.

4. Whether Yaqub's estoppel, statute-of-limitations, and laches defenses fail for lack of evidence.

## III. STATEMENT OF UNDISPUTED FACTS

### A. The Operating Agreement fixes Kanaan's 30% interest and states how it may be changed.

Effective November 1, 2007, Seeley and Kanaan executed the Operating Agreement. Ex. 1, OA at 27 (signature page); Kanaan Decl. ¶¶ 2–3. Its Exhibit A lists Seeley's "Initial Membership Interest" as 70% and Kanaan's as 30%. Ex. 1, OA Ex. A; *see also* Ex. 14 at 2 (lender's copy). Yaqub was not a member and played no part in forming the LLC. Dep. 17:9–14; Kanaan Decl. ¶ 4. Yaqub admits that Kanaan held an initial 30% interest. Dkt. No. 55 ("Answer") ¶ 1.

The Agreement sets out the following terms. First, it addresses capital: "No Member shall be required to make any additional contributions to the capital of the Company. Additional contributions to the capital of the Company shall be made only with a two-thirds (2/3) vote of the Members." OA § 2.1. Each Member has a Capital Account (§ 2.2). Distributions go "first to the

Members in proportion to their unreturned capital contributions until each Member has recovered his or her capital contributions, and then to the Members in proportion to their Membership Interests" (§ 5.5). Net profit is allocated "in proportion to their Membership Interest" (§ 5.2.2). Second, it addresses amendment. "Any amendment of the Articles or this Agreement" requires "the unanimous vote, approval or consent of all Members" (§ 3.10.1.3), and "[a]ll amendments to this Agreement will be in writing and signed by all of the Members" (§ 12.9). Members' meetings require written notice stating the business to be conducted (§§ 3.11.3–3.11.4). Action by written consent requires signed consents, and notice of any non-unanimous amendment must be given at least ten days in advance (§ 3.11.5). Third, the Agreement provides only limited ways to end a Member's interest: expulsion by a 75% vote for a fiduciary breach that materially damaged the company (§ 3.5), withdrawal (§§ 3.3, 7.2), and transfer under Article 6. It contains no provision that reduces a Member's interest for failing to contribute capital. *See generally* Ex. 1. Finally, the Agreement is "the complete and exclusive statement of agreement among the Members" (§ 12.2), binds successors and assigns (§ 12.3), requires each new Member to "comply with all the terms" (§ 3.2), and requires the company to keep a list of each Member's Membership Interest (§ 8.1.1).

**B. Yaqub succeeds to Seeley's interest and becomes Manager.**

Seeley's "Option Notice" transferred "all of her economic interests" and "her rights of membership interest" to Yaqub "[i]n accordance with the Limited Liability Company's Operating Agreement," citing Article 6. Ex. 3. Yaqub admits that Seeley transferred "all her ownership interest in the LLC" to him and that he is "the managing member of and holder of a majority interest in the LLC." Answer ¶¶ 5, 20. Seeley died in July 2011, and Yaqub has managed the LLC since then. Dep. 12:7–17. Kanaan did not object to the transfer and agreed that Yaqub would serve as manager. Kanaan Decl. ¶ 5. Yaqub testified that he first saw the Operating Agreement in 2018 and that he used "[n]o documents" in managing the LLC from 2011 to 2018. Dep. 14:9–15:2.

**C. No writing, notice, meeting, or record ever reduced Kanaan's interest.**

Yaqub's position is that in two 2009 meetings, Seeley asked Kanaan to contribute, Kanaan declined, Seeley showed him "some calculation" that his interest would fall to 8%, and Kanaan said, in substance, "so be it." Dep. 28:4–30:2; 32:3–7. Kanaan denies that any such agreement was

