# EXHIBIT 6

# FIRST AMENDED OPERATING AGREEMENT FOR THE INN AT DEL MONTE BEACH, LLC

This First Amended Limited Liability Company Operating Agreement is entered into as of the 1st day of December 2011 by Nizar "Nick" Yaqub (the "Member") as the sole remaining member of The Inn at Del Monte Beach, LLC, following the conveyance to him by Linda Seeley (now deceased) of her membership interest and the redemption of the membership interest of Nick Kanaan by The Inn at Del Monte Beach, LLC. The Member desires to amend the existing Operating Agreement (made November 1, 2007) of The Inn at Del Monte Beach, LLC pursuant to California law, to provide as follows:

## ARTICLE I

### Name, Place of Business and Agent

The name of the Company shall remain The Inn at Del Monte Beach, LLC. Its principal place of business is 1110 Del Monte Ave., Monterey, California 93940 such other place or places as the Member may hereafter the Company shall remain The Inn at Del Monte Beach, LLC. Its principal place of business is 1110 Del Monte Ave., Monterey, California 93940.

## ARTICLE II

### Business, Purpose, and Term of Company

Section 2.1 Purposes. The purpose for which the Company is formed and organized is to conduct any lawful business which may be conducted by a limited liability company formed under the Act, including to acquire, improve, manage, lease, own and operate the real property.

Section 2.2 Term. The term of the Company shall continue until dissolved pursuant to Article VI of this Agreement.

## ARTICLE III

### Capital Contributions

Section 3.1 Capital Contribution by Members. Upon the formation of the Company, the Member shall not be required to make a Capital Contribution. Capital Contributions shall be made from time to time as the Member shall determine.

Section 3.2 Capital Accounts. A Capital Account shall be maintained for the Member to which shall be credited (i) the Member's Capital Contributions, if any and (ii) all Company revenues. The Capital Account shall be debited with (i) all costs, expenses, and losses of the

Company and (ii) the amount of any distributions (including return of capital) made to the Member. No interest shall be paid on the Member's Capital Account.

## ARTICLE IV

### Allocation of Profits and Distributions

Section 4.1 Allocation of Profits and Distributions. All profits and losses of the Company shall be allocated to the Member.

Section 4.2 Allocation of Distributions. All distributions of cash or other assets of the Company shall be made to the Member when and as determined by the Member.

## ARTICLE V

### Management of the Company

Section 5.1 General. Nizar "Nick" Yaqub shall be the Managing Member and shall be responsible for the management of the Company. Any action to be undertaken by the Manager may be undertaken by Nizar "Nick" Yaqub. The Managing Member shall have the right, power and authority to manage, direct and control on behalf of the Company, to sign for the Company or on behalf of the Company or otherwise to bind the Company.

Section 5.2 Delegation of Powers of Managing Member. The Managing Member shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to delegate the management, control, administration, and operation of the business and affairs of the Company or the custody of the Company's assets for all purposes stated in this Agreement. Such delegation shall be as provided in such documentation as the Managing Member shall determine. Any such delegation shall not cause the Managing Member to cease to be the Managing Member.

Sections 5.3 Officers. The Managing Member may appoint individuals with or without such titles as the Managing Member may elect, including the titles of President, Vice President, Treasurer, and Secretary, to act on behalf of the Company with such power and authority as the Managing Member may delegate in writing to any such persons.

Sections 5.4 Powers of Managing Member. The Managing Member shall have the right, power and authority, in the management of the business and affairs of the Company, to do or cause to be done any and all acts deemed by the Managing Member to be necessary or appropriate to effectuate the business, purposes and objectives of the Company at the expense of the Company, including but not limited to the execution of all documents or instruments in all matters necessary, desirable, convenient or incidental to the purpose of the Company or the

making of investments of Company funds. The Managing Member shall have the right, power and authority to buy and sell real and personal property on behalf of the Company and to execute any and all documents necessary to do so.

Section 5.5 Reliance by Third Parties. Any person or entity dealing with the Company may rely on a certificate signed by the Managing Member as to:

(i) the identity of the Managing Member;

(ii) the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Managing Member or are in any matter germane to the affairs of the Company;

(iii) the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

(iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company.

