# EXHIBIT 15

# FIRST AMENDED OPERATING AGREEMENT
# FOR
# THE INN AT DEL MONTE BEACH, LLC

This First Amended Limited Liability Company Operating Agreement is entered into as of the 1st day of December 2011 by Nizar "Nick" Yaqub (the "Member") as the sole remaining member of The Inn at Del Monte Beach, LLC, following the conveyance to him by Linda Seeley (now deceased) of her membership interest and the redemption of the membership interest of Nick Kanaan by The Inn at Del Monte Beach, LLC. The Member desires to amend the existing Operating Agreement (made November 1, 2007) of The Inn at Del Monte Beach, LLC pursuant to California law, to provide as follows:

## ARTICLE I

### Name, Place of Business and Agent

The name of the Company shall remain The Inn at Del Monte Beach, LLC. Its principal place of business is 1110 Del Monte Ave., Monterey, California 93940 such other place or places as the Member may hereafter the Company shall remain The Inn at Del Monte Beach, LLC. Its principal place of business is 1110 Del Monte Ave., Monterey, California 93940.

## ARTICLE II

### Business, Purpose, and Term of Company

Section 2.1 Purposes. The purpose for which the Company is formed and organized is to conduct any lawful business which may be conducted by a limited liability company formed under the Act, including to acquire, improve, manage, lease, own and operate the real property.

Section 2.2 Term. The term of the Company shall continue until dissolved pursuant to Article VI of this Agreement.

## ARTICLE III

### Capital Contributions

Section 3.1 Capital Contribution by Members. Upon the formation of the Company, the Member shall not be required to make a Capital Contribution. Capital Contributions shall be made from time to time as the Member shall determine.

Section 3.2 Capital Accounts. A Capital Account shall be maintained for the Member to which shall be credited (i) the Member's Capital Contributions, if any and (ii) all Company revenues. The Capital Account shall be debited with (i) all costs, expenses, and losses of the

Company and (ii) the amount of any distributions (including return of capital) made to the Member. No interest shall be paid on the Member's Capital Account.

**ARTICLE IV**

**Allocation of Profits and Distributions**

Section 4.1 Allocation of Profits and Distributions. All profits and losses of the Company shall be allocated to the Member.

Section 4.2 Allocation of Distributions. All distributions of cash or other assets of the Company shall be made to the Member when and as determined by the Member.

**ARTICLE V**

**Management of the Company**

Section 5.1 General. Nizar "Nick" Yaqub shall be the Managing Member and shall be responsible for the management of the Company. Any action to be undertaken by the Manager may be undertaken by Nizar "Nick" Yaqub. The Managing Member shall have the right, power and authority to manage, direct and control on behalf of the Company, to sign for the Company or on behalf of the Company or otherwise to bind the Company.

Section 5.2 Delegation of Powers of Managing Member. The Managing Member shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to delegate the management, control, administration, and operation of the business and affairs of the Company or the custody of the Company's assets for all purposes stated in this Agreement. Such delegation shall be as provided in such documentation as the Managing Member shall determine. Any such delegation shall not cause the Managing Member to cease to be the Managing Member.

Sections 5.3 Officers. The Managing Member may appoint individuals with or without such titles as the Managing Member may elect, including the titles of President, Vice President, Treasurer, and Secretary, to act on behalf of the Company with such power and authority as the Managing Member may delegate in writing to any such persons.

Sections 5.4 Powers of Managing Member. The Managing Member shall have the right, power and authority, in the management of the business and affairs of the Company, to do or cause to be done any and all acts deemed by the Managing Member to be necessary or appropriate to effectuate the business, purposes and objectives of the Company at the expense of the Company, including but not limited to the execution of all documents or instruments in all matters necessary, desirable, convenient or incidental to the purpose of the Company or the

making of investments of Company funds. The Managing Member shall have the right, power and authority to buy and sell real and personal property on behalf of the Company and to execute any and all documents necessary to do so.

Section 5.5 Reliance by Third Parties. Any person or entity dealing with the Company may rely on a certificate signed by the Managing Member as to:

(i) the identity of the Managing Member;

(ii) the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Managing Member or are in any matter germane to the affairs of the Company;

(iii) the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

(iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company.

Section 5.6 Actions Requiring Member Approval. Notwithstanding any other provision of this Agreement, the written consent of the Member shall be required to approve the following matters:

(i) the dissolution or winding up of the Company;

(ii) the merger or consolidation of the Company;

(iii) the sale, transfer, contribution, exchange, mortgage, pledge, encumbrance, lease or other disposition or transfer of all or substantially all of the assets of the Company; and

(iv) amendments to this Agreement.