made. Kanaan Decl. ¶ 8. This motion does not ask the Court to decide that disagreement, because Yaqub's own testimony about what followed is dispositive. The "calculation" was "probably on a napkin." Dep. 30:9–11. Yaqub is "not aware that either Mr. Kanaan or Linda have ever signed anything"; "it was oral agreements, handshake." *Id.* 30:12–20. No steps were taken to memorialize the arrangement: "It's just — just a meeting and shake hand." *Id.* 109:7–11. Yaqub knows of no document reflecting a vote to approve additional contributions. *Id.* 30:21–31:1. No written capital call or written notice of a meeting was ever sent to Kanaan, and no minutes of any meeting exist. *Id.* 31:10–24; 35:23–36:8; 41:25–42:8; 103:24–104:18; Rog Resp. No. 7; Kanaan Decl. ¶¶ 6–7. Before June 1, 2018, no written notice told Kanaan that his interest had been reduced. Dep. 42:9–13. Yaqub has no ledger or other record of the Members' interests. *Id.* 63:17–20. Yaqub has no records of the funds Seeley supposedly contributed and does not know which bank they came from. *Id.* 90:16–25. He was not a member when the 2009 meetings took place. *Id.* 89:25–90:2. Since Yaqub signed the 2018 instruments described below, Kanaan has received no payment of any kind from the LLC. Kanaan Decl. ¶ 13.[2]

The LLC's lender, Pinnacle Bank, recorded the same ownership. Its loan file contains the Operating Agreement's Exhibit A, signed by Seeley and Kanaan and faxed in December 2007, listing Seeley at 70% and Kanaan at 30%. Ex. 14 at 1–3. When the LLC took its construction loan from Pinnacle Bank in July 2008, Kanaan signed a continuing personal guaranty that "will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied." *Id.* at 4–7. The bank's December 2009 note and May 2010 loan documents state that the loan "continues to be supported by the Commercial Guaranties of Linda Seeley and Nick Kanaan dated July 14, 2008," and list both as guarantors. *Id.* at 9–10, 13. In December 2016, the bank addressed a loan notice to the LLC, "Attn: Linda Seeley and Nick Kanaan." *Id.* at 15. In August 2020, in a modification Yaqub signed as Managing Member, the bank added Yaqub as a guarantor and stated its intention "to

---

Yaqub has also testified that he "told [Kanaan] all the time" that his share was 8% and that Kanaan "understood" it (Dep. 42:14–43:7; 99:7–100:16). Kanaan disputes that, but the dispute is immaterial for the reasons in Section V.A.4.c. Yaqub could identify no text, email, or other writing in which Kanaan acknowledged an 8% interest. Dep. 101:16–24. And for 2015 through 2025, the LLC filed its federal returns as a corporation on Form 1120, which does not generate Schedules K-1 for its owners. Exs. 10, 16.

retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing." *Id.* at 16–19. Nothing in the bank's production releases Kanaan from his guaranty. *See* Ex. 13 at 6; Kanaan Decl. ¶ 15.

**D. In 2018, after the ABC demands Kanaan's signature, Yaqub documents the reduction on his own.**

In 2017, Yaqub applied for a new liquor license and told the ABC that he owned 92% and Kanaan 8%. Answer ¶ 25; Dep. 23:22–24:7. The ABC's records listed Seeley at 70% and Kanaan at 30%, and the ABC asked for documentation of the change. *Id.* ¶ 27. Yaqub testified that a member holding more than 20% had to sign the application, that Kanaan refused unless his 30% was recognized, and that the ABC would not accept the claimed reduction without Kanaan's signature. Dep. 51:14–52:3; 52:20–53:6. On or about May 31, 2018, Kanaan texted Yaqub: "any way it's 70/30." Ex. 8; Dep. 72:23–73:2; 76:12–25.

On June 1, 2018, Yaqub's counsel wrote to Kanaan that his interest had been reduced to 8% after a request "in or about 2010." The letter went on: "Subsequently there was apparently further agreement and/or action taken that reduced your interest in the LLC to zero, although frankly we have been unable to locate the underlying documentation of that agreement and/or event." Ex. 5. It requested a contribution toward renovations based on "[y]our 8% share (if you still have a share)." *Id.*[3] Yaqub has never seen the "notice" of reduction that the letter says Seeley sent. Dep. 46:11–24.