Section 5.6 Actions Requiring Member Approval. Notwithstanding any other provision of this Agreement, the written consent of the Member shall be required to approve the following matters:

(i) the dissolution or winding up of the Company;

(ii) the merger or consolidation of the Company;

(iii) the sale, transfer, contribution, exchange, mortgage, pledge, encumbrance, lease or other disposition or transfer of all or substantially all of the assets of the Company; and

(iv) amendments to this Agreement.

## ARTICLE VI

## Dissolution

The Company shall be dissolved, and shall terminate and wind up its affairs, upon the first to occur of the following:

(a) the determination by the Member to dissolve the Company; or

(b) the entry of a decree of judicial dissolution pursuant to Section 17351 of the Act.

## ARTICLE VII

**Governing Law and Jurisdiction**

This Agreement, including its existence, validity, construction and operating effect, and the rights of each of the parties hereto, shall be governed by and construed in accordance with the laws of the State of California (without regard to principles of conflicts of laws.)

## ARTICLE VIII

**Indemnification**

Section 8.1 Indemnification and Liability. (a) To the maximum extent permitted by applicable law, the Managing Member shall not be liable to the Company or any other third party (i) for mistakes of judgment, (ii) for any act or omission suffered or taken by it, or (iii) for losses due to any such mistakes, action or inaction.

(b) Except as may be restricted by applicable law, the Managing Member shall not be liable for and the Company shall indemnify the Managing Member against, and agrees to hold the Managing Member harmless from, all liabilities and claims (including reasonable attorney's fees and expenses in defending against such liabilities and claims) against the Managing Member, arising from the Managing Member's performance of its duties in conformance with the terms of this Agreement.

(c) The Managing Member may consult with legal counsel or accountants selected by the Managing Member and, to the maximum extent permitted by applicable law, any action or omission suffered or taken in good faith in reliance and in accordance with the written opinion or advice of any such counsel or accountants (provided such counsel or accountants have been selected with reasonable care) shall be fully protected and justified with respect to the action or omission so suffered or taken.

## ARTICLE IX

**Assignment of Interests**

The Member may Transfer all or part of its Membership Interest in the Company at any time and on such terms and conditions as he or she deems appropriate.

## ARTICLE X

**Winding Up and Distribution of Assets**

Section 10.1 Winding Up. If the Company is dissolved, the Member shall wind up the affairs of the Company.

Section 10.2 Distribution of Assets. Upon the winding up of the Company, subject to the provisions of the Act, the Member shall pay or make reasonable provision to pay all claims and obligations of the Company, including all costs and expenses of the liquidation and all contingent, conditional or unmatured claims and obligations shall be paid in full and any such provision shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor. Any remaining assets shall be distributed to the Member.

## ARTICLE XI

**Definitions**

As used herein, the following terms shall have the indicated definitions.

**"Act"** means the Beverly-Killea Limited Liability Company Act, as may be amended from time to time.

**"Articles of Organization"** means the articles of organization as filed with the California Secretary of State on April 11, 2016, as the same may be amended from time to time.

**"Agreement"** means this Limited Liability Company Agreement, as may be amended from time to time.

**"Capital Account"** means a separate accounting maintained with respect to the Member pursuant to section 3.2 of this Agreement.

**"Capital Contribution"** means the contribution by the Member to capital of the Company.

**"Company"** means The Inn at Del Monte Beach, LLC, a California limited liability company.

**"Managing Member"** means Nizar "Nick" Yaqub.

**"Membership Interest"** means the ownership interest of the Member in the Company, including any and all rights, powers, benefits, duties or obligations conferred or imposed on the Member under the Act or this Agreement.

**"Transfer"** means a transfer, assignment, pledge or encumbrance relative to any Membership Interest of the Company.

IN WITNESS WHEREOF, the Member has executed and delivered this First Amended Operating Agreement the day and year first above written.

MEMBER:

Nizar "Nick" Yaqub

12/1/2018