**ARTICLE VI**

**Dissolution**

The Company shall be dissolved, and shall terminate and wind up its affairs, upon the first to occur of the following:

(a) the determination by the Member to dissolve the Company; or

(b) the entry of a decree of judicial dissolution pursuant to Section 17351 of the Act.

**ARTICLE VII**

**Governing Law and Jurisdiction**

This Agreement, including its existence, validity, construction and operating effect, and the rights of each of the parties hereto, shall be governed by and construed in accordance with the laws of the State of California (without regard to principles of conflicts of laws.)

## ARTICLE VIII

**Indemnification**

Section 8.1 Indemnification and Liability. (a) To the maximum extent permitted by applicable law, the Managing Member shall not be liable to the Company or any other third party (i) for mistakes of judgment, (ii) for any act or omission suffered or taken by it, or (iii) for losses due to any such mistakes, action or inaction.

(b) Except as may be restricted by applicable law, the Managing Member shall not be liable for and the Company shall indemnify the Managing Member against, and agrees to hold the Managing Member harmless from, all liabilities and claims (including reasonable attorney's fees and expenses in defending against such liabilities and claims) against the Managing Member, arising from the Managing Member's performance of its duties in conformance with the terms of this Agreement.

(c) The Managing Member may consult with legal counsel or accountants selected by the Managing Member and, to the maximum extent permitted by applicable law, any action or omission suffered or taken in good faith in reliance and in accordance with the written opinion or advice of any such counsel or accountants (provided such counsel or accountants have been selected with reasonable care) shall be fully protected and justified with respect to the action or omission so suffered or taken.

## ARTICLE IX

**Assignment of Interests**

The Member may Transfer all or part of its Membership Interest in the Company at any time and on such terms and conditions as he or she deems appropriate.

## ARTICLE X

### Winding Up and Distribution of Assets

Section 10.1 Winding Up. If the Company is dissolved, the Member shall wind up the affairs of the Company.

Section 10.2 Distribution of Assets. Upon the winding up of the Company, subject to the provisions of the Act, the Member shall pay or make reasonable provision to pay all claims and obligations of the Company, including all costs and expenses of the liquidation and all contingent, conditional or unmatured claims and obligations shall be paid in full and any such provision shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor. Any remaining assets shall be distributed to the Member.

## ARTICLE XI

### Definitions

As used herein, the following terms shall have the indicated definitions.

**"Act"** means the Beverly-Killea Limited Liability Company Act, as may be amended from time to time.

**"Articles of Organization"** means the articles of organization as filed with the California Secretary of State on April 11, 2016, as the same may be amended from time to time.

**"Agreement"** means this Limited Liability Company Agreement, as may be amended from time to time.

**"Capital Account"** means a separate accounting maintained with respect to the Member pursuant to section 3.2 of this Agreement.

**"Capital Contribution"** means the contribution by the Member to capital of the Company.

**"Company"** means The Inn at Del Monte Beach, LLC, a California limited liability company.

**"Managing Member"** means Nizar "Nick" Yaqub.

**"Membership Interest"** means the ownership interest of the Member in the Company, including any and all rights, powers, benefits, duties or obligations conferred or imposed on the Member under the Act or this Agreement.

**"Transfer"** means a transfer, assignment, pledge or encumbrance relative to any Membership Interest of the Company.

IN WITNESS WHEREOF, the Member has executed and delivered this First Amended Operating Agreement the day and year first above written.

MEMBER:

______________________________
Nizar "Nick" Yaqub
12/1/2014

PINNACLE BANK™ REACH HIGHER

# PERSONAL FINANCIAL STATEMENT

**Initial Applicable Selection:** **Individual Credit:** ✓ **Joint Credit:** ______ & ______ **Business:** ______ **Guarantor:** ______

**Purpose of Credit:**

| | |
|---|---|
| Name NIZAR YAQUB | Name of Spouse (Complete if married and residing in California or another community property state) |
| Home Address 24345 Paseo Privado How Long? 30y | Home Address — How Long? |
| City, State, Zip Salinas CA 93908 | City, State, Zip |
| Home Phone No. 831-869-3411 [redacted] | Home Phone No. — Social Security No. — Date of Birth |
| [redacted] 7/10/2015 [redacted] | Drivers License No. — Issue Date — Expiration Date |
| E-mail Address 7/10/2015 Nick@Nickyaqub.Mo | E-mail Address |
| Employer Self — How Long? | Employer — How Long? |
| Address of Employer | Address of Employer |
| Business Phone No. — Title/Position | Business Phone No. — Title/Position |