On November 15, 2018, Yaqub signed the "Minutes to Memorialize Prior Action Taken." His attorney drafted them. Ex. 4; Dep. 36:20–38:1. The Minutes recite capital requests in April 2008 and October 2009 and state that "effective January 2011 the membership interests of the LLC

[3]The June 1, 2018 letter dated the request "in or about 2010" and said it totaled about $750,000 funded by borrowing "at high interest rates." Ex. 5. The Minutes describe two requests, in April 2008 and October 2009, for $700,000 and $300,000. Ex. 4. Yaqub testified that the requests were made at two meetings in September and October 2009 and funded from savings the couple had set aside for retirement. Dep. 28:4–29:17; 35:12–17; 40:16–41:24; 90:16–91:5. And on July 17, 2009, fifteen months after the April 2008 request described in the Minutes, Yaqub himself faxed a prospective lender a summary stating that the LLC's "Partners are Linda Seeley, 70%, Nick Kanaan, 30%." Ex. 11.

are revised" to "Linda Seeley [Nizar 'Nick' Yaqub]" 92% and Kanaan 8%. Ex. 4. Kanaan received no notice, did not sign, and did not consent. Kanaan Decl. ¶¶ 7, 9–10.

On December 1, 2018, Yaqub signed a "First Amended Operating Agreement." By its terms it was "entered into as of" December 1, 2011, by Yaqub as "the sole remaining member" after "the redemption of the membership interest of Nick Kanaan." Ex. 6 at YAQUB 0006; Dep. 50:10–21; Rog Resp. No. 11. It allocates "[a]ll profits and losses" and "[a]ll distributions" to Yaqub. Ex. 6 §§ 4.1–4.2. Only Yaqub signed it. *Id.* at YAQUB 0011. A copy bearing the same signature and the handwritten date "12/1/2018" is in the LLC's lender's file. Ex. 15 at 1–6. Yaqub does not know when or how Kanaan's interest was reduced to zero, gave his lawyer no documents about any "redemption," and never notified Kanaan of one. Dep. 48:25–49:7; 80:6–20; 106:4–18. Asked why the document was backdated, Yaqub pointed to his lawyer's advice that the position to take was that Kanaan "owns nothing" because "that's the only way to save the company." *Id.* 45:7–20; 50:22–51:5; 89:8–13.[4] Four days later, on December 5, 2018, Yaqub signed a letter to the ABC stating that Kanaan "holds the remaining 8% interest." Ex. 7 at 8; Dep. 56:1–13; 60:17–25. In this case, Yaqub's counterclaim asks the Court to declare that Kanaan holds 8%. Dkt. No. 55, Countercl. ¶¶ 1–3 & Prayer ¶ 2.

The LLC's federal tax returns report yet other figures. The LLC files as a corporation on Form 1120. Exs. 10, 16. Its returns for 2015 through 2018, copies of which are in the lender's file, list Yaqub as owning 92.00 percent of its common stock, and the 2016 Schedule G says the same. Ex. 16 at 2, 4–5, 7, 9. Beginning with the 2019 return, Form 1125-E lists him as owning 100 percent; the 2019 Schedule G agrees. *Id.* at 11–12. Each return for 2020 through 2024, which Yaqub produced, lists him as the LLC's only officer and as owning "100.0" percent of its common stock. Ex. 10 at YAQUB 0725, 0738, 0754, 0771, 0791 (Forms 1125-E). The 2021 and 2023 returns also report that he owns 92.00 percent. *Id.* at YAQUB 0737, 0770 (Schedules G). The returns report one shareholder for 2020, 2023, 2024, and 2025 and two for 2021 and 2022. *Id.* at YAQUB 0722, 0734,

[4] The First Amended Operating Agreement also defines its "Articles of Organization" as those "filed with the California Secretary of State on April 11, 2016," a date that could not have appeared in a document actually executed in 2011. Ex. 6 at YAQUB 0010.

0750, 0766, 0787, YAQUB-0838 (Schedule K, line 10). On October 13, 2026, while this case was pending, Yaqub signed the LLC's 2025 return as "President" under penalty of perjury. *Id.* at YAQUB-0833. That return reports a single shareholder. *Id.* at YAQUB-0838. Yaqub gave the LLC's lender the 100% figure as well. On June 15, 2020, he signed a personal financial statement listing his interest in the "Hotel" as 100% owned, and on August 23, 2020, he certified to the bank, as the LLC's Managing Member, that he owned 100% of its equity interests. Ex. 15 at 7–8, 10. None of these documents reports Kanaan as holding 30%.