**Marital Status** (answer only if this financial statement is provided in connection with a request for secured credit or if you live in a community property state, such as California. ☐ Married ☐ Separated ☒ Unmarried (includes single, divorced, widowed)

**Number of Dependents:** 0 **Ages:** 0

**This is a statement of** ☒ my individual financial condition ☐ our joint financial condition, as of: 6/15/2020 (Date)

**Are any of the assets of Borrower or Spouse listed under a Trust?** ☐ Yes ☒ No If yes, please indicate the name of the Trust below and attach a copy of the Trust Certification.

**NAME OF TRUST:**

| ASSETS | | LIABILITIES AND NET WORTH *(Include spouse's liabilities)* | |
|---|---|---|---|
| Cash (Including money market accounts and CDs) | 200,000 | Notes Payable to Banks *(Section F)* | 1,423,000.00 |
| Pinnacle Bank | 0 | Notes Payable to Others *(Section F)* | 0 |
| Other Financial Institutions (List) Union Bank, Chase, Schwab | 200,000 | Accounts Payable (Credit Cards, etc.) | 0 |
| Stocks & Bonds *(Section A)*: Readily Marketable | 18,000 | Margin Accounts Payable Held By: | 0 |
| Nonreadily Marketable | | Real Estate Debt *(Section D)* | 475,000.00 |
| Accounts & Notes Receivable *(Section B)* | 0 | | |
| Net Cash Surrender Value of Life Insurance *(Section C)* | 0 | | |
| Real Estate *(Section D)* | 1,200,000.00 | | |
| Partnership, S Corp., LLC & LLP Interests *(Section E)* | 2,500,000.00 | | |
| Vested Retirement Accounts (List) | 0 | | |
| Auto(s) (Year and Make) | 0 | | |
| Personal Property | 10,000.00 | | |
| Other Assets (List) | | | |
| | | TOTAL LIABILITIES | 1,898,000.00 |
| | | NET WORTH | 1,830,000.00 |
| TOTAL ASSETS | 3,728,000 | TOTAL LIABILITIES & NET WORTH | 3,728,000.00 |

If not enough space for any of the above, please attach a separate schedule and enter totals only above.

**CONTINGENT LIABILITIES**

| | YES | NO | AMOUNT | | YES | NO | AMOUNT |
|---|---|---|---|---|---|---|---|
| Are you a guarantor, co-maker or endorser for any debt of any person or entity? | ☐ | ☒ | | Are any of your tax obligations past due? | ☐ | ☒ | |
| Do you have any outstanding letters of credit or surety bonds? | ☐ | ☒ | | Are you contingently liable as general partner for the debts of any partnership? | ☐ | ☒ | |
| Are there any suits or legal actions pending against you? | ☐ | ☒ | | Do you have any other contingent liabilities? | ☐ | ☒ | |
| Are you contingently liable on any lease or contract? | ☐ | ☒ | | | | | |

If yes to any of the above, please give details:



Gordon Decl. Ex. 15-7 (Pinnacle prod. p. 38)

**SECTION A – SECURITIES *(Include nonmoney-market mutual funds)***

| # of Shares (Stock) OR Face Value (Bonds) | DESCRIPTION | Exchange* Use Code | LEGAL OWNERSHIP TITLE | How Held* Use Code | PERCENT OWNED | WHERE HELD | COST | CURRENT MARKET VALUE | Pledged Yes | Pledged No |
|---|---|---|---|---|---|---|---|---|---|---|
| READILY MARKETABLE SECURITIES (Include U.S. Government and municipal securities) | | | | | | | | | | |
| Various | with | | Schwab | | account | | | | ☐ | ☒ |
| | | | | | | | | | ☐ | ☐ |
| NONREADILY MARKETABLE SECURITIES (Include closely held, thinly traded or restricted stock) | | | | | | | | | | |
| | | | | | | | | | ☐ | ☐ |
| | | | | | | | | | ☐ | ☐ |

If not enough space, please attach a separate schedule or brokerage statement and enter totals only. *Please use the following codes to list exchange: NY = New York; NASD = Nasdaq, AM = American; OTC = Over the Counter; UN = Unlisted; **Please use the following codes for how held: CP = Community Property; SP = Separate Property; JT = Joint Tenancy; TIC = Tenancy in Common; TR = Trust