**E. The LLC's business.**

In verified interrogatory answers, Yaqub valued the LLC's building and land at $1,759,080, had gross revenues of $750,520 to $1,256,405 a year from 2017 through 2023, and reported positive net taxable income in each year from 2018 through 2023. Rog Resp. Nos. 6, 8.

## IV. LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move on a claim or "part of each claim." *Id.* A plaintiff moving on his own claim must establish "beyond controversy every essential element" of it. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). The burden then shifts to the opposing party to identify specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). On an affirmative defense, which the defendant must prove at trial, the movant need only point to the absence of evidence supporting it. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). The interpretation of a written contract is a question of law unless it turns on the credibility of conflicting extrinsic evidence. *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965). Where the Court does not grant all the relief requested, it may enter an order stating any material fact that is not genuinely in dispute and treating it as established. Fed. R. Civ. P. 56(g).

## V. ARGUMENT

### A. Kanaan Holds a 30% Membership Interest as a Matter of Law (Count V and the Counterclaim).

#### 1. The Agreement fixes Kanaan's interest at 30% and allows it to be changed only by a unanimous, signed writing.

An operating agreement is a contract among the members, and it governs "[r]elations among the members" and "[t]he means and conditions for amending the operating agreement." Cal. Corp. Code § 17701.10(a)(1), (4). A person who becomes a member "is deemed to assent to the operating agreement." *Id.* § 17701.11(b). Yaqub took Seeley's interest under the Agreement's transfer provisions, and he claims a 92% interest under it. Ex. 3; Answer ¶¶ 5, 20; *see* OA §§ 3.2, 12.3. He is bound by its terms. Those terms are interpreted according to their plain meaning, with the contract read as a whole, Cal. Civ. Code §§ 1636, 1638, 1639, 1641, and a court may not "insert what has been omitted," Cal. Civ. Proc. Code § 1858.

The Agreement fixes each Member's "Percentage Interest" by reference to Exhibit A, which lists Kanaan at 30%. OA § 3.10.2 & Ex. A. Changing that figure means amending the Agreement. Any amendment requires the unanimous approval of all Members (§ 3.10.1.3) and a writing "signed by all of the Members" (§ 12.9). It is undisputed that Kanaan never signed such a writing. Dep. 30:12–20; 109:7–11; Kanaan Decl. ¶ 9. That ends the inquiry unless Yaqub can show that the Agreement was validly modified some other way. As the party asserting the modification, he bears the burden of proving it. *See* CACI No. 313 (party claiming modification "must prove that the parties agreed to the modification"); Cal. Evid. Code § 500.

#### 2. The Agreement does not allow a Member's interest to be diluted because he declined to contribute.

Yaqub's theory rests on a premise the Agreement rejects, namely that Kanaan's failure to answer a capital request cost him most of his interest. Section 2.1 says that no Member "shall be required" to contribute more. Declining to contribute was therefore not a default. The Agreement contains no dilution, forfeiture, or recapitalization clause, and the Court may not write one in. Cal. Civ. Proc. Code § 1858. When the parties wanted a Member's interest to end, they said so and set

out how: expulsion by a 75% vote for a fiduciary breach that caused material damage (§ 3.5), withdrawal (§§ 3.3, 7.2), or transfer (Art. 6). Failing to make a voluntary contribution is not on that list.

The Agreement also says what follows when one Member puts in more capital than another. The contributor's Capital Account increases (§ 2.2), and that capital is returned first, before any distribution "in proportion to [the Members'] Membership Interests" (§ 5.5; *see also* § 9.3). Unequal contributions affect the order of distributions. They do not reset Membership Interests. So even if Seeley's 2009 advances were authorized capital contributions, the Agreement would not convert them into 22 additional percentage points.[5]

### 3. The 2018 Minutes and First Amended Operating Agreement are void.

The **Minutes** do not record any meeting. None was noticed or held. Dep. 31:10–24; 103:24–104:18. They are not a written consent of the Members, because Kanaan did not sign them, and an amendment requires every Member's approval. OA §§ 3.10.1.3, 3.11.5, 12.9; Kanaan Decl. ¶ 10. They are a statement signed by Yaqub alone nine years after the events they purport to "memorialize," drafted after the ABC refused to accept his claim without Kanaan's signature. Dep. 36:20–38:1; 52:20–53:6. A document that purports to "revise[]" the Members' interests is an amendment, and one Member cannot make it on his own. It has no effect on Kanaan's interest.