**SECTION B – ACCOUNTS AND NOTES RECEIVABLE**

| LEGAL OWNERSHIP TITLE | How Held* Use Code | DEBTOR | COLLATERAL DESCRIPTION | PAYMENT TERMS | MATURITY DATE | UNPAID BALANCE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

**SECTION C - INSURANCE**

| INSURANCE COMPANY | FACE AMOUNT OF POLICY | INSURED | BENEFICIARY | LIFE INSURANCE: CASH SURRENDER VALUE | LIFE INSURANCE: POLICY LOANS | DISABILITY INSURANCE: MONTHLY DISTRIBUTION (If Disabled) | DISABILITY INSURANCE: NO. OF YEARS COVERED |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

**SECTION D– REAL ESTATE**

| DESCRIPTION /LOCATION (Property Address) | LEGAL OWNERSHIP TITLE | How Held* Use Code / Percent Owned | PURCHASE Year / Price | CURRENT MARKET VALUE | Monthly Operating Income / Loan Payments | LOAN MATURITY DATE | INT RATE | UNPAID LOAN BALANCE | LENDER ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| Single fam | | 100% | 2017 / 900,000.00 | | | 2038 | Var year | 475000 | City Bank |
| | | | | | | | | | |
| | | | | | | | | | |

**SECTION E– PARTNERSHIPS, S CORPORATIONS, LLCs & LLPs**

| TYPE OF INVESTMENT | How Held* Use Code / Percent Owned | DATE OF INITIAL INVESTMENT | COST | CURRENT MARKET VALUE | ANTICIPATED CAPITAL CONTRIBUTIONS Amount | ANTICIPATED CAPITAL CONTRIBUTIONS Date | GENERAL PARTNER Yes | GENERAL PARTNER No |
|---|---|---|---|---|---|---|---|---|
| Hotel | 100 | 2011 | 2,000,000 | 2,500,000 | -0- | -0- | ☐ | ☒ |
| | | | | | | | ☐ | ☐ |

NOTE: For investments which represent a material portion of your total assets, please include the relevant financial statement or tax returns, or in the case of partnership investments, Schedules K-1. *Please use the following codes for how held: CP = Community Property; SP = Separate Property; JT = Joint Tenancy; TIC = Tenancy in Common; TR = Trust. If not enough space, please attach a separate schedule or brokerage statement and enter totals only.

**SECTION F – Notes Payable**

| LENDER | ACCOUNT NO | LENDER ADDRESS | COLLATERAL | PAYMENT TERMS | MATURITY DATE | UNPAID BALANCE |
|---|---|---|---|---|---|---|
| Pinnacle B. | [redacted] | Salinas | Building | Variable / 15 yrs | 2038 | 1,423,000 |
| | | | | | | |

**CREDIT REFERENCES**

| | | | |
|---|---|---|---|
| Name: | Union Bank | Name: | Pinnacle Bank |
| Address: | Monterey | Address: | Salinas |
| Phone No.: | | Phone No.: | |
| Account No.: | | Account No.: | |

**PLEASE ANSWER THE FOLLOWING QUESTIONS:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. Have you (or your spouse or any firm in which you are a major owner or guarantor) ever declared bankruptcy? | Yes | 2. Have you or your spouse ever voluntarily surrendered or had a vehicle or other item repossessed? | NO | 3. Have you or your spouse ever applied for or obtained credit under a different name? | NO | 4. Are any assets encumbered or debts secured except as | NO |
| 5. Have you (or your spouse or any firm in which you are a major owner or guarantor) ever had a judgment against you? | NO | 6. Are any of your or your spouse's tax returns currently being audited or contested? | NO | 7. Do you or your spouse have any unused credit facility with any other institution? | NO | 8. Are you and your spouse U.S. citizens? | Yes |

If you answered yes to any of the questions 1-7 above, please explain:

**REPRESENTATIONS AND WARRANTIES**

The above information and any information attached to this Personal Financial Statement ("Statement") is furnished to Pinnacle Bank and/or its affiliates ("Bank") in connection with credit for which you may apply, credit already extended by the Bank, or credit you may guarantee. You acknowledge that the Bank is relying on the information provided herein in deciding to grant or continue credit or to accept a guarantee of credit. You represent that the information provided herein is true and complete. You agree to notify the Bank immediately and in writing of any change in name, address or employment and of any material adverse change (1) in any of the information contained in this Statement or (2) in your financial condition or (3) in your ability to perform your obligations. In the absence of such notice or a new and full written statement, this Statement should be considered as continuing and substantially correct. If you fail to notify the Bank as required above, or if any of the information provided herein should prove to be obsolete, inaccurate or incomplete in any material respect, the Bank may declare the indebtedness of one or more of you, or the indebtedness guaranteed by one or more of you, as the case may be, immediately due and payable. Further, you agree that should any property owned by you be placed in a trust, that you will not exercise any trust powers against the Bank's rights, and if you should default on any indebtedness to the Bank, you irrevocably authorize the Bank to direct the trustee in your name to pay all amounts due to the Bank. The Bank is authorized to make all inquiries deemed necessary to verify the accuracy of the information contained herein and to determine your creditworthiness. You authorize any person or consumer reporting agency to give the Bank any information it may have on you. You agree that we may obtain your residence address from the Department of Motor Vehicles, and you waive your rights under Vehicle Code 1808.21. If you are married, this authorization extends to verifying spousal information. As long as you have any obligation or guarantee to the Bank, you agree to supply, at least annually, an updated Statement. This Statement and any other information that you give the Bank shall be the property of the Bank. You hereby waive pleading of any statute of limitations as a defense to any of your obligations or to the validity of any information contained in this Statement or financial statements attached hereto. This signed Statement does not represent in and of itself an application for credit.

Signature: [signature] Date: 6/15/2020 Signature: Date:

***Your spouse must sign only if he or she will be applying for or guarantying credit to be considered by the Bank, or if he/she is obligated for any existing credit or guarantee to which this Statement relates.**

If not enough space in any of the above section, please attach separate schedule 03/28/2014



Member FDIC SBA Preferred Lender

Gordon Decl. Ex. 15-8 (Pinnacle prod. p. 39)

**CIP Patriot Act Disclosure** -IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A LOAN ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens a loan account. What this means to you: When you open a loan account we will ask you for your name, address, date of birth and other information that will allow us to identify you. We will ask to see your driver's license or other identifying documents, if needed.

**The information being requested and observed is for compliance with the requirements of Section 326 of the USA Patriot Act implementing customer identification and verification requirements. The information in no way will be used in making the credit decision on your completed application.**

DocuSign Envelope ID: 85638014-DC0A-4E9F-BC10-F53947D93029

# CERTIFICATION OF BENEFICIAL OWNER(S)

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,418,693.35 | 05-24-2010 | 11-30-2037 | [redacted] | | | TOMP | |

References in the boxes above are for use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Persons opening an account on behalf of a legal entity must provide the following information:**

a. Name and Title of Natural Person Opening Account:

**Nizar Yaqub, Managing Member of The Inn at Del Monte Beach, LLC**

b. Name, Type, and Address of Legal Entity for Which the Account is Being Opened:

**The Inn at Del Monte Beach, LLC, Limited Liability Company; 1110 Del Monte Avenue; Monterey, CA 93940**

c. The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

| Name | Ownership % | Date of Birth | Address (Res. or Bus. Street Address) | For U.S. Persons[1] | For Non-U.S. Persons[2] |
|---|---|---|---|---|---|
| Nizar Yaqub | 100% | [redacted] | 24345 Paseo Privado, Salinas, CA 93901, USA | [redacted] | |

(If no individual meets this definition, please write "Not Applicable.")

d. The following information for one individual with significant responsibility for managing the legal entity listed above, such as:

☒ An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or

☐ Any other individual who regularly performs similar functions.

(If appropriate, an individual listed under section (c) above may also be listed in this section (d)).

| Name/Title | Date of Birth | Address (Res. or Bus. Street Address) | For U.S. Persons[1] | For Non-U.S. Persons[2] |
|---|---|---|---|---|
| Nizar Yaqub, Member | [redacted] | 24345 Paseo Privado, Salinas, CA 93901, USA | [redacted] | |

**I, Nizar Yaqub (name of natural person opening account), hereby certify, to the best of my knowledge, that the information provided above is complete and correct, and on behalf of The Inn at Del Monte Beach, LLC, I agree to notify the financial institution of any change in such information.**

By: DocuSigned by: Nizar Yaqub 56B0A4483A841E... 8/23/2020

**Nizar Yaqub, Managing Member of The Inn at Del Monte Beach, LLC** **Date**

[1] U.S. Persons must provide a Social Security Number.

[2] Non-U.S. Persons must provide a Social Security Number, passport number and country of issuance, or similar identification number. In lieu of a passport number, Non-U.S. Persons may also provide a Social Security Number, an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

Legal Entity Identifier: ______________________________ (Optional)

LaserPro, Ver. 20.1.25.001 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - CA c:\CFI\LPL\COBO.FC TR-774 PR-1