The **First Amended Operating Agreement** fails for the same reasons and for others. It purports to replace the entire Agreement, which requires unanimous, written, and signed approval. OA §§ 3.10.1.3, 12.9. Kanaan was given no notice, let alone the ten days' notice required for a non-unanimous amendment. OA § 3.11.5; Kanaan Decl. ¶ 10. It rests on a "redemption" that no one can identify. Yaqub does not know when or how it happened, and his counsel could not "locate the underlying documentation." Dep. 48:25–49:7; 80:6–20; Ex. 5. Yaqub's own statements contradict it. Four days after signing it, he told the ABC that Kanaan still held 8%. Ex. 7 at 8; Dep. 60:17–25.

[5] The answer to the hypothetical question of what *would* follow if Seeley's funds were authorized capital is supplied by the Agreement itself: they would be credited to her Capital Account and returned to her first. OA §§ 2.2, 5.5, 9.3. Whether her advances qualify, and in what amount, bears at most on damages. Kanaan does not concede either point, and the Court need not decide either one to grant this motion.

His counterclaim seeks a declaration that Kanaan holds 8%. Dkt. No. 55, Countercl. ¶ 2. Those factual assertions in his pleading are judicial admissions that bind him. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). The instrument was signed in 2018 and backdated to 2011. Dep. 50:10–51:5. It reflects no event in 2011. It is void.

Both instruments are also ineffective under the governing statute. Both were signed after January 1, 2014, when the Revised Uniform Limited Liability Company Act took effect. Under that Act, the operating agreement governs "[t]he means and conditions for amending" it. Cal. Corp. Code § 17701.10(a)(4). An instrument that does not meet those conditions does not amend the Agreement.

**4. Yaqub's account of an unwritten 2009 understanding does not create a genuine dispute.**

Yaqub's defense depends on his testimony about two 2009 meetings. Accepting that testimony as true, as the Court must for this motion, it does not establish a valid modification.

**a. Section 1698 does not save an unwritten modification here.** A written contract may be modified by another writing, Cal. Civ. Code § 1698(a). It may be modified orally only in two situations. The first is an oral agreement "supported by new consideration," but that route is closed where "the contract otherwise expressly provides." *Id.* § 1698(c). This contract does: amendments must be "in writing and signed by all of the Members." OA § 12.9. The second is "to the extent that the oral agreement is executed by the parties." Cal. Civ. Code § 1698(b). That exception does not apply. The modification Yaqub claims, which is a change to the Members' percentage interests, was never carried out by the parties. Kanaan signed nothing. Kanaan Decl. ¶ 9. Yaqub has no record of the Members' interests at all. Dep. 63:17–20. When Yaqub applied for a new license in 2017, the ABC's records still listed Seeley at 70% and Kanaan at 30%. Answer ¶ 27. Seeley's Option Notice transferred "all of her" interest without saying that it had become 92%. Ex. 3. Yaqub himself did not see the Agreement until 2018. Dep. 14:9–12. The LLC's lender continued to rely on Kanaan's guaranty and, as late as December 2016, addressed its loan notice to "Linda Seeley and Nick Kanaan." Ex. 14 at 9–10, 13, 15. Before November 2018, the supposed change appeared in writing only in documents issued by Yaqub or on his behalf, without Kanaan's participation: his

2017 license application, the LLC's 2015 through 2018 tax returns, filed while he managed the LLC, which listed him as owning 92%, and his counsel's June 1, 2018 letter. Answer ¶ 25; Ex. 16 at 2, 4–5, 7, 9; Ex. 5. One party's unilateral statements, made without the other's signature or participation, do not show an oral agreement "executed by the parties." Cal. Civ. Code § 1698(b). The first document that purported to change the Members' interests was the one Yaqub signed in November 2018. Ex. 4. Even since then, Yaqub's own filings have not carried out an 8% arrangement: the LLC's tax returns describe him as owning 92% in some places and 100% in others, and report one shareholder in some years and two in others, and in 2020 he told the LLC's lender that he owned 100%. Exs. 10, 15, 16. Even under the rule that an oral modification may be enforced where the party relying on it has fully performed, *D.L. Godbey & Sons Constr. Co. v. Deane*, 39 Cal. 2d 429, 433 (1952), whatever Seeley may have advanced was "executed" only as a contribution of funds. The Agreement already addresses that through the Capital Account and priority-return provisions. OA §§ 2.2, 5.5. The rest of the claimed bargain, Kanaan's surrender of 22 percentage points, was never executed. Section 1698(b) validates an oral modification only "to the extent" it was executed. The same limit answers Yaqub's testimony that he told Kanaan a 2015 or 2016 distribution would be divided "eight to 92." Dep. 42:22–43:3. Even if such a distribution was made and accepted, it would execute, at most, the division of that payment. It would not execute a permanent transfer of 22 percentage points of Membership Interest, with the voting and other rights that go with it. OA §§ 3.10.2, 5.2.2, 5.5.

**b. The claimed understanding was not an action the Agreement recognizes.** Members act by a vote at a properly noticed meeting or by signed written consent. OA §§ 3.11.3–3.11.5. Yaqub concedes there was neither. Dep. 31:10–24; 103:24–104:18. The Agreement is also integrated and supersedes "all prior written and oral agreements." OA § 12.2. Remarks in an informal family meeting, as Yaqub recalls them, cannot carry the weight of a unanimous amendment of a recorded ownership interest.

**c. Waiver and estoppel fail as a matter of law.** Waiver requires the intentional relinquishment of a known right and must be proved by clear and convincing evidence, with doubtful cases decided against waiver. *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107–08 (1966). That

heightened standard applies at summary judgment. *Anderson*, 477 U.S. at 254–55. Yaqub describes a conditional reaction at an informal meeting: "as long as I don't have to pay any further . . . so be it." Dep. 32:3–7; *see id.* 29:24–30:2. Nothing was put in writing for nine years, and Kanaan asserted "70/30" in writing before Yaqub signed either of the 2018 instruments. Ex. 8; Dep. 76:12–25. No reasonable jury could find, by clear and convincing evidence, that Kanaan knowingly gave up his 30% interest and the Agreement's signed-writing protection. Estoppel requires, among other things, that the party asserting it was "ignorant of the true state of facts" and relied to its injury. *Driscoll v. City of Los Angeles*, 67 Cal. 2d 297, 305 (1967). The only person who could have relied was Seeley. She signed the Agreement requiring a signed amendment and knew that none had been made. By Yaqub's account, she decided to fund the project herself because the bank was threatening foreclosure and the members faced personal liability. Dep. 28:4–29:17. Nothing in that account shows that she relied on Kanaan's words, rather than acting to protect her own 70% interest. Kanaan bore the same personal liability: he had guaranteed the LLC's $1,755,000 loan in July 2008, and the bank's later loan documents continued to rely on his guaranty. Ex. 14 at 4–10, 13. Yaqub was not a member and cannot claim his own reliance. Dep. 89:25–90:2. Finally, Yaqub's testimony that he later told Kanaan his share was 8% and that Kanaan did not object (*see* note 2) is immaterial. Silence in response to another Member's assertion is not a signed amendment. Nor is acceptance of a payment. Even if Kanaan accepted a distribution that Yaqub says he divided "eight to 92" (Dep. 42:22–43:3), cashing a check is not clear and convincing proof that Kanaan knowingly gave up 22 percentage points of his Membership Interest and the Agreement's requirement that any change be in a writing he signed. OA § 12.9; *see City of Ukiah*, 64 Cal. 2d at 107–08.

Because no admissible evidence shows a modification that the Agreement or California law recognizes, Kanaan is entitled to the declaration he seeks, and Yaqub's counterclaim for the opposite declaration fails.

### B. Yaqub Breached the Operating Agreement (Count II).

The elements of breach of contract are (1) a contract, (2) the plaintiff's performance or excuse, (3) the defendant's breach, and (4) resulting damage. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Each is established.

**Contract.** The Agreement binds Yaqub as a Member and as the successor to Seeley's interest. Cal. Corp. Code § 17701.11(b); OA §§ 3.2, 12.3; Answer ¶¶ 5, 20. **Performance.** Kanaan's only obligation was his initial contribution. Yaqub admits Kanaan held his initial 30% interest (Answer ¶ 1). The only nonperformance Yaqub has ever claimed is Kanaan's failure to make additional contributions, which § 2.1 says no Member is required to make.

**Breach.** Yaqub breached the Agreement by (a) signing the November 15, 2018 Minutes and the December 1, 2018 First Amended Operating Agreement, each of which purports to amend the Agreement and reduce or eliminate Kanaan's interest without unanimous approval or a writing signed by all Members (OA §§ 3.10.1.3, 12.9) and without the notice required by § 3.11.5; (b) adopting, as Manager and majority holder, an instrument that allocates "[a]ll profits and losses" and "[a]ll distributions" to himself (Ex. 6 §§ 4.1–4.2), contrary to §§ 5.2.2 and 5.5; and (c) failing to maintain the record of each Member's Membership Interest that § 8.1.1 requires (Dep. 63:17–20). These facts come from Yaqub's own documents and testimony.

**Damage.** Yaqub's instruments purport to strip Kanaan of 22 percentage points (the Minutes) or of his entire interest (the First Amended Operating Agreement), together with the allocations, distributions, and voting rights that come with it. The LLC holds real property that Yaqub values at $1,759,080, generates about $1 million a year in revenue, and reported positive net taxable income in each year from 2018 through 2023. Rog Resp. Nos. 6, 8. In 2020, Yaqub told the LLC's lender that his interest in the "Hotel" had a current market value of $2,500,000. Ex. 15 at 8. Since Yaqub signed those instruments, Kanaan has received nothing from the LLC. Kanaan Decl. ¶ 13. The fact of damage is established. Its amount can be determined at trial. Fed. R. Civ. P. 56(a), (g).

**Timeliness.** A claim for breach of a written contract must be brought within four years. Cal. Civ. Proc. Code § 337(a); Dkt. No. 40 at 5–6. The breaches at issue occurred on November 15, December 1, and December 5, 2018, about three years before Kanaan filed suit on December 10, 2021. Dkt. No. 1. Those instruments could not have been breached before they existed, and each breach of a recurring obligation is independently actionable and starts its own limitations period. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013). Kanaan was not told of the Minutes

or the First Amended Operating Agreement when Yaqub signed them (Kanaan Decl. ¶ 10), and a breach of contract committed in secret does not start the limitations period until it is discovered. *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5–6 (2003). The Court's prior order is not to the contrary. It held that the June 1, 2018 letter put Kanaan on notice for purposes of his three-year fraud-based claims. Dkt. No. 101 at 3–6. It did not decide when any breach of the Agreement occurred, and even measured from that letter, the four-year period had not run when Kanaan sued. Yaqub's testimony that he told Kanaan in 2015 or 2016 that a distribution would be divided "eight to 92" (Dep. 42:22–43:3) cannot start the clock on breaches that occurred in late 2018. As to Count V and the Counterclaim, the defense fails for a further reason. Kanaan's position that no valid amendment occurred is also his defense to Yaqub's counterclaim for a declaration of 8%, and "a defense may be raised at any time, even if the matter alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief." *Styne v. Stevens*, 26 Cal. 4th 42, 51 (2001). Yaqub's denial of Kanaan's interest also continues. As recently as October 13, 2026, he signed a federal return reporting that the LLC has a single shareholder. Ex. 10 at YAQUB-0833, -0838. The Eighth Affirmative Defense fails as to Counts II, III, and V.

### C. Alternatively, Yaqub Breached the Implied Covenant (Count III).

The implied covenant of good faith and fair dealing applies with particular force where one party has discretionary power affecting the rights of another, and that power must be exercised in good faith. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371–72 (1992). The covenant cannot create obligations beyond the contract's terms, *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000), and Kanaan offers this count only in case the Court finds that the express terms do not resolve the dispute. The Agreement gives the Manager control of the company's records, meetings, and regulatory filings (OA §§ 3.11.1–3.11.2, 4.1, 8.1). Yaqub admits that he used that control to document Kanaan's interest as 8%, then as zero, without notice to Kanaan, because the ABC would not accept the reduction without Kanaan's signature and the "easiest thing to do" was "to let him go." Dep. 45:7–20; 52:20–53:6; 59:13–20. Using a manager's control of company records to take away a co-member's interest frustrates the benefit Kanaan bargained for, and Yaqub has admitted the purpose for which he did it.

**D. Yaqub's Remaining Equitable Defenses Fail.**

Yaqub has no evidence to support laches. Laches requires unreasonable delay plus either acquiescence or resulting prejudice. *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000). Kanaan asserted his 30% interest in writing before the 2018 instruments existed (Ex. 8). He responded through counsel within weeks of the June 1, 2018 letter (Kanaan Decl. ¶ 12), and he sued within the limitations period. Yaqub has identified no prejudice resulting from any delay. During the years Yaqub now treats as delay, the LLC's bank loan remained supported by Kanaan's personal guaranty, which the bank retained when it modified the loan in 2020. Ex. 14 at 4–7, 9–10, 16; Kanaan Decl. ¶ 15. Estoppel fails for the reasons stated in Section V.A.4.c.[6]

**E. The Court Should Enter Declaratory Judgment and Further Relief, or Alternatively Establish the Undisputed Facts.**

An actual controversy over Kanaan's interest exists. Yaqub admits that a judicial declaration is needed, and his counterclaim seeks one. Answer ¶ 70; Countercl. ¶ 3. The Court may declare the parties' rights, 28 U.S.C. § 2201(a), whether or not another remedy is available, Fed. R. Civ. P. 57, and may grant "[f]urther necessary or proper relief based on" the declaration, 28 U.S.C. § 2202. Kanaan asks the Court to declare that he holds a 30% Membership Interest, that the interest has not been reduced or redeemed, and that the Minutes and the First Amended Operating Agreement are void as to that interest. He also asks the Court to direct Yaqub, as Manager, to conform the LLC's member records (OA § 8.1.1) to the declaration and not to act on the void instruments. The precise form of that relief can be fixed in the final judgment.

If the Court does not grant full relief, Kanaan asks that it enter an order under Rule 56(g) establishing the following facts, nearly all of which rest on Yaqub's own testimony or documents: (1) the Agreement assigned Kanaan a 30% Membership Interest; (2) Kanaan never signed any amendment, written consent, minutes, or other writing reducing, transferring, or redeeming that interest; (3) no written capital request and no written notice of any members' meeting was ever sent

---

[6] Because Kanaan seeks a declaration of his interest and judgment on liability, the Court need not reach Yaqub's defenses that go only to the amount of damages (Second through Sixth and Thirteenth), and Kanaan does not seek judgment on them. The Court previously struck the Tenth defense. Dkt. No. 71 at 7–8.

to Kanaan; (4) no members' meeting was noticed or held at which Kanaan's interest was reduced; (5) the Agreement contains no provision reducing a Member's interest for failure to make an additional contribution; (6) the Minutes were drafted by Yaqub's counsel and signed by Yaqub alone on November 15, 2018; (7) the First Amended Operating Agreement was signed by Yaqub alone on December 1, 2018 and dated as of December 1, 2011; (8) Kanaan's interest was never redeemed by the LLC; and (9) Kanaan has received no payment from the LLC since those instruments were signed.

## VI. CONCLUSION

The Court should grant summary judgment for Kanaan on Count V and on Yaqub's counterclaim; enter judgment for Kanaan on liability on Count II (or, alternatively, Count III), reserving damages for trial; enter judgment for Kanaan on the Seventh, Eighth, and Ninth Affirmative Defenses as to those counts; and, in the alternative, enter an order under Rule 56(g) establishing the facts listed above.

Dated: October 30, 2026

Respectfully submitted,

**WOOD, PHILLIPS, KATZ, CLARK & MORTIMER HEATH STEINBECK, LLP**

By: /s/ Jennifer L. Gordon
Jennifer L. Gordon (*pro hac vice*)
Steven A. Heath
Attorneys for Plaintiff and Counter-Defendant
Nabih "Nick" Kanaan

**CERTIFICATION OF SERVICE**

I, the undersigned, hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California by using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed this 30th day of October 2026.

/s/ Jennifer L. Gordon
Attorney for Plaintiff and Counter-Defendant_Nabih "Nick" Kanaan